Law Office
JOHN A. YACOVELLE         <u>**RETURNABLE 12/3/2012**</u>
8438 Mackall Rd.
St. Leonard, MD 20685
410-586-3344
Attorney for Defendant
Matthew Durst

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JAKE BALL TRUST, STEVEN DURST,
and REUBEN DURST
    Plaintiffs

                      CIVIL ACTION
    v.              Case 1:12-cv-05255-JBS-JS

MATTHEW DURST,
    Defendant

---

<u>**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTIONS**</u>

---

ORAL ARGUMENT REQUESTED

1

# TABLE OF CONTENTS

Page

INTRODUCTION                                                    4
STATEMENT OF FACTS                                              4
ARGUMENT                                                        6
A. THE MOTION TO NAME STEVEN DURST AS A TRUSTEE                 6
B. THE MOTION TO ADD JAKE BALL TRUST
   BENEFICIARIES AS PLAINTIFFS                                  7

C. THE MOTION TO REMAND                                        10
D. THE MOTION TO DISQUALIFY YACOVELLE AS
   ATTORNEY FOR MATTHEW DURST                                  10

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page**

**Aberle Hosiery Co. v. American Arbitration Association,
337 F.Supp.90 (E.D.Pa. 1972)**                                              10

**Bradley v. Maryland Casualty Co., 382 F.2d 415, 419 (8th Cir. 1967)**     9

**Lenon v. St. Paul Mercury Insurance Co., 136 F.3d 1365 (10th Cir.
1998)**                                                                     9

**Navarro Savings Association v. Lee, 446 U.S. 458 (1980)**                 10

**Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961),**                        8

**Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,
313 F.3d 305,   316 (5th Cir. 2002)**                                       8

**Whitaker v. American Telecasting, Inc., 261 F.3d 196 (2nd Cir. 2001)**    8

**Rules**

N.J. RPC 3.7, Lawyer as Witness                                             11

N.J. RPC 1.7 Conflict of Interest: General Rule                             11-12

## INTRODUCTION

This suit originated in the Superior Court, Chancery Division, Cumberland County and was removed to this Court on the basis of diversity of citizenship with an amount in controversy in excess of $75,000. The plaintiffs have now moved to:

1) Amend the complaint to identify plaintiff Steven Durst as suing in his capacity as a Trustee;

2) Amend the complaint to add as plaintiffs various beneficiaries of the "Jake Ball Trust";

3) Add two Connecticut law firms and an individual member of each as malpractice defendants;

4) To add John A. Yacovelle, Esq., as a malpractice defendant;

5) To disqualify Yacovelle as attorney for defendant Matthew Durst; and

6) To "remove" (remand) the matter to the New Jersey Superior Court.

In response, we have filed three attached Affidavits, that of defendant Matthew Durst, (EXHIBIT A); that of his adult son Matthew Durst, Jr. (EXHIBIT B; and that of Francine V. Nachlas, mother of two of the beneficiaries proposed to be added (EXHIBIT C). We have also briefed the legal issues raised by the motions.

## STATEMENT OF FACTS

Sometimes in preparation of a Brief one can save time and effort by essentially adopting the factual statement of the adversary. This is not one of those times. The Memorandum of Law in Support of the Motion (which,

4

incidentally, does not cite a single case in support of any of the arguments), contains too many factual errors.

First, the settlement which is the subject of the controversy occurred on October 4, 2011, not December 16. Though certain parties objected to the settlement within a week (clients of Vincent D'Elia, Esq.), it was not until October 31 that Mr. D'Elia, representing some of the same people who became the current plaintiffs, requested information on the case to see whether or not he wanted to become involved. By November 6 he had in his hands various pleadings, trial briefs, and my 4-page single spaced analysis of the case, including the terms of the Settlement. Since Steve Durst was one of his clients at the time, D'Elia undoubtedly communicated those terms to Steve, so that the statement that Steve did not know the terms in December 2011 is also wrong. Incidentally, the claim that the Connecticut malpractice defendants prepared the original Jake Ball Trust Agreement in 2004 is also incorrect, as it was prepared by certain attorneys who Steve wants to sue for malpractice in Jenkintown, PA.

It is correct, however, that on December 28, almost 3 months after the Settlement, Steve Durst and his brother Reuben, a Trustee who had been totally inert since at least 2006, moved to Intervene and to set aside the Settlement. After being given the right at a Case Management Conference on January 6, 2011 to conduct certain discovery and to submit expert reports, as well as to submit certifications and briefs regarding the value of a certain building at 1600 West Hunting Park Boulevard in Philadelphia, they never produced any competent evidence of that value.[1] On April 26, following

---

[1] To compress something that will be expanded in a soon to be filed motion for partial summary judgment on collateral estoppel grounds, if the building was

argument on the pending motions, the trial judge held a conference and indicated that she was still open to affidavits of value. The only one produced was from the Goodman defendants, and the number provided for the value of that building was $500,000 to $600,000. On June 27, the court ordered the Settlement to be enforced, finding that the proposed Intervenors, though they had the opportunity to do so, had presented no proof of value to show that the deal was unfair to the Trust. Mr. D'Elia's clients then appealed to the Appellate Division, lost an emergent stay application in both the trial court and the Appellate Division, and threw up their hands and abandoned the appeal. One element of the Settlement, a check for $80,000, has now been forwarded to Mr. D'Elia at his request and we might expect that the Trust will soon deposit and dispose of it.

