```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA

JAKE BALL TRUST, et al.,       )  12-cv-5255
                               )
               Plaintiffs,     )
                               )
       v.                      )
                               )
MATTHEW DURST, et al.,         )  Philadelphia, PA
                               )  January 15, 2013
               Defendants.     )  9:35 a.m.


                     TRANSCRIPT OF MOTION
             BEFORE THE HONORABLE JOEL SCHNEIDER
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


For the Plaintiffs:        VINCENT D'ELIA, ESQUIRE
                           TERESA M. LENTINI, ESQUIRE
                           THE D'ELIA LAW FIRM, LLC
                           13000 Lincoln Drive West
                           Suite 300
                           Marlton, NJ  08053


For the Defendants/        JOHN ANTHONY YACOVELLE, ESQUIRE
Counterclaimant:           8438 Mackall Road
                           St. Leonard, MD  20685




Audio Operator:            SARAH ECKERT

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           E-mail:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

2

1                          I N D E X

2                                              PAGE

3     Motion                                   3

4     ARGUMENT:

5     Re:  To add the beneficiaries as named plaintiffs

6     BY:  Mr. D'Elia                          5

7     BY:  Ms. Lentini                         10

8     BY:  Mr. Yacovelle                       21

9

10    Re:  To add the two law firms and Kelly Peck

11    ARGUMENT:

12    BY:  Mr. D'Elia                          23

13    BY:  Mr. Yacovelle

14

15    Re:  Plaintiff's request to join         25

16         Mr. Yacovelle as a defendant

17    ARGUMENT:

18    BY:  Mr. D'Elia                          25, 39

19    BY:  Mr. Yacovelle                       32, 44

20    BY:  Ms. Lentini                         41

21

22    THE COURT:

23    Decision                                 46

Colloquy                                                    3

1      (The following was heard in open court at 9:35 a.m.)

2             THE COURT:  Good morning, counsel.

3             MR. D'ELIA:  Good morning, Your Honor.

4             MR. YACOVELLE:  Good morning, Your Honor.

5             THE COURT:  Please be seated.  We're on the record,

6      and this is the matter of Steven and Reuben Durst v. Matthew

7      Durst, docket 12-5255.  Can we have the entries of appearance,

8      starting with the plaintiff, please?

9             MR. D'ELIA:  Good morning, Your Honor.  I am Vincent

10     D'Elia.  I represent the plaintiffs.  Seated to my right is my

11     associate, Teresa Lentini.

12            MR. YACOVELLE:  Good morning, Your Honor.  John

13     Yacovelle for the defendant counterclaimants.

14            THE COURT:  Thank you, counsel.  We're here for oral

15     argument on plaintiff's motion to amend complaint and

16     disqualify Mr. Yacovelle as attorney for Matthew Durst and

17     remove to State Court.  If it hasn't already been made clear,

18     counsel, this Court will address all of those issues except for

19     the issue of whether the case should be remanded back to State

20     Court, but depending upon how the Court rules on the various

21     aspects, it may moot out the remand issue.

22            So the Court has read the papers.  The Court is

23     familiar with the issues.  It's plaintiff's motion.  We'll hear

24     from plaintiff first, but I think a good way to proceed is

25     this, counsel.  There's different parts to this motion, and I

1    broke it down, and I think we ought to deal with the issues

2    separately, and I'll tell you the issues I have, and then you

3    can tell me if I missed anything.

4          One is plaintiffs wants to amend their complaint to

5    add the beneficiaries as plaintiffs; two, plaintiffs want to

6    amend their complaint to assert that Steven Durst is also suing

7    in his capacity as a trustee; three, plaintiffs want to add as

8    defendants on a malpractice claim Halloran & Sage, Robinson &

9    Cole, and Kelly Galica Peck; four, plaintiffs want to add as a

10   defendant Mr. Yacovelle; five, plaintiffs wants to disqualify

11   Mr. Yacovelle.  Those are the five issues I have, and then the

12   last issue is the remand issue, and that's left for Judge

13   Simandle.

14         Counsel, did I miss any issues --

15         MR. D'ELIA:  No.

16         THE COURT:  -- or did I misstate any of the issues?

17         MR. D'ELIA:  No and no.  You identified the issues,

18   and I do not believe you missed any.  That is pretty much what

19   I had.

20         THE COURT:  Okay.  Thank you, counsel.  Let me start

21   with what I think hopefully might be the easiest issue, and

22   that is plaintiff's request to amend the complaint to make it

23   clear that Mr. Steven Durst is pursuing his claim in his

24   capacity as the trustee as well as an individual.  Defendant,

25   is there any objection to that amendment?

1          MR. YACOVELLE:  No objection to that, Your Honor.

2          THE COURT:  Okay.  So eventually, the Court will

3     issue an order granting the amendment to naming Steven Durst,

4     the plaintiff, as an individual and in his capacity as the

5     trustee.

6          Okay.  Next issue.  Plaintiff, you want to add the

7     beneficiaries as named plaintiffs.  Let's address that issue,

8     and like I said, we'll address the issues one at a time.  We'll

9     hear your argument and we'll hear defendant's argument.

10          MR. D'ELIA:  Judge, my argument is very brief.  We

11     felt that in the prior State proceeding, there was a lack of

12     regard for the requirements of the trust in prosecuting that

13     case.

14          In our case, we want to make sure that we have done

15     everything according to the book.  In that regard, we are

16     simply -- we are adding the -- adding those plaintiffs in an

17     effort to make sure that everyone was on notice.  Plaintiffs

18     can choose to opt out.  I understand that they will do that.

19     That's their right to do so.

20          THE COURT:  Well, opt out, this is not a class

21     action.

22          MR. D'ELIA:  No.  No.  I know.  I know it's not, but

23     all as I'm saying is I -- all as I'm doing is making sure

24     everyone is on notice, and I leave it to the discretion of the

25     Court.  It's not a --

1      THE COURT:  Counsel, you're doing more than putting

2  everybody on notice.  You're seeking -- you're representing

3  that you represent these people and you want to join them as

4  named plaintiffs in the lawsuit.  That's a lot different than

5  sending them a letter telling them that this lawsuit is filed.

6  That's very, very different.

7      MR. D'ELIA:  The two trustee -- the two trustees that

8  are active right now, Judge -- I wanted to make sure they were

9  brought in -- I leave to the Court's sound discretion.

10      THE COURT:  Why do you want them in?

11      MR. D'ELIA:  For the reason I've said.  I really want

12  to make sure they're on notice as to what's going on and make

13  sure they understand that they have -- they have the right to

14  assert a claim here.

15      THE COURT:  What -- what should I do about the two

16  beneficiaries who submitted affidavits saying that they don't

17  want to be represented by you and they don't want to be

18  plaintiffs?

19      MR. D'ELIA:  We can dismiss them.

20      THE COURT:  What about the other seven or eight?  How

21  do I know how they feel?

22      MR. D'ELIA:  Two of them have let you know how they

23  feel.  The others have not made any expression --

24      THE COURT:  How do I know they're on notice?  Did you

25  send them a copy -- do you -- are you in an attorney/client

1    relationship with these beneficiaries?

2            MR. D'ELIA:  I'm in an attorney/client relationship

3    with the two trustees who have been in touch with all the

4    beneficiaries, and I'm delighted to provide whatever

5    certification the Court may want to indicate their positions on

6    this.  I'm satisfied from having discussed with the two

7    trustees that the beneficiaries that are the decedents of the

8    grantor are interested in being plaintiffs in the case for

9    sure.

10           THE COURT:  Are you -- you're seeking to represent --

11   I don't know how many there are -- seven or eight or nine

12   people.

13           MR. D'ELIA:  Yes.  There's nine.

14           THE COURT:  Are you representing that you have the

15   authority from each of those nine people to represent them in

16   this lawsuit?

17           MR. D'ELIA:  I cannot say that I talked to them in

18   that --

19           THE COURT:  So then how could you seek to name them

20   as plaintiffs and how can you seek to represent them if you

21   don't have their authority?

22           MR. D'ELIA:  Because I represent the trustees, Your

23   Honor.

24           THE COURT:  So what?

25           MR. D'ELIA:  Well, the trustees have an obligation to

D'Elia - Argument                                    8

