IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JAKE BALL TRUST, STEVEN DURST,
and REUBEN DURST,

                 Plaintiffs,

      v.

MATTHEW DURST, HALLORAN &
SAGE, LLP, ROBINSON & COLE,
LLP, and KELLEY GALICA-PECK,

             Defendants.

HON. JEROME B. SIMANDLE

Civil No. 12-5255(JBS/AMD)

**OPINION**

APPEARANCES:

Vincent D'Elia, Esq.
THE D'ELIA LAW FIRM, LLC
13000 Lincoln Drive West, Suite 300
Marlton, NJ 08053
    Attorney for Plaintiffs Steven Durst and Reuben Durst

John A. Yacovelle, Esq.
8438 Mackall Rd.
St. Leonard, MD 20685
    Attorney for Defendant Matthew Durst

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter is before the Court on Defendant Matthew Durst's motion for partial summary judgment. [Docket Item 12.] The instant matter arises out of Matthew Durst's action as Trustee on behalf of the Jake Ball Trust.  Defendant argues that Plaintiffs Steven and Reuben Durst should be collaterally estopped from arguing two discrete issues before the court: the value of a certain property held by the Trust and the fairness of

a settlement entered into by Matthew Durst on behalf of the Trust in a prior state court matter.  The Plaintiffs oppose this motion and argue collateral estoppel is inapplicable because they were not parties to the prior state court litigation and the issues to be litigated in this case are not identical to the issues litigated in the state court below.

For the reasons discussed herein, the court will grant Plaintiff's partial motion for summary judgment.

## II.   BACKGROUND[1]

Defendant Matthew Durst and Plaintiff Reuben H. Durst[2] are co-trustees of the Jake Ball Trust which was funded by Steven Durst as grantor.[3]  (Pl.'s Ex. A, Jake Ball Trust Agreement.)  Reuben Durst delegated his authority as co-trustee to Matthew

---

[1] The facts are taken from the Court's review of the exhibits submitted by the parties and from the parties' L. Civ. R. 56.1 Statements.  Facts stated by the parties in their briefs or in their Statements of Material Facts Not in Dispute which were not supported by record citations were disregarded by the Court in accordance with L. Civ. R. 56.1(a).

[2] Throughout the briefing papers Plaintiff Reuben Durst is referred to as "Mike Durst."  However, the December 24, 2007, Trust Agreement names "Reuben H. Durst" as Trustee.  Since the trust documents refer to this party as Reuben, the court will refer to him as Reuben in this opinion.

[3] In the original complaint, Steven Durst alleged he was the grantor of the Jake Ball Trust.  In the Amended Complaint, Steven Durst now alleges he is the grantor and a trustee of the Jake Ball Trust.  Since this motion was filed prior to the Amended Complaint, the Court will refer to Steven Durst as grantor. However, the Court makes no finding as to whether Steven Durst was also a trustee of the Jake Ball Trust.

Durst "to perform all ministerial tasks associated with the
investment and management of the Jake Ball Trust, as well as all
distribution decisions, that are within my power to delegate."
(Pl.'s Ex. G.)

Matthew Durst, as Trustee on behalf of Jake Ball Trust,
filed a lawsuit against Goodmill, LLC and Bruce A. Goodman in the
Superior Court of New Jersey, Cumberland County, Chancery
Division, Docket No. C27-10.  The purpose of this suit was to
litigate the validity of a provision in the Goodmill LLC
Operating Agreement.  If the provision was valid and enforceable,
the Trust would loose its 10% interest in Goodman, LLC which was
created for the purpose of constructing, leasing and operating a
shopping center in Millville, New Jersey.  The Trust sought an
order declaring the provision unenforceable.  (Pl.'s Ex. L at 1;
Def.'s Ex. N.)[4]

---

[4] In addition, Jake Ball Trust was involved in two other
ventures with Goodman, LLC and Bruce Goodman.  First, Bruce
Goodman and Jake Ball Trust formed 1600 GP, LLC in Pennsylvania
with Goodman, as general partner, holding 99% of the stock and
the Jake Ball Trust holding 1% of the stock.  (Def.'s Ex. N.)
Zach and Jack Realty Associates was then created as a limited
partnership  with 1600 GP, LLC owning a 1% interest and Jake Ball
Trust, as a limited partner, owning a 99% interest.  (Def.'s Ex.
N.)