The case at bar was filed in Superior Court, General Equity, Cumberland County. After a diversity-preventing plaintiff was dismissed on motion as a non-juridicial entity, the case was removed to this Court.

## ARGUMENT

### A. THE MOTION TO NAME STEVEN DURST AS A TRUSTEE

Although this matter was spawned back in the summer of 2010, Steven Durst has, throughout, referred to himself as the Grantor, or the "funder" of the Jake Ball Trust. It appears he has now discovered that he is a Trustee, and has been all along. That means that his conduct from the

---

worth $600,000 the Settlement was a good one for the Trust; if, as Steve Durst claimed, it was worth in excess of $1.3 million it was a bad settlement.

6

beginning to the present will now be viewed through the expansive lens of fiduciary duty. Of course, we have no objection to that Motion.

## B. THE MOTION TO ADD JAKE BALL TRUST BENEFICIARIES AS PLAINTIFFS

Our position is not as accommodating regarding this Motion. It appears that title to the assets of the Trust is held by the Trustees (now 3 in number), that they have the power to bring and compromise claims under the Trust documents, and that they are obviously the "real party in interest" to maintain this action on behalf of an express Trust (Rule 17(a)(1)(E). If the attorney "for the plaintiffs", as Mr. D'Elia signed the motion papers, wants to bring in a number of other people as makeweights, it is of no concern to us. However for him to name 5 additional plaintiffs, whom he irrefutably does <u>not</u> represent, who the firm has not contacted in any fashion whatsoever, and who are adamantly opposed to the two Trustee plaintiffs, is another matter entirely.

Affidavits filed by Francine V. Nachlas, Matthew Durst and Matthew Durst Jr. clearly establish that there has been, at a minimum, an "overreach" by the attorney for the plaintiff Trustees. But it gets worse. Two of the beneficiaries who are sons of Trustee Matt Durst, one a minor (name not redacted in the moving papers), are actually maintaining a counterclaim, along with their father, against Trustee Steve Durst. How anyone could try to add them as plaintiffs—so that they are not only suing their father, <u>but themselves as well,</u> is unfathomable. And, of course, Matt Durst, Jr., who has filed a separate affidavit, and who has been slammed in the pleadings by these plaintiffs as having gotten more than his share of education funding—all as approved by Trustee Steve, incidentally—is obviously not interested in

7

being aligned with Steve or Reuben Durst in any manner whatsoever. It is obvious that the motion to join these 5 individual beneficiaries as "plaintiffs" should be denied.

Examination of the applicable law confirms that conclusion. The clear purpose of joining the three sons of defendant Matt Durst is to destroy diversity and lead to granting of the remand motion. It is as bogus an attempt at joinder as any I have found in the cases, even more blatant than that in **Whitaker v. American Telecasting, Inc., 261 F.3d 196 (2nd Cir. 2001);** and see, also, Great **Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 316 (5th Cir. 2002)** for another case in which the court, on the basis of "fraudulent joinder" which would have destroyed diversity, decided against allowing a remand.

This, however, is less a case of "fraudulent joinder", and more a case of injecting dispensable or unnecessary parties into the controversy for the purpose of obtaining a remand to state court. The moving parties have been kind enough to reproduce, again, the final version of the Jake Ball Trust Agreement dated December 24, 2007. (Exhibit A in the Moving papers).
A review of **Article IX, Trustee Powers**, beginning at page 12, reveals clearly that the two plaintiff trustees, Steve and Reuben, (and, technically, Matt as well, still a trustee) have title to the Trust assets and full power to maintain this lawsuit and to settle it, without being joined by any additional parties. This fact alone renders the beneficiaries, including specifically the ones in question, "dispensable or unnecessary."

The courts have been dealing with such parties and attempts to defeat diversity for at least 50 years. In **Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961),** the court had to determine whether Nunn, a Texas state-appointed receiver to administer properties and assets connected with dissolution of an

Illinois bank was the exclusive representative of former stockholders of the bank, so that joinder of three stockholders, domiciled in Illinois, would not defeat diversity jurisdiction. The issue arose after removal when the stockholders moved to remand because they, like the bank, were from Illinois. The district court denied the motion and on appeal the Circuit Court analyzed the statutory powers of a receiver such as Nunn. The court observed first that "It has been established from an early date that the joinder of formal or unnecessary parties cannot prevent the removal of an action to federal court', id. **at 453.** The case turned on the capacity of the receiver to fully represent the stockholders. The court held that Nunn was a general receiver with possession and control of title to assets, thereby representing the entire interest claimed by the shareholders and all rights of action with respect to it. It concluded that the three Illinois stockholders were mere "formal or unnecessary parties, and that their joinder does not prevent removal of the action nor defeat federal jurisdiction". **Id. at 455.**

To the same effect, see **Bradley v. Maryland Casualty Co., 382 F.2d 415, 419 (8th Cir. 1967),** where then-Circuit Judge Blackmun, writing for the court, reiterated the rule that "the presence of nominal or formal or unnecessary parties has no controlling significance for removal purposes", and upheld the refusal of the district court to remand on that ground.