```
 1    the -- to the beneficiaries.
 2              THE COURT:  You're seeking to represent, for example,
 3    the defendant's son, correct?
 4              MR. D'ELIA:  Correct.
 5              THE COURT:  And you're seeking to -- you're
 6    representing that you're representing the defendant's son who's
 7    suing his father, right?
 8              MR. D'ELIA:  Correct.
 9              THE COURT:  And that son submitted an affidavit
10    saying you have no authority to act on his behalf?
11              MR. D'ELIA:  But he says --
12              THE COURT:  So how can I grant this motion?
13              MR. D'ELIA:  He -- that's right.  The trustees have
14    indicated that they want to bring the suit on behalf of the
15    beneficiaries, and this beneficiary says I want no part of it.
16    He should be -- he should be dismissed.
17              THE COURT:  Well, how do I --
18              MR. D'ELIA:  How do I protect --
19              THE COURT:  How do I know how the seven or eight
20    other people feel?
21              MR. D'ELIA:  I'd be glad to provide supplemental
22    certifications for Your Honor, and I apologize for not doing
23    that.  Be glad to provide them for you.
24              THE COURT:  Why do we need them in the case?
25              MR. D'ELIA:  I'm sorry, Your Honor.
```

D'Elia - Argument                                          9

 1            THE COURT:  Why do we need them in the case?

 2            MR. D'ELIA:  We need -- so their voices can be heard,

 3    Judge.  I mean, I'm leaving it to your discretion, and I

 4    understand --

 5            THE COURT:  Aren't the --

 6            MR. D'ELIA:  -- your problem here.

 7            THE COURT:  Aren't the trustees the real parties in

 8    interest?

 9            MR. D'ELIA:  Yes.

10            THE COURT:  So why do we need the beneficiaries in

11    the case?

12            MR. D'ELIA:  The beneficiaries tried to have their

13    voices heard in the State Court action, and they were denied.

14    They --

15            THE COURT:  The beneficiaries or your clients sought

16    to intervene in the State case?

17            MR. D'ELIA:  Clients sought to intervene, and the

18    beneficiaries, although they did not, because we never got that

19    far, because the Judge had mooted -- decision mooted out the

20    issue, but the beneficiaries were going to be joined in that

21    case had the intervenors been allowed to proceed and had the --

22    had the settlement been set aside.

23            THE COURT:  Joined as what?  Plaintiffs?

24            MR. D'ELIA:  They would have been joined as

25    intervenors, as the other intervenors were.  Teresa -- maybe

1    Teresa can answer that for you.

2              MS. LENTINI:  Your Honor, I just wanted to add for

3    the -- bring it to the Court's attention that there are

4    different denominations of beneficiaries under the trust

5    agreement.  The primary beneficiaries, there are eight of them.

6    All eight of them are the children of Steven Durst.  Three of

7    those children did come forward in the State litigation at the

8    time that Reuben Durst and Steven Durst were -- had petitioned

9    to intervene to object to the settlement agreement and to be

10   heard.  They were not heard.  They were not joined.  They --

11   you know, there was no consideration by the State Court, but

12   this is not a trust that operates where all the beneficiaries

13   are on an equal level.

14             These are Mr. Steven Durst's nine children who are

15   the primary beneficiaries, and the depletion of the trust --

16             THE COURT:  Nine or eight?

17             MS. LENTINI:  There's eight.  I'm sorry.  I gave him

18   another one.  The depletion of the trust affects these eight

19   children primarily, because when we go through the trust

20   agreement and get further into this matter, Your Honor will see

21   that there are secondary beneficiaries to it, and part of the

22   claim in this for the malpractice and also for the

23   misappropriation of the funds and breach of fiduciary duty is

24   that distributions were made by the defendant to his children

25   as the beneficiaries in breach of his fiduciary duties and in

Lentini - Argument                                    11

1    breach of the terms.

2              So the primary -- the beneficiaries with the most to

3    lose are Steven Durst's children, and he is the one who

4    originally set up this trust, and he's the one who initially

5    funded it.  This was all his money.

6              THE COURT:  Well, my question to you is in your

7    proposed amendment --

8              MS. LENTINI:  Is to add --

9              THE COURT:  This --

10             MS. LENTINI:  -- add all of them, because --

11             THE COURT:  This is -- you're making an entirely new

12   argument that wasn't in the brief.  Your motion does not

13   distinguish between primary and secondary beneficiaries,

14   correct?

15             MS. LENTINI:  My -- no.  You are correct, Your Honor.

16   My --

17             THE COURT:  Your motion seeks to join all the

18   beneficiaries.

19             MS. LENTINI:  Absolutely, because who am I to decide

20   who doesn't want to be involved in it and who does not?  That

21   is their decision.

22             THE COURT:  Yes, but how could you -- how could you

23   seek to represent them without authority to act on their

24   behalf?

25             MS. LENTINI:  Because the trust -- the trust gives us

Lentini - Argument                                12

 1    the right to act on their behalf.

 2               THE COURT:  Why do they --

 3               MS. LENTINI:  We have a --

 4               THE COURT:  Why do they need to --

 5               MS. LENTINI:  We have a fiduciary right to -- I mean

 6    the fiduciary obligation to represent them and protect them,

 7    and if it comes down to, you know, Mr. Durst's nine children,

 8    the primary beneficiaries with the greatest losses all want to

 9    remain as participants in this, then they came remain as

10    participants.  We have no objection if someone does not wish to

11    participate.

12               THE COURT:  But aren't the beneficiaries' interests

13    being protected by the trustees?  That's their job.

14               MS. LENTINI:  They may feel that it's not being --

15    they're not being represented, because there's a dispute

16    between the trustees.  They may not agree with either trustee.

17    They may want their own counsel, and we don't want to get --

18    turn around in six months from now or a year from now and have

19    one of them come back and say both of you are wrong and we're

20    going to come after both of you or we're going to come after

21    you or come after your trustees.

22               All -- it's -- all we want to do is give them the

23    opportunity to be represented.  If they choose not to be part

24    of this or they choose to say, you know, we want to be

25    represented by Mr. D'Elia or want to be represented -- you

1    know, our interests are with Mr. Yacovelle, then that's fine.

2            THE COURT:  But aren't you doing it backwards?

3    Shouldn't you get that authority before you week to name them

4    as plaintiffs in the case?  Here, what you're doing is you're

5    seeking to name them in a case, and then if they come to you

6    and say I don't want you to represent me, well, okay, we'll

7    take you off the caption.  Shouldn't you do it the other way

8    around?

9            MS. LENTINI:  We can do it that way, Your Honor.

10   That's a legitimate point, and it accomplishes the same manner.

11   I can do it that way and then resubmit for the ones, if any --

12   you know, any of the ones who wish to be specifically named and

13   represented or if any of them wish to have their own counsel

14   enter appearance.

15           THE COURT:  Do you believe that the beneficiaries are

16   real parties in interest?

17           MS. LENTINI:  Yes.

18           THE COURT:  Are they necessary parties?

19           MS. LENTINI:  I believe that -- I believe that they

20   are, and the only -- the reason that I believe that they are is

21   because this is not a dispute between the trust and the Goodman

22   (phonetic) entities, like it was in the State litigation.  This

23   is a dispute between the trustees that directly affects them,

24   and whether or not they're being properly represented or

25   whether or not their direct interests are being heard by the

1    Court in a manner in which they want to present it or what

2    issues they feel is important, then yes.

3              I can't determine what part would be the most

4    important to them.  I mean, we are going forward to try and

5    represent the trust in the best fashion in accordance with the

6    trust agreement, but we also have issues of malpractice.  We

7    also have issues with Ms. Peck and the Holloran and the other

8    law firm that drafted the trust agreements.

9              So we are going to be coming before this Court asking