Second, Bruce Goodman loaned a sum of money to Zach and Jack
Realty Associates to purchase real property located at 1600 West
Hunting Avenue, Philadelphia, Pennsylvania.  As part of this
transaction, the Jake Ball Trust signed commercial loan documents
and a guaranty of repayment of the loan in the event of default
by Zach and Jack Realty.

1600 GP, LLC defaulted on the loan and the Jake Ball Trust
was notified that it was in default of its obligations under the

Before the case was tried, the parties participated in mediation on October 3, 2011 and October 4, 2011.  Bruce Goodman and Matthew Durst and their counsel participated in the mediation.  Steven Durst also participated in the mediation, although the extent of his participation is disputed.  (Def.'s Ex. N.)  The mediation was successful and a settlement was placed on the record on October 4, 2011.  In court, Matthew Durst testified that he was empowered to act on the Trust's behalf as Trustee.  (Def.'s Ex. N.)  The settlement was based in part on valuation by the parties of a building at 1600 West Hunting Park Boulevard, Philadelphia, at $600,000.  This property was owned in large part by Jake Ball Trust, which held a 99% interest in the property.  The remaining 1% interest in the property was held by 1600 GP, LLC, an entity controlled by Bruce Goodman.  (Def.'s Exs. D and N.)

After the settlement, Steven Durst allegedly took actions to prevent the settlement.  Consequently, on December 16, 2011, the Goodman Defendants in the state court action filed a motion to enforce the settlement.  In response, Steven Durst and Reuben Durst filed a cross-motion to set aside the settlement and to intervene.  (Def.'s Ex. N.)

---

Surety agreement.  A foreclosure action was subsequently instituted on the West Hunting property in the Philadelphia Court of Common Please and a confession judgment action was also instituted in the Montgomery County Court of Common Pleas with regard to the Surety Agreement.  (Def.'s Ex. N.)

The state court conducted a case management conference and counsel for Steven and Reuben Durst, Vincent D'Elia, participated on behalf of the Plaintiffs as proposed intervenors. (Def.'s Ex. F.)  As proposed intervenors, the state court permitted Steven and Reuben Durst to serve interrogatories and document requests and to submit expert testimony regarding the appraised value of the 1600 West Hunting Park property.  (Def.'s Ex. F.)  The court also adjourned the pending motions for four months in order to give Steven and Reuben Durst an opportunity to conduct this discovery.  (Id.; Def.'s Ex. N.)

Steven and Reuben Durst exchanged interrogatories and production of documents and filed supplemental certifications and briefs.  (Def.'s Statement of Material Facts ¶ 6.)  Steven and Reuben Durst, however, did not submit an expert report to establish the value of the 1600 West Hunting Park property.

The motion to enforce and cross motion to set aside the settlement was argued on April 26, 2012.  The Goodman Defendants and counsel for Matthew Durst as Trustee of the Jake Ball Trust argued to enforce the settlement.  Vincent D'Elia, counsel on behalf of Steven and Reuben Durst, argued to set aside the settlement.  Vincent D'Elia argued, among other things, that the 1600 Hunting Park Property, was worth more than the $600,000 it was valued at in the settlement.  However, Vincent D'Elia admitted that he did not have an expert report and he did not get

the property appraised, despite being given the opportunity to do so.