In **Lenon v. St. Paul Mercury Insurance Co., 136 F.3d 1365 (10th Cir. 1998),** the matter turned upon whether Trustees of four union trust funds were Trustees of an express trust under Rule 17 (in which case the citizenship of the Trustees would govern for diversity purposes), or, as the defendant contended, whether the "Trusts" were unincorporated associations where the citizenship of all plan participants had to be diverse from the defendant to sustain jurisdiction. The issue, therefore, was whether the

Trustees were "real parties" to the controversy or simply formal or nominal parties. The court, relying on **Navarro Savings Association v. Lee, 446 U.S. 458 (1980),** said that a trustee of an express trust is a "real party" when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others, and held that the trustees in that case "have such powers", and have "real and substantial" control over the assets held in their names. They "have legal title; they manage the assets; they control the litigation. In short, they are the real parties to the controversy." **Id. at 1370.** The court affirmed the decision of the district court that it had subject matter jurisdiction. **See, also, Aberle Hosiery Co. v. American Arbitration Association, 337 F.Supp.90 (E.D.Pa. 1972),** where the court, in denying a remand motion based on lack of diversity (the moving party plaintiff and the AAA both being citizens of Pennsylvania), found that the AAA "has no interest in the subject matter of this action" and was an unnecessary party which had no controlling significance for removal purposes.

So it is, of course, with the beneficiaries named in the proposed amended complaint. They are all unnecessary, which includes the Durst boys (Matt's sons) who should not be joined as plaintiffs in any event, but even if they were, their status would have no impact on the remand issue.

## C. THE MOTION TO REMAND

For the reasons and upon the authorities cited in "B", *supra*, it is respectfully submitted that this motion should be denied.

## D. THE MOTION TO DISQUALIFY YACOVELLE AS ATTORNEY FOR MATTHEW DURST:

For some unknown reason, given that I have been retired from fully practicing law for almost 25 years, these plaintiffs have been determined to separate me from my client and leave him unrepresented, one way or

another. The most recent prior effort was to notice me for a deposition, thus implicating **RPC 3.7, Lawyer as Witness.** I moved in state court, prior to removal to this court, for a Protective Order on the grounds that a) I was not a necessary witness under the Rule, since 6 other people had participated in the Mediation and b) even were I a necessary witness, my disqualification at that late date would work a substantial hardship on the client.

In the removal process, that motion (as well as the deposition notice) fell through the cracks, so to speak. At the time of our scheduling conference, Mr. D'Elia was asked by Judge Schneider to "send me a letter and let me know why you want to take his deposition". As is his custom, Mr. D'Elia agreed to do so but didn't. Instead, several weeks later, he moves to amend his complaint to sue me for malpractice which means, of course, he will be able at some point to depose me subject to attorney-client and work product limitations. And of course, he moves to disqualify me from representing my client so that he is likely, based on my client's affidavit, going to go from pretty well-defended to entirely undefended. This motion, unlike the previous attempt, implicates **RPC 1.7 Conflict of Interest: General Rule.** The Rule, subject to a multi-pronged exception, prohibits representation of a client if the representation represents a concurrent conflict of interest. Such a conflict, in the present context, would be defined as a significant risk that the representation will be materially limited by "a personal interest of the lawyer".

In section (b), we find the exception: a lawyer may represent a client, notwithstanding the existence of a concurrent conflict of interest if:

(1) [the] client gives informed consent, confirmed in writing, after full disclosure and consultation * * *;

11

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to [the] client;

Subparagraphs (3) and (4) are inapplicable.

These are, I believe, the applicable conflict rules.

As appears from my client's affidavit, we have discussed these rules today, November 18. We have then examined the allegations against him as a Trustee and the allegations against me as his attorney, to see if there were any allegations in defense of which we would have differing positions. I can report, as my client has in his Affidavit, that we have found no instance in which there is any risk, let alone a significant one, that our positions diverge on what has occurred in this matter between July, 2010 and the present. In light of that, I submit a) that there is no significant risk that the representation will be limited by my personal interest in my own defense; hence (b) that there is no concurrent conflict of interest; c) that if there is, the full disclosure and consultation required by the Rule has occurred and the client has given informed consent to the representation; and d) I believe that I will be able to provide competent and diligent representation to the client.

Therefore, in consideration of the fact that I believe I am in the best position—if not the only position—to represent Matthew Durst, based upon my knowledge of the case and the great likelihood that he will be unable to afford to retain anyone else and will not be able to handle this case *pro se*, I ask that this motion be denied.

Dated: 11/19/2012

Respectfully submitted,

_____
John A. Yacovelle,
Attorney for Defendant-Counter-claimants

12