10   for interpretation of a trust agreement, interpretation of two

11   amendments which follow it, and all of that is going to affect

12   them.  It's not just about Matthew Durst or Mr. Yacovelle.

13   This is about the original trust and the two subsequent

14   amendments, and all of it's going to come into issue.

15             So if they want to be present and they want their own

16   attorney or they -- they have a right to be a party and stand

17   up and stay we disagree with that interpretation or we disagree

18   with how that was drafted or no, this -- because all of that is

19   going to be before this Court.  This is not just one minor

20   issue of --

21             THE COURT:  Suppose a beneficiary doesn't agree with

22   the position taken by one of the plaintiff trustees.  Then

23   what?

24             MS. LENTINI:  Then they're going to have to get their

25   own counsel, and we'll have to address that before the Court,

1    and there would be a recommendation.

2              THE COURT:  If I permit the joinder --

3              MS. LENTINI:  Uh-huh.

4              THE COURT:  -- of these beneficiaries, does this

5    Court still have jurisdiction over the case?

6              MS. LENTINI:  It would depend -- it would -- on the

7    face of it, no, but since we've already been notified that two

8    of the beneficiaries do not wish to be -- secondary

9    beneficiaries do not wish to be joined, I believe that the

10   Court would still have jurisdiction.  So we would not name them

11   as plaintiffs.

12             THE COURT:  Do you believe -- let's assume that the

13   beneficiaries or at least some of them are joined.

14             MS. LENTINI:  Uh-huh.

15             THE COURT:  When the Court looks at whether it has

16   diversity jurisdiction over this case, do you believe the Court

17   should look to the citizenship of the beneficiaries in addition

18   to the citizenship of the trustees?

19             MS. LENTINI:  Yes.

20             THE COURT:  And what authority do you have for that?

21             MS. LENTINI:  (No audible response).

22             THE COURT:  Can I respectfully suggest, counsel --

23             MS. LENTINI:  Yes, Your Honor.

24             THE COURT:  -- that you take a look at the Supreme

25   Court's decision in Navarro?

 1          MS. LENTINI:  Navarro, Your Honor?

 2          THE COURT:  Navarro.

 3          MS. LENTINI:  Navarro.

 4          THE COURT:  N-A-V-A-R-R-O.

 5          MS. LENTINI:  Uh-huh.

 6          THE COURT:  446 U.S. 458 (1980).

 7          MS. LENTINI:  I will look at that, Your Honor, but --

 8          THE COURT:  And you may want to --

 9          MS. LENTINI:  The issue --

10          THE COURT:  I don't know what they call it these

11   days, Shepardize or key cite.  Judge Irenas recently wrote an

12   opinion on that a few months ago about the citizenship in this

13   context, and I would respectfully request that you should

14   examine whether the citizenship of the beneficiaries is

15   relevant for diversity purposes when the trust is not a party

16   to the case, and then I would ask -- I'm going to ask you and

17   your colleague that the argument being made by the defendant is

18   that the only reason you're seeking to join these beneficiaries

19   is to destroy diversity and remand the case, and I'm suggesting

20   that you look at the case law and examine whether or not the

21   citizenship of the beneficiaries has any relevance to the

22   diversity issue, and if it doesn't, do you still want to join

23   these beneficiaries.

24          MS. LENTINI:  Your Honor, respectfully, the two

25   beneficiaries that have already notified us, the secondary

 1   beneficiaries, so the Matthew Durst children, they've already

 2   notified us that they do not wish to participate as a party to

 3   the action.   Therefore, whether it went by the citizenship of

 4   the trust or the citizenship of the beneficiaries, it becomes

 5   irrelevant.

 6          There is no -- diversity of jurisdiction is not

 7   destroyed at that point, and therefore, actually, the remand

 8   back to the State Court would be -- on that issue is not

 9   relevant.

10          THE COURT:   What about the seven or eight or nine --

11          MS. LENTINI:   They're all --

12          THE COURT:   -- other people?

13          MS. LENTINI:   No.   They're all different places.

14   There's no -- diversity is not affected at all.

15          THE COURT:   So the only people who might affect

16   diversity are who?   Matthew --

17          MS. LENTINI:   Matthew Durst's --

18          THE COURT:   -- Durst, Jr.?

19          MS. LENTINI:   Two children.

20          THE COURT:   His two children.

21          MS. LENTINI:   His two children.

22          THE COURT:   And they're the only two people who could

23   destroy diversity --

24          MS. LENTINI:   Yes.

25          THE COURT:   -- in your judgment?

1          MS. LENTINI:  Out of all of the beneficiaries.

2          THE COURT:  So at the end of the day, this remand

3    issue may be moot.

4          MS. LENTINI:  Correct, Your Honor.

5          MR. D'ELIA:  Correct.

6          THE COURT:  Okay.  But we're going to follow up by

7    supplemental briefs after this hearing, and I'm going to ask

8    the plaintiffs, you know, to clarify their position about

9    whether they still believe it's necessary or appropriate to

10   join the beneficiaries if their joinder will not impact whether

11   this case is remanded or not.

12         MS. LENTINI:  Your Honor, would you like me before we

13   -- would you like me to -- I think it might be -- because you

14   brought this up also, is to directly contact you and receive --

15   provide an affidavit from anyone who wishes to be a party?

16         THE COURT:  We'll circle back at the end of this

17   argument or during this argument about that point.  That's

18   something that I am considering, because let's assume for the

19   sake of argument you come up with seven or eight affidavits of

20   people who say yes, they want to become parties.

21         MS. LENTINI:  Uh-huh.

22         THE COURT:  I'm still not convinced yet of a good

23   reason why they should be joined as plaintiffs in the case if

24   they're "merely only beneficiaries", because the trustee, the

25   two plaintiff trustees are there to represent their interests.

Lentini - Argument                                    19

1   So why do we need the beneficiaries there?

2          Suppose there were a thousand beneficiaries of this

3   trust.  Would all thousand be a plaintiff in the case?

4          MS. LENTINI:  They potentially could be, because the

5   Federal rules don't prohibit them from being.  The rule

6   provides that the trustee may proceed without naming them.  It

7   doesn't prohibit them from listing them, and that does seem

8   absurd when you put it that way.  It does.

9          The primary concern here are Mr. Durst's children,

10  the eight of them.

11         THE COURT:  Which Durst?  We have to be careful.

12         MS. LENTINI:  I'm sorry.

13         MR. D'ELIA:  Yes.

14         MS. LENTINI:  Steven Durst's children, does not

15  destroy diversity, but there was no way to bring this without

16  -- we couldn't list eight and say, you know, the rest of you

17  not --

18         THE COURT:  Why not?

19         MS. LENTINI:  Why not?  Because then it would be in

20  front of you, and you'd be asking me why didn't you list the

21  rest of them.  I -- the rule is to put more people on notice

22  than less people --

23         THE COURT:  One --

24         MS. LENTINI:  -- but --

25         THE COURT:  One way the Court can handle this is to

1    say -- and I don't know which way I'm going to rule right now,

2    but one way I could handle this is to say if the Court decides

3    that the beneficiaries should be plaintiffs, if they want to,

4    that the amendment is granted only as to those plaintiffs who

5    submit affidavits saying they want to be a party to the case.

6    That's one way to handle it, or the other thing is to say that

7    in the Court's discretion, we don't need them and it will just

8    unduly complicate the case and the request is denied.

9           I don't know which way I'm going to rule on that

10   issue, but --

11          MS. LENTINI:  And Your --

12          THE COURT:  -- I think what we have clarified though

13   is that no matter how this motion winds up, a remand issue is

14   going to be moot --

15          MS. LENTINI:  Correct.

16          THE COURT:  -- seems to me.  Okay.  All right.  Let's

17   -- we're still on this beneficiary issue.  Let's go to defense

18   counsel, what you have to say about it.  I mean, it's -- now

19   it's -- now the plaintiffs are acknowledging that your clients

20   -- are they both children of Matthew Durst?

21          MS. LENTINI:  Yes, Your Honor.

22          THE COURT:  Okay.

23          MR. YACOVELLE:  Actually, there are three, Judge.

24          THE COURT:  Okay.

25          MR. YACOVELLE:  He has a minor who we had to cross

1    out papers and another minor who just became an adult, and then