The state court granted the Goodman Defendants' motion to enforce the settlement and denied Steven and Reuben's motion to intervene and set aside the settlement as moot. (Def.'s Ex. N.) The state court reasoned:

> The proposed intervenors claim that the Goodman Defendants made fraudulent misrepresentations regarding the value of the West Hunting Avenue property. Despite the opportunity to conduct discovery and/or obtain an appraisal, no evidence has been prove [sic] that the property was undervalued. Offers to purchase which do not result in a transfer of title are insufficient to support valuation of real property. *See* <u>Pepperidge Tree Realty Corp. v. Kinnelon Borough</u>, 21 N.J. Tax 57, 66 (Tx. Ct. 2003)(A usable sale for valuation purposes must be a sale that was the result of offers in a competitive market).
>
> There are no compelling circumstances that support setting aside the settlement. The proposed intervenors claim that a compelling circumstance is that Matthew Durst did not have the authority to enter into a settlement without the approval of Reuben Durst. This is not a compelling circumstance because, Article IX, Section P of the Trust agreement explicitly states "[a]ny person dealing with the Trustee may rely, without further inquiry, upon the statement of any Trustee as to any such Trustee's authority to act on behalf of any Trustee." This Trust language supports the enforceability of the agreement entered into by Matthew Durst. At the time the settlement was placed on the record, it was represented to the Court and the parties involved in the litigation that Matthew Durst had the authority to represent the Trust's interest and enter into agreements on behalf of the Trust.
>
> In sum, the proposed intervenors have not shown that the settlement was a bad deal for the Trust. Litigation can be costly and unpredictable. There is no demonstration that the Trust would make out better if the settlement were to be set aside. While the beneficiaries and/or creditor of the Jake Ball Trust are unhappy with the settlement, in the absence of proofs, their unhappiness does not warrant setting aside the settlement.

(Def.'s Ex. N at 4.)

Steven and Reuben Durst appealed the decision to the
Appellate Division of the Superior Court.  Neither the trial
judge nor the Appellate Division would grant them an emergent
stay of the decision.  Steven and Reuben Durst then voluntarily
withdrew their appeal.  (Def.'s Exs. O and P.)

While their appeal was pending, Steven and Reuben Durst,
along with the Jake Ball Trust, filed the instant action against
Matthew Durst originally in Cumberland County Superior Court on
May 17, 2012.[5]  [Docket Item 1.]  Plaintiffs Steven and Reuben
Durst sought injunctive relief and damages against Defendant
Matthew Durst for misappropriation of assets, self-dealing,
failure to provide annual accountings, and misrepresentation
regarding delivery of trust assets.  The complaint sought removal
of Matthew Durst as Trustee, an order restraining Matthew Durst
from access to any and all Trust assets, immediate return of
misappropriated funds, compensatory damages, punitive damages and
attorney's fees and costs.  [Docket Item 1.]

Defendant Matthew Durst filed a motion to dismiss in state
court.  The state court granted the motion to dismiss with regard
to the Jake Ball Trust and denied the remainder of the motion.
Since the Jake Ball Trust was eliminated as a party, diversity

---

[5] It also appears from the record that Plaintiffs Steven and
Reuben Durst also initiated an action in state court in
Connecticut against Matthew Durst for an accounting.

jurisdiction existed.  Defendant Matthew Durst then removed the
instant action on the basis of diversity jurisdiction.[6]  [Docket
Item 1.]

Defendant Matthew Durst now moves for partial summary
judgment.  [Docket Item 12.]  Specifically, Defendant argues that
Plaintiffs Steven and Reuben Durst should be collaterally
estopped from relitigating the issue of the fairness of the
settlement in the previous state court action and the value of
the 1600 building.  Defendant argues that collateral estoppel
applies because these issues were identical to the issues
actually litigated between Matthew Durst and Plaintiffs Steven
and Reuben Durst in state court, the state court issued a final
judgment, and adjudication of these issues was necessary for the
court's decision.

Plaintiffs Steven and Reuben Durst oppose this motion for
summary judgment and present two main arguments.  First,
Plaintiffs argue they were not parties to the above state court
action because their motion to intervene was denied as moot and
they were not in privity with Matthew Durst in the earlier
proceeding.  Second, Plaintiffs argue the issues of willful
misconduct, breach of fiduciary duties and authority pursuant to

---

[6] Plaintiffs have since filed an Amended Complaint to
include claims against Halloran & Sage, LLP, Robinson & Cole, LLP
and Kelley Gallica-Peck.  This amendment does not moot the
pending motion for partial summary judgment or affect the court's
analysis.

the Trust agreement by Matthew Durst were not litigated in the state court and are therefore not subject to estoppel.