2    he's got the third son that's at the University of Delaware who

3    filed a separate affidavit.  All three of them want no parts of

4    it as well as, by the way, I believe that we filed an affidavit

5    from a Mrs. Nagua (phonetic), who had two of the proposed named

6    beneficiaries.  She wanted no parts of it on her behalf, and I

7    saw a copy of a letter from a man named Rayle (phonetic) who

8    lives out in Wisconsin who sent a letter to Mr. D'Elia telling

9    him that he'd heard that he was going to be a plaintiff and

10   that he wanted no parts of it.

11              THE COURT:  Can you give me the names first of your

12   client's three children?

13              MR. YACOVELLE:  Yes.  Benjamin.

14              THE COURT:  Benjamin C. Durst?

15              MR. YACOVELLE:  Right.  Thomas.

16              THE COURT:  Thomas S. Durst?

17              MR. YACOVELLE:  Yes.  And Matthew, Jr.

18              THE COURT:  I don't see -- oh, is that Matthew R.

19   Durst?

20              MR. YACOVELLE:  I guess it is.  Yes.  Yes.

21              THE COURT:  Okay.  Those are the three children of

22   your client who you strongly suspect don't want to sue their

23   father.

24              MR. YACOVELLE:  Right.  And by the way, they are the

25   only people in this application who have anything to do with

 1   diversity, because they live in Connecticut, like their father,

 2   domiciled.

 3              THE COURT:  I think we're agreed that that issue --

 4              MR. YACOVELLE:  Yes.

 5              THE COURT:  -- is now moot.

 6              MR. YACOVELLE:  Right.

 7              THE COURT:  I don't think we have to go there.

 8              MR. YACOVELLE:  Right.  In which case, other than one

 9   point, I don't have anything else to add on this beneficiary

10   issue, and that is, since Your Honor is considering different

11   ways to do it -- deal with it, if these beneficiaries came

12   forward in the Superior Court of New Jersey and said they

13   wanted to be heard, made application of any kind whatsoever to

14   that Court and were turned away, I must have been in a coma

15   somewhere, because I never heard of it.  Didn't happen.

16              THE COURT:  Okay.  So we're going to circle back

17   about this beneficiary issue, but we've already addressed it.

18   The next issue I'd like to address is the request to amend the

19   complaint to add the two law firms and Kelly Peck.  Is that a

20   Ms. Peck?  Is Kelly a woman?

21              MR. D'ELIA:  It's --

22              MR. YACOVELLE:  Yes.

23              MR. D'ELIA:  -- Ms.  Yes.

24              THE COURT:  Okay.  And as I understand it, plaintiff,

25   the allegation is it's a malpractice claim against them.  I'm

1    hearing that they what, drafted the trust documents?

2           MR. D'ELIA:  Yes, Your Honor.  Without getting into

3    an enormous amount of detail, there was a letter from Kelly

4    Peck wherein she recommended that the trust contain certain

5    provisions, and the actual trust documents are missing most of

6    those provisions resulting in a situation that caused losses to

7    the trust.

8           In addition, she gave an opinion letter with regard

9    to valuation of certain assets wherein she indicated she had

10   reviewed certain documents, which, if she had reviewed them,

11   she would have found there was a provision that would have

12   greatly diminished the value of that particular asset.  So we

13   believe that there is a claim against her for that, and that's

14   why we're --

15          THE COURT:  Did Ms. Peck work for these two firms?

16          MR. D'ELIA:  Yes.

17          THE COURT:  For both of them?

18          MR. YACOVELLE:  Successively.

19          MR. D'ELIA:  She went from one to the other.  That's

20   -- am I answering your question?

21          THE COURT:  Is there any objection to the amendment

22   to name these three "legal malpractice defendants"?

23          MR. YACOVELLE:  Judge, I don't speak for any of them

24   up there, and so I'm really not in much of a position to

25   object.  It's --

1          THE COURT:  Yes, you are.  You're the defendant.

2          MR. YACOVELLE:  Well --

3          THE COURT:  You can object on -- it will make the

4     case unduly complex --

5          MR. YACOVELLE:  It will make it -- yes.

6          THE COURT:  -- et cetera, et cetera.

7          MR. YACOVELLE:  Well, it's going to get unwieldy

8     enough anyway.  So -- on other matters.  So I don't have

9     anything in particular to offer there except to point out --

10    and it's pretty interesting -- that the plaintiffs who claim

11    that a certain asset is worth a ton of a money --

12         THE COURT:  We'll get into that.

13         MR. YACOVELLE:  -- are now complaining --

14         THE COURT:  We'll get into that.  We'll get into that

15    issue, but I'm hearing that you don't object to the joinder of

16    these three legal malpractice defendants.

17         MR. YACOVELLE:  No.  I need company, Judge.

18         THE COURT:  So that will be granted except,

19    plaintiff, I'm going to ask you to properly plead the

20    citizenship of these three proposed additional defendants.  I

21    think your amended complaint says something to the effect that

22    she's a Connecticut lawyer and these are Connecticut law firms.

23         MR. D'ELIA:  Got you.

24         THE COURT:  I don't think that satisfied the

25    jurisdictional requirements.  So we'll just have to clarify

1     that to make it comply with the applicable law.

2            Now I think we get to the -- maybe the most

3     contentious issue, and that's plaintiff's request to join Mr.

4     Yacovelle as a defendant in the case, and what flows from that

5     is if that's granted, whether or not he necessarily must be

6     disqualified.  Plaintiff, tell me if I'm summarizing, and if

7     I'm not, I want to hear it from you, the essence of the

8     plaintiff's claim against Mr. Yacovelle.

9            I think what I understood from reading the pleadings,

10    proposed pleadings and your brief, is that Mr. Yacovelle

11    represented Matthew Durst in connection with this litigation

12    that was filed in State Court in Cumberland County.  That case

13    was eventually settled, and I know defendant is going to want

14    to get into the collateral estoppel issue, but that's an issue

15    for Judge Simandle.

16           My understanding of your claim is, and I want you to

17    correct me if I'm wrong, is that you're saying that Mr.

18    Yacovelle as the attorney for Mr. Durst should have taken

19    certain actions in that case that he didn't take and/or should

20    have notified your clients of certain developments in that

21    case, which he didn't do.  So help me understand what you're --

22    if I'm understanding your claim against Mr. Yacovelle

23    correctly, and what is your claim about?

24           MR. D'ELIA:  Okay.  Mr. Yacovelle represented Matthew

25    Durst in his capacity as trustee.  The real -- the party -- I'm

D'Elia - Argument                                26

 1   using this term loosely -- in interest, if you will, was the

 2   trust, not Matthew personally.  In represent --

 3            THE COURT:  But there's no dispute about that.

 4   That --

 5            MR. D'ELIA:  No.  No.  No.  But --

 6            THE COURT:  That's how the complaint was captioned.

 7   He represented Matthew Durst as a trustee.

 8            MR. D'ELIA:  Okay.  So -- and Matthew Durst as the

 9   fiduciary who had a responsibility to the beneficiaries and to

10   the trust.  During that -- during that -- the trust documents

11   are very clear that two trustees have to make the decisions.

12   That was ignored by Matthew Durst and his attorney.

13            There was provisions that certain assets were pledged

14   as collateral to the grantor that were dissipated in the course

15   of the settlement without any consultation with the -- with the

16   other trustee or with the creditor of that particular asset.

17            There was -- additionally, in settling the case, they

18   had failed -- like I said, failed to consult with the other

19   trustee, didn't consider the valuations that were put on the

20   properties in making the settlement.  We believe that there are

21   a whole series of breach of fiduciary obligations by Matthew

22   and his then attorney.

23            THE COURT:  So my question is everything you just

24   said, those are questions of fact, and they're going to be

25   issues that may or may not be litigated in this case.

1          MR. D'ELIA:   Correct.

2          THE COURT:   Aren't those claims against Matthew?

3    You're saying Matthew breached those duties, Matthew entered

4    into the settlement without authority., Matthew undervalued

5    this property, Matthew didn't act in the best interest of the

6    trust.   I understand that claim.   How do you get a claim

7    against Mr. Yacovelle?   He's an attorney for Matthew Durst.

8    He's not your client's attorney.