In reply, Defendant Matthew Durst argues that Plaintiffs were parties in the prior litigation because they fully participated in all aspects of the matter from the time they moved to intervene until they voluntarily dismissed their appeal. Further, Defendant maintains that he is not seeking to preclude Plaintiffs from arguing their willful misconduct, breach of fiduciary duty claims or from arguing whether Defendant had authority to enter into the settlement agreement.  Rather, Defendant clarifies that he is seeking summary judgment on two very narrow issues, specifically whether the settlement was fair and equitable and whether the 1600 West Hunting Park property was properly valued at $600,000.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over

9

irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

**B. Analysis**

Collateral estoppel, otherwise known as issue preclusion, "bars relitigation of any issue that was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action."  Zirger v. General Accident Insurance Co., 144 N.J. 327, 337 (1996).  A federal court looks to the law of the adjudicating state to determine preclusive effect. Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999).

Under New Jersey law, a party claiming collateral estoppel is required to establish five elements:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007)
(quoting First Union Nat'l Bank v. Penn Salem Marina, 190 N.J.
342, 352 (2007)).  It is undisputed that the issues of the
fairness of the settlement and value of the 1600 West Hunting
Park property were litigated before the Chancery Court.  It is
also undisputed that the court issued a final judgment enforcing
the settlement which valued the 1600 West Hunting Park property
at $600,000 and concluded the settlement was fair.  Further, the
parties concede the determination of these issues was essential
to the court's judgment.  Accordingly, three of the five
requirements for applying collateral estoppel are satisfied.

The parties contest the remaining two elements.  First, the
Plaintiffs contend that the issues decided in the state court
action are not identical to the issues sought to be precluded in
this case.  Second, Plaintiffs argue they were not parties in the
state court action below and were not in privity with Matthew
Durst.  The court will address each element separately below.

>    **1.   Are the issues sought to be precluded identical to
>          the issues actually litigated in the prior state
>          court action?**

Defendant Matthew Durst seeks to preclude Plaintiffs from
arguing two narrow issues: whether the settlement was fair and
reasonable and whether the 1600 West Hunting Park property was
properly valued at $600,000.  Contrary to the Plaintiffs'
opposition, Defendant is not seeking to preclude Plaintiffs from

arguing that Matthew Durst engaged in willful misconduct, breached his fiduciary duties or acted beyond the scope of his authority under the Trust.  The issues sought to be precluded are narrow and their preclusion would not prevent Plaintiffs from proceeding with their main cause of action against Matthew Durst.

The value of the 1600 West Hunting Park property and whether the settlement was fair and reasonable are issues Plaintiffs are attempting to relitigate in the instant matter.  Plaintiffs' original complaint and Amended Complaint include several allegations regarding the value of the 1600 West Hunting Park property and whether the settlement was a good deal for the Trust. [Docket Item 1-2 at ¶¶ 14, 15, 19, 24; Docket Item 24 at ¶¶ 23, 32.]  These issues are identical to the issues before the state court and were squarely litigated therein and decided by the court in its bench memorandum opinion.

Therefore, the court finds that the issues are identical and this element is satisfied for the application of collateral estoppel.

### 2.    Were Plaintiffs Steven and Reuben Durst parties in the state court action below?

Under New Jersey law, "a judgment may be binding as an estoppel on a person who, although not nominally or formally a party to the action in which it was rendered, submitted his or her interest in the subject matter of the litigation to the consideration of the court and invited its adjudication thereon."

Ross v. Ross, 308 N.J. Super. 132, 147 (App. Div. 1998); Raynor v. Raynor, 319 N.J. Super. 591, 603 (App. Div. 1999).