9          MR. D'ELIA:   My client being the trust?   He certainly

10   was the attorney for the trust, and in representing the trust,

11   he failed -- he failed to discharge his --

12         THE COURT:   Why is he an attorney for the trust?   The

13   plaintiff in the case --

14         MR. D'ELIA:   -- is Matthew Durst, trustee.

15         THE COURT:   -- is Matthew Durst as a trustee.

16         MR. D'ELIA:   Of the trust.

17         THE COURT:   He has represented one trustee in the

18   case.   In fact, the trust was dismissed as a party.   So he

19   couldn't represent the trust.

20         THE COURT:   Well, on the -- the technical legal basis

21   that a trust doesn't have standing, that the right way to do it

22   is in the name of the trustee, but at the end of the day, it

23   was the trust and the trust assets, and in representing that

24   trust, he disregarded his obligations to the trust, and you

25   have another trustee --

D'Elia - Argument                           28

 1          THE COURT:  Who's he?  Matthew -- yes.

 2          MR. D'ELIA:  Yes.

 3          THE COURT:  Yes.  Matthew Durst, Jr., yes.  Your

 4    claim is he disregarded his obligations to the trust and the

 5    trustees.  Understand the claim.  That's going to be litigated.

 6          MR. D'ELIA:  Correct.

 7          THE COURT:  How do you get to Mr. Yacovelle?  He's

 8    the attorney.

 9          MR. D'ELIA:  The attorney -- the for the trust

10    disregarded the trust documents in settling a case.  The

11    attorney for the trust disregarded the asset that was pledged.

12    The attorney for the trust said the loan that was the basis for

13    the -- that the collateral was based upon had been paid in full

14    when his own accounting showed it wasn't paid in full.  These

15    are all acts of malpractice against the trust.

16          Now, all as I want is my day in court to present

17    that.  I'm only asking to amend the complaint so I can present

18    -- so I can make that claim, and that claim is against the

19    attorney who committed those acts of malpractice against the

20    trust.  The other trustee is now -- the other trustees are now

21    claiming that he acted in -- he committed malpractice by

22    engaging in these acts.  If the Court later concludes that

23    that's not an act of malpractice, I understand it.  Today, I'm

24    just asking to let me amend the complaint to assert it.

25          THE COURT:  Here's what I'm wrestling with, counsel.

1   Mr. Yacovelle represents Matthew Durst as a trustee.  As far as

2   I can see, he never represented in any of the papers that he

3   represented Reuben or Steven Durst.  I'm assuming -- and I

4   could be wrong -- that Mr. Yacovelle is going to stand up and

5   say Matthew Durst had the authority to act as he did and he

6   didn't need the permission of the other trustees, but that's

7   going to be an issue that's going to be litigated.

8             If Mr. Yacovelle's client was Matthew Durst only, how

9   can two nonclients sue him for malpractice?  His -- if you were

10  representing Matthew Durst and Matthew Durst was saying Mr.

11  Yacovelle committed malpractice, that's a no-brainer, right?

12  But your clients are not in an attorney/client relationship

13  with Mr. Yacovelle.  So how could they have a basis for

14  asserting a malpractice claim against him?  That's what I'm

15  wrestling with.

16            MR. D'ELIA:  I understand what you're wrestling with.

17  Let's take your example from earlier.  Suppose there were a

18  thousand trustees, and it said it has to be -- decisions have

19  to be made by a majority of the thousand trustees and Mr.

20  Yacovelle took one trustee, represented the one trustee,

21  depleted the trust assets, disregarded the loan and the

22  collateral and committed what we can -- we believe are the acts

23  of malpractice in representing the trust's interests without

24  regard to all those other trustees.  You're telling me the

25  other 999 trustees have no claim against him.  I disagree, and

1    I disagree, because, in essence, he was representing the trust,

2    Matthew Durst, trustee, and he -- he reads the document.  It

3    says decisions have to be made by two.  I'm just going to go

4    with the one, and I'm going to make decisions that are going to

5    result in substantial assets being depleted.  I'm going to

6    allow the collateral to be sold -- to be conveyed despite the

7    fact that there's a lien -- there's a security interest against

8    it, et cetera, et cetera, et cetera.  These are acts of

9    malpractice that the -- if the -- the trustees have to -- they

10   have to be able to assert that claim.

11          And you're right.  When he says I only represented

12   one of the thousand trustees, so only that one can sue him, I

13   disagree.  His acts were against the trust.

14          THE COURT:  The -- well, that's going to be the --

15   probably the key question.  You're saying that Mr. Yacovelle

16   not only represented Matthew Durst, but he also represented

17   Steven and Reuben Durst.  That's what you're saying.

18          MR. D'ELIA:  I'm saying he had an obligation to

19   represent them by virtue of the fact that he was representing

20   Matthew in his capacity as a trustee.  If I had a document that

21   says decisions can only be made by me and you and I, as the

22   attorney, went and let the decisions be made by one and I

23   proceeded against the third -- that third party, that third

24   party absolutely has that claim.

25          In this case, it's a trust instrument.  He had an

1    obligation to the trust, and again, I'm not here to argue the

2    case.  I'm here to argue please let me have my day in court on

3    that issue, and I believe it's a legitimate issue.  Did he

4    represent the trust or not represent the trust, and if he

5    represented the trust, we respectfully submit he committed

6    malpractice in that representation.

7              THE COURT:  You are going to have your day in court,

8    because no matter what happens with the joinder of Mr.

9    Yacovelle, you're going to make this claim against Mr. Durst,

10   Mr. Matthew Durst.  You're going to say Mr. Matthew Durst, you

11   didn't have authority to act in that State case without the

12   approval, authority, what have you, of Steven and Reuben.  So

13   you're going to have your day in court.  The issue --

14             MR. D'ELIA:  I want my day in court against the

15   attorney who disregarded the trust documents in allowing that

16   to happen.

17             THE COURT:  A legal issue is going to be what duty

18   Mr. Yacovelle owed to Steven and Reuben.  That's the legal

19   issue, did he owe a duty to them.  There's no question he owed

20   a duty to Matthew Durst.  That was his client.

21             MR. D'ELIA:  To the disregard of the trust.  To the

22   detriment of the trust.  I respectfully disagree, because the

23   end of the day, he was representing the trust, and he failed in

24   discharging that obligation.

25             THE COURT:  Okay.  Let's hear from Mr. Yacovelle --

 1              MR. D'ELIA:  Thank you.

 2              THE COURT:  -- and then we'll come back.

 3              MR. D'ELIA:  Thank you, Your Honor.

 4              MR. YACOVELLE:  Judge, I didn't go into any response

 5    on this issue in the brief simply because I'm a little

 6    squeamish about it, and I don't want to be in a position of

 7    making arguments when I obviously have a personal interest in

 8    the success of the arguments, and so I didn't go into any

 9    detail about it, but Your Honor has hit on the issue, which is

10    from the very first minute of my involvement in this case, I

11    was told I would be appearing from Matthew Durst, the trustee,

12    the trustee of the Jake Ball Trust.  Heard that from none other

13    than Steve Durst, who at the time represented himself as

14    grantor, but we now learn maybe he was even a trustee, maybe.

15    I'm not conceding that, but we'll see how that turns out.

16              Anyway, and if you look at any of the documents, any

17    of the assets that were obtained, anything that was put into

18    the trust, all the paperwork says Matthew Durst, trustee, owns

19    a ten percent interest, Matthew Durst, trustee owns a 20

20    percent interest, Matthew Durst, trustee had to sign the notes

21    on the 1600 building and so forth, and this other fellow never

22    appeared until after the case was settled, Reuben.  Never heard

23    him.  Didn't know him.  Never met him.  Never reported to him.

24              And, by the way, when this -- when this trust

25    agreement surfaced, which happens, by the way, to have been

1    after the case was settled, it doesn't say that it requires two

2    people to decide the case.   It says that no one can question

3    the authority of the trustee, the trustee, either of them

4    really, I guess, on the papers, to settle the case.   And so the

5    representation was made at a settlement conference and in court

6    by Matthew that he had authority to settle the case, which, if