In Ross, the Appellate Division held that a non-party who was not formally joined as an intervenor could nevertheless be bound by an adjudication when the non-party appeared before the trial court on her own behalf, submitted her own exhibits and fully presented her argument on the merits before the court for adjudication.  The trial court's action in permitting the non-party to be considered as an intervenor "for purposes of this hearing today" instead of issuing an order designating the non-party as a formal intervenor did not prevent the previous litigation from having preclusive effect on the non-party.  The Appellate Division reasoned:

> Because [the non-party] chose to submit a brief and argue the merits of her case, both at oral argument and on appeal, this court's judgment will be binding on her. That she was not entitled to conduct her own discovery, as mentioned, is irrelevant to the outcome of this case. Moreover, [the non-party] submitted her own discovery with her briefs and certifications filed in the Family Court.

Id. at 149.  In reaching this conclusion, the Appellate Division relied in part on the Third Circuit's decision in United States v. RMI Co., 599 F.2d 1183, 1187 (3d Cir. 1979).  In RMI, the Third Circuit held that a non-party who appears specially in the underlying proceedings could be treated de facto, as an intervenor, and have standing to appeal.  Id.  The Third Circuit found that the non-party did have standing to intervene in the

13

underlying action, and although failing to file a formal motion to intervene, the non-party did in fact intervene when it filed a motion for a protective order from the district court.  Id. Consequently, the Third Circuit found that the district court's denial of the non-party's application for a protective order resulted in a ruling binding on the non-party over which the Third Circuit had potential appellate jurisdiction.  Id.

The reasoning in Ross and RMI, Co., is equally applicable in this action.  Here, Plaintiffs Steven and Reuben Durst fully submitted their arguments regarding the validity of the settlement and the value of the 1600 West Hunting Park property to the Chancery Division in the underlying state court action. Even though Plaintiffs' motion to intervene was ultimately denied as moot, Steven and Reuben Durst participated in the underlying action and were de facto intervenors.  The Plaintiffs chose to file a motion to set aside the settlement and invited the Chancery Court to adjudicate the merits of their arguments.  As a result, the Chancery Court allowed the Plaintiffs' counsel, Mr. D'Elia, to participate in a case management conference call with the parties of record.  The Chancery Judge then permitted Plaintiffs to conduct discovery regarding the settlement, including an opportunity to hire an expert to assess the value of the 1600 West Hunting Park property and serve expert reports. The Chancery Judge adjourned the pending motions for four months

14

in order to give Plaintiffs ample time to complete their discovery.

The Plaintiffs then successfully served interrogatories and document requests.  The Plaintiffs declined to get an appraisal or obtain an expert report regarding the value of the 1600 West Hunting Park property.  The fact that Plaintiffs did not conduct the deposition Matthew Durst is of no moment.  The Plaintiffs were given ample time to conduct discovery and were not prohibited by the state court from taking depositions.  If the Plaintiffs needed further discovery, they could have asked the Chancery Court to order depositions and continue to adjourn the motions.  The Plaintiffs chose not to do so.

After conducting discovery, the Plaintiffs submitted a written brief to the Chancery Court and fully participated in oral argument.  Mr. D'Elia was given an opportunity to argue on behalf of Steven and Reuben Durst and present evidence that the settlement was unfair and the 1600 West Hunting Park property was undervalued at $600,000.

After hearing the arguments of all the parties, including the Plaintiffs, the Chancery Court issued a bench memorandum opinion enforcing the settlement and denying Plaintiffs' motion to vacate the settlement and intervene as moot.  The Plaintiffs then filed an appeal of that order.  This appeal was pending for almost four months when the Plaintiffs voluntarily withdrew it.

The Plaintiffs' present argument that they did not have standing to file this appeal because their motion to intervene was denied as moot is without merit.  New Jersey case law is clear that a formal order to intervene is not necessary to have standing and that a non-party has standing to appeal when they fully presented their arguments to the lower court and are adversely affected by the lower court's judgment.  <u>Ross</u>, 308 N.J. Super. at 147.  The reason Plaintiffs' appeal was not heard is not because Steven and Reuben Durst lacked standing but because the Plaintiffs chose to voluntarily withdraw their appeal.  Their action in terminating their own appeal does not render the Chancery Court's opinion any less binding.