7    you read the documents, he did, and he settled the case.

8           Now, if Matthew came along and said well, my lawyer

9    told me I could do this and I shouldn't do that and he was

10   wrong and I believed him and I went ahead and settled this case

11   but I wouldn't have except for his bad advice, now we have

12   Matthew sitting with a cross-claim, I guess, or a third-party

13   claim, some kind of a claim against me for negligence in

14   advising him.   We would have that situation.   How we get to a

15   duty to these other two gentlemen is a serious question.

16          Now, I understand that the cases out of New Jersey

17   and this Court are very liberal when it comes to amending

18   complaints, and I also understand that in the context of

19   malpractice actions by your client, that can be going on right

20   during the course of a trial where you're still representing

21   your client.   That's <u>Circle Motors</u>, <u>Mystic Island</u>.   Those are

22   New Jersey cases, and there's also cases out of this Court,

23   and, in fact, it has to, because if -- if the claim exists and

24   is a known claim by a party that has a justiciable interest and

25   he doesn't bring it, it's barred even though it creates all

1   kind of confusion during the case, because he's suing his own

2   lawyer, and that, of course, is a consequence of the entire

3   controversy doctrine, which is a New Jersey doctrine which is

4   followed in this Court.

5           So if you have a legitimate claim, you have to make

6   it.  If it throws the case into confusion and turmoil, that's

7   something under Federal case and State cases -- Justice Handler

8   wrote most of these decisions, by the way -- the Court is

9   supposed to manage.  He doesn't say you can't bring the claim,

10  because you're on record now.  You've made your claim and there

11  you are, but the Court can then say well -- and it's also under

12  I guess Rule 42 maybe.  I could be wrong about that number --

13  can lead to bifurcation, can lead to separating out the

14  malpractice claims from the other claims, and remember here,

15  we've got a jury demand and we've got the whole rest of the

16  case, nonjury, equitable issues and that kind of thing.

17          So there are ways to deal with it.  If it's a

18  legitimate claim, there are ways to deal with it, but it's

19  really not a valid claim if there's no attorney/client

20  relationship, if there's no duty, and the -- basically, the

21  claim is saying well, I didn't advise Matthew.  They don't know

22  what I advised Matthew.  Matthew hasn't testified to any of

23  this stuff, and they'll find out when they take his deposition,

24  but -- and it won't be too late then for that matter if they

25  come up with some ground to amend.

1        THE COURT:  I think the issue that I want to focus on

2   is the futility argument and did you owe a legal duty to Steven

3   and Reuben Durst which would give them standing to assert a

4   legal malpractice claim against you.  That is the issue that

5   I'd like to focus on, and we can get to the management issues,

6   the severance issues at some other time, if necessary.

7        But do you believe that you had a legal duty to

8   Steven and Reuben such that they have standing to assert a

9   legal malpractice claim against you?

10        MR. YACOVELLE:  I don't see what it could have been

11   founded on.  First of all, Steven got me into it, because he

12   had a conflict as the grantor.  That's what he said to me.  So

13   he gets me into the case, and from them on, my primary job is

14   keeping him at a distance, because he tries to run everything,

15   and so therefore, I have to keep -- keep my client on course,

16   and there was never any question that Steve Durst thought for

17   one second that I was representing him.  Now -- he comes along

18   now and he says oh, by the way, I was a trustee the whole time,

19   which is kind of interesting, and if he was a trustee the whole

20   time, had I known that he was a trustee the whole time, had he

21   known that he was a trustee the whole time, then we might have

22   gotten into some situation where I was representing two

23   trustees, because he was a -- but, of course, then there would

24   have been a conflict anyway, because he had -- he had certain

25   conflicts.  He was a creditor of the trust.  He had various

1    conflicts.  So I don't see any way there's a duty to him.

2          Now, this other fellow, I've described him not

3    unkindly, but accurately in various filings.  The trustee,

4    Reuben Durst, as being inert, not just immobile but inert.  He

5    was down in Georgia.  He had written or signed a letter through

6    the trust attorneys in Connecticut confirming what he had told

7    Matthew, which is you take care of this, I don't want anything

8    to do with it, and he never had anything to do with it except

9    borrow money a couple times through straws.

10          I don't know where I could get a duty as far as he's

11    concerned.  I'm still -- I don't believe I've ever heard from

12    him outside of in these pleadings.

13          So I think if the Court is focused on this question,

14    that probably it ought to be briefed.  I don't think it's been

15    briefed by anybody, and I think it's significant, and that

16    would be my suggestion.  I'm just saying -- and I'm talking a

17    lot of facts here, because I don't know how else to answer the

18    question.

19          THE COURT:  If you're joined, does it necessarily

20    result in your disqualification?

21          MR. YACOVELLE:  No.  It almost necessarily doesn't.

22          THE COURT:  You think if you're a party defendant,

23    you can also represent your client?

24          MR. YACOVELLE:  Yes.  I think he can -- he can give

25    informed consent to that representation, number one, and number

1   two, they've gone -- they've gone one step further than they

2   probably should have, because if I'm a defendant, then there's

3   no question I can testify.  I'm representing myself pro se.

4   There's no question I can try the case, and if some of it

5   washes off onto Matthew, too bad, whereas if I weren't a

6   defendant and they came in with this argument, they might be in

7   a better position, but that's a question that -- whether I'm

8   defendant or not is something I think should be briefed

9   further.

10          THE COURT:  You think that if you're -- if, capital

11  I, capital F -- you're a defendant, you think your client can

12  give informed consent to you still representing him?

13          MR. YACOVELLE:  I believe so.  Yes, because actually,

14  he's already done it in an affidavit.  He's already filed an

15  affidavit in response to this motion.  We've been over all of

16  this though.  There's no distance between us.  There's no

17  daylight between us.  They may think there is, but that's

18  fanciful.  They don't know a thing about our conversations.

19          So there's no distance between us, and he I'm sure

20  could do that, but the -- see, my position as a defendant is a

21  lot stronger than the position of the lawyers in the cases that

22  were cited here.  First of all, the -- oh, the decision by

23  Magistrate Judge Rosen, which was -- they're all Italian cases,

24  by the way, every one of them, plus me and Mr. D'Elia and Ms.

25  Lentini.  Italian case.

1          All right.   That's <u>Vacarelli</u> (phonetic).   <u>Vacarelli</u>

2    is a case where the Court said that the attorney was going to

3    be disqualified because he was a necessary witness.

4    Subsequently, several years later, Judge Debevoise wrote an

5    opinion in a case called <u>Main Events</u>, and he didn't follow

6    that.   He -- matter of fact, he reversed the Magistrate Judge

7    who had followed it, and he --

8          THE COURT:   I've written on this issue.   I mean, I

9    know the distinction between discovery and trial.

10          MR. YACOVELLE:   Right.

11          THE COURT:   I know what you're talking about.

12          MR. YACOVELLE:   Right.   So --

13          THE COURT:   But if you're a party defendant, you're

14    going to testify at trial.

15          MR. YACOVELLE:   Oh, I know.   I know.   So let me say

16    this.   In the interest of sound judicial management, there --

17    there were a lot of difficult things that happen if --

18    depending upon how these motions are decided, and it's

19    significant enough that I don't think it would kill us to brief

20    the duty issue, because there may be some need for some

21    affidavits, some factual stuff and so forth, you know.

22          But other than that, no.   I think -- I think if I'm a

23    party, I really don't know, you know, what options the Court

24    would take, but I do know that I would be able to participate

25    in the case.   Have to.

1          THE COURT:  Okay.  Thank you, counsel.  Last word,

2   counsel.

3          MR. D'ELIA:  Just -- and I -- and I know you've got

4   the case down pretty pat.  Judge, the issue with regard to the