Further, Plaintiffs' reliance on <u>Zirger v. General Accident Insurance Co.</u>, 144 N.J. 327 (1996), to argue they were not in privity with Matthew Durst in the Chancery Court action and therefore should not be bound by the lower court's opinion is without merit and confuses the issue.  In <u>Zirger</u>, the New Jersey Supreme Court held that "a UM/UIM carrier that intervened in the underlying tort litigation, or declined to exercise its opportunity to intervene, is barred from enforcing the standard arbitration clause in the UM/UIM endorsement."  144 N.J. at 342. Since UM/UIM carriers are given notice of the underlying tort action and ordinarily may intervene in their insured's actions against a third party tortfeasor, the Supreme Court reasoned that

16

collateral estoppel was appropriate to bind UM/UIM carriers to the liability and damages verdict in the underlying tort litigation even if the UM/UIM carrier was not a party to the lawsuit.  Id.  The Supreme Court reasoned this holding would "give assurance that [the uninsured motorist's carrier] may litigate the issues and at the same time avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice."  Id. at 341 (citations omitted).  Zirger reinforces the principle that non-parties who were afforded a full and fair opportunity to litigate as intervenors cannot engage in multiplicitous litigation and that participation as an intervenor is sufficient trigger collateral estoppel.

Here, the issue is not whether Plaintiffs Steven and Reuben Durst were in privity with Matthew Durst.  The issue is whether the Plaintiffs fully litigated their argument before the Chancery Court.  "Prohibiting parties from going to court again after they have had a full opportunity to litigate guards against the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009)(citations omitted).

Plaintiffs Steven and Reuben Durst were not strangers to this litigation.  Rather, Plaintiffs chose to bring their motion

for non-enforcement of the settlement before the Chancery Court
and invited the state court to adjudicate the merits of their
claims.  Through their counsel, they participated in a case
management conference and conducted discovery into the value of
the 1600 West Hunting Park property and the fairness of the
settlement for the Trust.  The Plaintiffs then submitted briefs
and argued at oral argument.  If the Superior Court had ruled in
favor of their position, they would have been the direct
beneficiaries of the favorable judgment.  The Superior Court took
pains to include them as intervenors for this discovery
opportunity and for presentation of evidence, briefs and
arguments.  The Plaintiffs fully participated in this aspect of
the litigation and were treated de facto, as intervenors.

Accordingly, Plaintiffs Steven and Reuben Durst were parties
to the underlying Chancery Court action because they participated
as intervenors and this is sufficient for the application of
collateral estoppel.

IV.  **CONCLUSION**

For the reasons discussed herein, the court will grant
Defendant Matthew Durst's motion for partial summary judgment and
Plaintiffs Steven and Reuben Durst are precluded from arguing
that the settlement of <u>Durst v. Goodmill, LLC, et al.</u>, No. C27-
10, heard in the Superior Court of New Jersey Cumberland County
Chancery Division, was unfair to the Trust or that the settlement

18

undervalued the 1600 West Hunting Park property at $600,000.

The fairness of the settlement and the value of the 1600 West Hunting Park property are at issue in this case and identical to the issues resolved by the Chancery Court. These issues were actually litigated in the prior proceeding and the Chancery Court issued a final judgment enforcing the settlement finding that the settlement was fair to the Trust and properly valued the 1600 West Hunting Park property at $600,000. The determination of these issues was essential to the final judgment of the Chancery Court which enforced the settlement of the parties. Plaintiffs Steven and Reuben Durst were parties to the prior proceeding as they fully litigated their claim seeking to invalidate the settlement in the prior proceeding and participated de facto as intervenors who would also have been beneficiaries of a favorable judgment. Therefore, collateral estoppel applies to bar relitigation of the fairness of the settlement and the value of the 1600 West Hunting Park property. The accompanying Order will be entered.


**August 5, 2013**                          **  s/ Jerome B. Simandle  **
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge

19