5   attorney/client relationship, I respectfully submit if I am an

6   attorney and I am given a document that says decisions have to

7   be made by two people in order to effect these assets and I

8   turned around and ignore that document and say I'm just going

9   to go with this guy because I didn't talk with the other guy,

10  he's been absent, I think that's an attorney's breach of his

11  obligation as an attorney, and to deny that third party, in

12  this case, Reuben, his day in court, and Steve, by the way,

13  would be a great injustice.

14          All as I'm asking you to do is allow me to amend the

15  complaint to join him.  If you -- if we want to address the

16  issue that one of the defenses that are going to be raised by

17  Mr. Yacovelle is that there was no attorney/client

18  relationship, let the -- let us do the discovery and let us get

19  to that issue, but not for today.  Today I'm simply asking you

20  to recognize that I should have my day in court against Mr.

21  Yacovelle.

22          This dovetails with what I hadn't argue, and I'll be

23  very brief, is the issue as to whether he's joined or not

24  joined -- and I think he has to be joined -- whether or not he

25  can continue to represent Mr. -- Matthew, and Your Honor

 1    touched on it.  Can you seriously say that he's made an
 2    informed consent?  Does Matthew -- does Matthew understand that
 3    to the extent there's a balance due on the loan to Steve Durst,
 4    that Matthew is personally liable and that in entering into
 5    that settlement, he put himself personally in harm's way?  Does
 6    he, Matthew, understand that he has a cross-claim against Mr.
 7    Yacovelle as a co-defendant in this case?
 8              We have to know what happened in that settlement room
 9    when that case was settled and whether or not these things were
10    explained to him.  Mr. Yacovelle has those conflicts, and he
11    has to testify in the case.
12              His only argument in -- the real argument in his
13    pleadings is it's going to work a hardship for him to find
14    another attorney, and in his pleadings, Matt says I don't know
15    any attorneys.  There's a Martindale-Hubbell book and there's a
16    phone book filled with them.  You throw a stone from here and
17    you'll hit somebody.
18              THE COURT:  You're showing your age by relying on
19    Martindale-Hubbell.
20              MR. D'ELIA:  Exactly.  It's now lawyers.com, I
21    believe.  I show my age in a lot of ways, Judge.  With that,
22    Judge, I will submit for your -- for your consideration.
23              THE COURT:  You want to add something, counsel?
24              MS. LENTINI:  I always have something to say, Your
25    Honor.  There were just a couple other points and one being

1    that in the State -- the first thing is the second amended

2    trust agreement on the first page -- can't miss it -- says that

3    they are trustees.  Reuben Durst and Matthew  Durst are

4    co-trustees.  First page, very easy, and the representation

5    went on for years.

6           The second issue that came up was that during the

7    State litigation is that Mr. Yacovelle took the position and

8    argued against the -- that there had to be -- they were

9    co-trustees and that there had to be authority to enter into

10   the settlement agreement by both Matthew Durst and Reuben

11   Durst.  There was argument against that, and the argument was

12   that he had authority -- apparent authority.

13          The trust document itself states that the waiver must

14   be in writing.  At no time did Mr. Yacovelle put that

15   representation or that part of the trust agreement before the

16   State Court, and, in fact, Judge McDonnell in the State Court

17   stated in her memorandum opinion that the Court and the

18   mediators and the defendants relied upon the apparent authority

19   of Mr. -- of Matthew Durst to represent that trust.

20          Another -- one of the other things that also became

21   very striking was Matthew Durst filed a motion for partial

22   summary judgment.  I did not supplement, because we just got

23   that after this whole part, but in that, there's a statement of

24   facts, and then there's a ten-page additional statement of

25   facts which is just all paragraphs, and basically, what that

1   is, in fact, is Mr. Yacovelle announces to the Court that he

2   thinks its relevant that the Court know the background of the

3   State litigation, and of course it's relevant.  It's not in

4   numbered paragraphs so that we can respond to it.  He claims to

5   the Court that they're undisputed facts.

6          What he did was submit ten-page submission of

7   testimony.  He testified in his motion for summary judgment

8   when he's arguing against the trust who had come forward and

9   said we have a co-trustee, Judge McDonnell, we are to be

10  represented, he -- they do not have authority, and the attorney

11  for the trust is turning around saying no, even though page 1

12  says you're co-trustee and page 6 says that it must be in

13  writing to waive that right, the attorney for the trust stood

14  before the State Court and argued oh, no, no, no, we don't need

15  that.

16         And the State Court went forth on -- relied -- they

17  made a mistake.  They clearly made a mistake.  They relied upon

18  an apparent authority which was presented, and Mr. Yacovelle

19  had the knowledge.  He is an excellent attorney.  He's

20  obviously read all of these documents, and obviously, he would

21  have read the first page, and he would have read the other part

22  that requires that it be written.

23         Also in his motion for summary judgment, Mr.

24  Yacovelle in December of 2011, he submitted as an attachment a

25  certification, his certification, and in his certification, it

 1    says, "I've always taken the position that if acceptable

 2    documents are present --" this was regarding enforcement of the

 3    settlement "-- and if Matthew Durst is still a trustee, though

 4    his resignation has been demanded --" that's another issue.  It

 5    was demanded.

 6              So -- and he continued to go forward.  "-- he is

 7    still a trustee, and if I am still in the case (I am), though

 8    individuals posing as co-trustees attempted to fire me, an

 9    effort I rejected when they proved to --"

10              THE COURT:  What are you quoting from?

11              MS. LENTINI:  "-- when they proved to be without

12    credentials --"

13              THE COURT:  What are you quoting from, counsel?

14              MS. LENTINI:  Excuse me?

15              THE COURT:  What are you quoting from?

16              MS. LENTINI:  I'm quoting John Yacovelle's

17    certification in response to notice of motion to enforce

18    settlement dated December 14, 2011.

19              THE COURT:  This is in the State Court proceeding,

20    correct?

21              MS. LENTINI:  It's attached as Exhibit C to Mr.

22    Yacovelle's motion for partial summary judgment before this

23    Court.  So he --

24              THE COURT:  We'll get there.

25              MS. LENTINI:  He placed it before this Court.

1   Anyway, so there are issues that he chose as the attorney and

2   he had the knowledge and he made representations before the

3   Court, before the mediators, to opposing parties.  He's

4   acknowledged in certifications that co-trustees came forward

5   and tried to fire him and tried to stop Mr. Durst.  So he --

6              MR. D'ELIA:  Matthew.

7              MS. LENTINI:  I mean Matthew Durst.  So he marched

8   forward.  What was his duty to the co-trustee?  What was his

9   duty to the mediators?  What was his duty to the State Court?

10  He had duties to all of them.  He can't just say I represented

11  Matthew Durst.  Matthew Durst doesn't exist in a bubble.  He is

12  -- he represented the trust.

13             THE COURT:  One more question before we get to you,

14  Mr. Yacovelle.  At the end of the day, when you put together

15  all of plaintiff's claims in this case, how much money is

16  plaintiff asking for in this case?  What's the case worth?

17             MR. D'ELIA:  In excess of a million dollars.

18             THE COURT:  In excess of a million dollars?

19             MR. D'ELIA:  Yes.

20             THE COURT:  Okay.  Mr. Yacovelle, I know you want to

21  respond.

22             MR. YACOVELLE:  Judge, I just want to say two things.

23  The first thing I want to say is this scenario of me and the

24  Judge and having this conversation and showing papers and this

25  and that, never happened.  Now, that's one of the problems when

Yacovelle - Argument                          45

1   somebody comes into the case late in the game.  No one was

2   there from that table at that time.  So I just want to make

3   that comment.

4        Now, the second thing I want to say is this.  You

5   want to -- want to argue the motion for partial summary

6   judgment right now?  I'm ready.

7        THE COURT:  No.  We can't do that.  That's -- that

8   has to be briefed, and Judge Simandle is going to decide that.

9        MR. YACOVELLE:  Everything has been in, by the way.

10  Everything has been filed that can be filed.

11       THE COURT:  Okay.  Thank you, counsel.  I said I'd

12  circle back at the end of this argument, and that's what I want

13  to do now and have a plan going forward.

14       The first proposed amendment was to add Steve Durst

15  as a plaintiff in a trustee capacity.  That's eventually going

16  to be granted.  I'll issue an order to that effect when we file

17  the amended complaint.  There's no opposition.

18       The second issue is whether these beneficiaries

19  should be added as plaintiffs.  It's conceded as of this point

20  that Matthew Durst's three children are not going to be added.

21  I don't know if we have an affidavit from the minor, but I

22  think plaintiffs are conceding that point.

23       If the Court grants the amendment to join the

24  beneficiaries as plaintiffs, it will indicate in the order that

25  only those plaintiffs that submit affidavits saying they want

1   to be plaintiffs will be joined, but I still have to make the

2   decision whether any beneficiary is going to be joined, and I'm

3   reserving on that issue.

4           The request to join Halloran & Sage, Robinson & Cole,

5   and Ms. Peck, there being no opposition, the Court is going to

6   grant it, except when the amended complaint is filed, the Court

7   is going to ask plaintiffs to properly plead the citizenship.

8           As to the request to add Mr. Yacovelle, I am going to

9   ask the parties for additional briefing on that.  I'm not

10  comfortable on this duty issue.  I'd like to give the parties

11  an opportunity to brief it and to submit authority in support

12  of their position.  Plaintiffs, you're saying that Mr.

13  Yacovelle owed a legal duty to your two clients.  I'd like to

14  know the legal support for that.  Mr. Yacovelle, you deny that.

15  I'd like to hear your response.

16          In addition, counsel, during oral argument, you were

17  citing to certain pages either reading or orally from the State

18  Court litigation.  I think you said something about Judge

19  McConnell's opinion or decision, and if you're going to rely on

20  that, I'd like to see it.  I can get the affidavit from Mr.

21  Yacovelle from the summary judgment briefs.  So you don't need

22  to submit that again, but -- I'll get that, but I don't have --

23  if you're relying upon some sort of oral or written opinion

24  from State Court, I'd just like to see it.

25          And then I want to give you an opportunity to also --

1   if you want to add anything to the argument, that if the

2   request to join Mr. Yacovelle is granted, whether or not he

3   necessarily must be disqualified.  Defendant has argued that

4   his client can give informed consent to that.  I'm not at the

5   moment entirely comfortable with that, but I'd like to get

6   plaintiff's position why it's -- why Mr. Yacovelle must

7   necessarily be disqualified if he's joined, and Mr. Yacovelle,

8   I'd like to get your legal support opposing that and support

9   for your position which the Court is just not entirely

10  comfortable with at the moment that your client can give

11  informed consent to that.

12              Plaintiff, how long do you want to submit a

13  supplemental brief?

14              MR. D'ELIA:  In your discretion, Your Honor, but I

15  would ask for 30 days.

16              THE COURT:  Do you need -- I --

17              MR. D'ELIA:  No.

18              THE COURT:  -- have no problem giving you --

19              MR. D'ELIA:  No.

20              THE COURT:  -- enough time, but I would like to

21  address this issue so we can get to the merits of the case.  Do

22  you need 30 days?  I mean, if -- I don't think you need 30 days

23  for this issue, because you've already addressed it.  How about

24  two weeks?

25              MR. D'ELIA:  Fine.

The Court - Decision                                48

1           THE COURT:  All right.  Do you want two weeks to

2    respond, Mr. Yacovelle?  And then if I need more oral argument,

3    I'll let you know.

4           MS. LENTINI:  Your Honor, this is just procedurally.

5    If the Court chooses to allow the beneficiaries to be joined

6    and affidavits are required to name them as parties, then

7    generally, we file the amended complaint immediately, but I

8    wouldn't be able to do that unless --

9           THE COURT:  Until you get the affidavits.

10          MS. LENTINI:  Yes.  So I just would need extra time

11   for that.

12          THE COURT:  We'll work on that.

13          MS. LENTINI:  Okay.  Thank you.

14          THE COURT:  Okay.  So we know there's going to be

15   some amended complaint.  The question is how extensive it's

16   going to be.

17          Okay.  So anything else on the motion, counsel?

18          MS. LENTINI:  We had also discussed earlier for the

19   -- no.  We're fine.

20          THE COURT:  So that takes care of the motion, but I

21   would like to say one more thing.  We don't usually get

22   involved in family spats in this Court, although it does

23   happen, and I've seen cases like this in practice for 26 years

24   and on the bench for six years, and I can tell you invariably

25   what happens.  The parties come in and they're litigating all

1    over the place, Cumberland County, Connecticut, New Jersey

2    State Court, New Jersey Federal Court, and everybody beats

3    themselves up for a couple years, and two or three years down

4    the road, everybody looks in the mirror and says why in the

5    world did we do this, why did we enrich the pockets of the

6    lawyers with all these transaction costs and why two or three

7    years ago did not we sit down and try and work this out.

8            And I see the handwriting on the wall in this case.

9    I just see it, because I've been through it so many times

10   before, that this case is going to be incredibly contentious.

11   The transaction costs are going to be tremendous.  There's

12   going to be motions.  There's going to be delays, and it's not

13   cheap, and the lawyers are going to be paid a lot of money, and

14   invariably, two or three years from now after there's been a

15   lot of bloodletting, I'm going to say to the parties are you

16   ready to talk settlement, and they'll say yes, and I always

17   wonder why parties do that.  Why don't they just reflect and

18   take a deep breath and push away from the table and say we're

19   brothers, we're uncles, we're aunts, we're related by blood, do

20   we really want to go through this for another two or three

21   years, and I would just ask the parties to reflect on that.

22           I'm guessing -- I don't know for us.  Mr. Steven

23   Durst, is that you?

24           MR. D'ELIA:  Yes.

25           MR. S. DURST:  It is me, sir.

1           THE COURT:  And I just -- I just -- time and time and

2   time again I see it, and the transaction costs in this case are

3   going to be in the -- likely in the hundreds of thousands of

4   dollars, and you're all intelligent.  You're all professionals.

5   I know you disagree, but parties can disagree and still act

6   professional and cordial, and I just wonder why you don't just

7   sit down.

8           Is a million dollars a lot of money?  Of course it

9   is.  It's a tremendous amount of money, but at the end of the

10  day, you're going to spend, three, four, five hundred thousand

11  in transaction costs.  What's left?  And all the grief that

12  comes with the case and my -- we're here.  We're going to move

13  the case.  We're going to decide the case, but I just wonder if

14  you want to take a deep breath and say to yourselves is there a

15  way we can sit down and try and work this out.

16          If you think you -- if you think I can help, I'll be

17  happy to have a settlement conference, but my position on cases

18  is you file a case, you have a right to pursue it.  The case is

19  going to move along unless you reflect and talk to each other

20  and say why don't we see if we can work this out before, as

21  they said in the Godfather, we go to the mattresses.

22          So that's all I have to say, counsel.  If I can help

23  in that regard, just let me know.  Anything else we need to

24  address?

25          MR. D'ELIA:  Thank you, Your Honor.

```
                              Colloquy                          51
  1            MR. YACOVELLE:  Thanks, Judge.

  2            THE COURT:  Thank you.  We're adjourned.  I'll enter

  3      an order about the briefing schedule, and we're adjourned.

  4            THE CLERK:  All rise.

  5         (Proceedings concluded at 10:50 a.m.)

  6                         *  *  *  *  *

  7                   C E R T I F I C A T I O N

  8            I, Maureen Emmons, court approved transcriber,

  9      certify that the foregoing is a correct transcript from the

 10      official electronic sound recording of the proceedings in the

 11      above-entitled matter.

 12

 13      _____     Date:

 14      MAUREEN EMMONS

 15      DIANA DOMAN TRANSCRIBING

 16

 17

 18

 19

 20
```