Law Office
**JOHN A. YACOVELLE**
**8438 Mackall Rd.**
**St. Leonard, MD 20685**
**410-586-3344**
**Attorney for Defendant**
**Matthew Durst**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**JAKE BALL TRUST, STEVEN DURST,**
**and REUBEN DURST**
**Plaintiffs**

**CIVIL ACTION**
v.        **Case 1:12-cv-05255-JBS-AMD**

**MATTHEW DURST, et.als**
**Defendants**

---

## BRIEF IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

---

## RETURNABLE MARCH 3, 2014

1

## TABLE OF CONTENTS

**INTRODUCTION** . . . . . . . . . **3**

**STATEMENT OF FACTS** . . . . . . . . **5**

**LAW** . . . . . . . . . . **8**

**CONCLUSION** . . . . . . . . **11**

## TABLE OF CASES

Banco Popular N.A. v. Gandi, 184 N.J. 161 (2005)                   **9**

Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)          **9**

Grunewald v. Bronkesh, 131 N.J. 483 (1993)                          **9**

Harris v. Bristol-Myers Squibb Co., No. 11-6004, D.N.J.,
September 25, 2013.                                                          **9**

Stacey v. City of Hermitage, No. 02-1911, 2008 WL 941642
(W.D. Pa. Apr. 7, 2008).                                                    **8**

## **INTRODUCTION**

This is the fourth crack by the plaintiffs at pleading a cause of action for legal malpractice against the undersigned ("Yacovelle" hereinafter). Previously, Messrs. Steve Durst ("Durst" hereinafter) Reuben Durst, and the Delia Law Firm proposed to name various trust beneficiaries as plaintiffs (including several that they did not represent) and perhaps to allege that Yacovelle owed a direct duty to those beneficiaries. In the wake of an unsuccessful argument before Judge Schneider on January 15, 2013, they quietly abandoned that position.

They next suggested, without actually alleging it, that Yacovelle owed a duty to "the Trust", or perhaps to two claimed Trustees of the Trust, but under close questioning by the Court on June 18, 2013, finally acknowledged that they had not pleaded the existence of a duty, much less a breach of it, "in so many words". The Court dismissed this motion without prejudice by Order of June 20, 2013.

They then, at the suggestion of the Court, considered pleading an attorney malpractice action based upon the strictly limited duty defined by the New Jersey courts that is owed by lawyers to non-client third parties. They failed again.

In the meantime, two significant rulings were entered, one by Chief Judge Simandle, and the second by Your Honor.

First, on August 5, 2013, Judge Simandle granted our motion for partial summary judgment and ruled that the plaintiffs are collaterally estopped from arguing that the settlement entered into by Matthew Durst in the Goodmill case was unfair or inequitable; and further that the plaintiffs are collaterally estopped from arguing that $600,000 was an unfair

valuation of a certain property at 1600 West Hunting Park Boulevard in Philadelphia.   <u>The plaintiffs turned a deaf ear to this decision.</u>

I pointed this out to Your Honor by letter dated August 14, 2013. Thereafter this Court entered an Order and opinion dated December 23, 2013, dismissing without prejudice plaintiffs' second motion to amend their complaint to join Yacovelle as a malpractice defendant.   The decision allowed the filing of a renewed motion to amend by a date certain and required that such motion "<u>shall address with specificity the viability of</u> <u>any proposed amended complaint in light of the District Court's August 5,</u> <u>2013 Order</u>" (emphasis added).

Once again, a decision of the Court fell upon the deaf ears of plaintiffs.

Admittedly, Your Honor's decision set a high bar for the plaintiffs, achievable, if at all, by some serious lawyering.  But as usual, there is little evidence of that.  Although the plaintiffs filed the usual 100+ page batch of documents, most recycled, some new, the Brief in support of the motion is brief indeed--34 lines of argument--and cites no cases, no statutes, no treatises, and includes bromides such as "day in court" and "for every wrong a remedy", the same arguments made unsuccessfully as long ago as January 15, 2013, when this issue first came before Judge Schneider.

Thus, the plaintiffs are left to go "all in" on the latest chapter of Durst's Creative Writing 101, a hodge-podge of fiction, slanders, innuendos, distortions, and distractions, all floating in a broth of vicious, mean-spirited spices.  Interesting reading, if one is of a certain mind-set, but in terms of the assignment he has attempted, it is a total failure to clear that high bar.  We will, again, with one exception, avoid taking the irrelevant morsels of bait and deal only with those matters that are actually in issue.

## STATEMENT OF FACTS

The basic facts of the lawsuit have been repeated at great length in previous filings and will not be repeated here. The primary reason is that Judge Simandle's grant of partial summary judgment simply removed most of them from the scene of current interest. The facts that are important for consideration of the pending motion are these:

1. Let's look at the proposed Complaint, since it is that, not Durst's writings, that must state a claim upon which relief can be granted. The proposed amended Complaint dismissed without prejudice by your Honor on December 23 was 19 pages long. The proposed amended Complaint attached to the moving papers here is 19 pages long. The important thing, however, is that the plaintiffs did not change even a single word in that entire pleading. They made the same allegations regarding the Goodmill settlement and, not only made no attempt to address Judge Simandle's Order, as directed by Your Honor, but ignored it entirely.

Specifically, the allegations of paragraphs 64, 65, 67, 68, 76, 77, 83, 90, 105 and 137 of both the previous and the current complaint relate directly or indirectly to the Goodmill settlement and the money, even "millions" that the settlement cost the plaintiffs. It is as if plaintiffs simply do not care that they have already litigated whether or not that was a good settlement, lost, and have been precluded by collateral estoppel from litigating it again. Or, perhaps, they do care, and seeing the disastrous consequences of that decision, prefer the "denial" route.

2. The lawyers apparently being fresh out of ideas, it was thus left to Durst to deal with Judge Simandle's Order. He began in paragraph 10 of

his Certification by noting that under that decision, the plaintiffs can no longer contest the valuation of the 1600 Hunting Park building or whether the Goodmill settlement was fair or inequitable.

He then proceeded, in paragraphs 11, 12 (a) (b)(c) (d) (e) and 13, 14, 15 (a) (b) and (c), 16, 17, 18, 19, 20, 21, 22, 25, 28, 29, 32 (a), (b), and 34, to ignore that ruling and do precisely what he was prohibited from doing! And he puts an exclamation point on that non-cognizable argument with newspaper clippings.  In one of them (Exhibit V) he points out for some inconceivable reason that the NCCF people that **he brought to the table and whose "offers" he tried to palm off as evidence that the 1600 Building was worth a lot of money,** have turned out, at least according to his exhibit, to have allegedly swindled their own nonprofit!  And finally he unloads another clipping (Exhibit X) in which it is alleged that one Kerns, formerly lead partner in the law firm that represented Goodman in the Goodmill case (though he had no known personal involvement in the case), has been accused of rape.  Only an individual, way out of his depth because his lawyers had left him to his own devices, could have thought that exhibit had anything whatsoever to do with any possible issue in this case.  Of course, if one thinks like Durst, one might reason that the clipping is an indication that the unfortunate Kerns is a blackguard, that his firm is therefore a band of scoundrels, that the client Goodman, by association, is of the same feather and, consequently, Durst Wins This Motion!!!

Basically, Durst's argument in response to this Court's directive amounts to a claim that Judge Simandle was wrong in his decision on the Motion for Partial Summary Judgment.  No other meaning can be ascribed to Durst's ramblings in paragraphs 34 and 35 of his Certification, which even injects an element of mystery and intrigue involving the Police Chief

of Abington Township, previously unmentioned in this case, and certainly not involved in it. Durst declares that the situation on which Judge Simandle ruled was "a lot fishy", and claims that it involved "witness tampering or extortion or both" by Goodman. He then invites my comment on "this activity".

Unable to resist, I accept the invitation. The only things "fishy" about this case are the activities of Durst on many fronts, two examples being his connection with the NCCF "offer" and the $1.1 million "charter school offer", especially when we consider that at the time, Durst showed in numerous Certifications that he believed that these "offers", whether or not the deals ever closed, established value. Equally "fishy" are his comments about Pennington who, in fact, filed a Certification with Judge McDonnell on May 11, 2012, in which he opined that the 1600 building was worth no more than $500 to 600,000.[1]

As for Durst's conversation with Pennington in the "past two months", one wonders if Pennington mentioned that he had **sold** the 1600 Building for NBL Mortgage LLC (Goodman), with a closing on December 31, 2013. The sales price? Not $1.3 million; not $1.1 million; but **$350,000.** Exhibit 2 attached hereto is a Copy of the Deed which has been recorded, along with the Settlement Statement, which shows that the seller, after closing and paying off certain liens left on the property by "someone"

---

[1] See Exhibit 1 attached, previously filed as Exhibit M on our motion for partial summary judgment, in which Pennington also mentions that Durst "needed $1.2 million on the building to cover the Goodman loan" (par. 25).

actually netted **$270,867.35!**[2] Did Durst's old friend Pennington fail to mention that in their conversation? Or did Durst just forget to mention it in his Certification?

So much for Durst's original and ongoing fantasy about the great value of the 1600 Building. These plaintiffs are entitled to no damages from anyone resulting from the settlement of the Goodmill case, and after Judge Simandle's ruling, cannot even make such a claim.

## LAW

## THE PROPOSED MALPRACTICE PLEADING AGAINST YACOVELLE FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND THE MOTION TO AMEND SHOULD BE DENIED WITH PREJUDICE.

This Court, in its Order and opinion dated December 23, 2013, noted that while motions to amend pleadings are viewed with great liberality, there are exceptions, one of which is that proposed amendments which are futile will not be allowed. "Futility" is measured by whether or not the pleading, assuming all allegations are true, would be dismissed on motion for failure to state a claim on which relief could be granted. One such type of situation would be where the pleading fails to allege an element of the cause of action and there is no likelihood of a cure, **Stacey v. City of**

---

[2] A reminder that at the time of the Goodmill settlement, Goodman was owed a claimed total of $1.4 million on the 1600 mortgage, a debt of the Jake Ball Trust that was extinguished as part of the settlement, though plaintiffs continue to pretend they know nothing of that. They continue to maintain, in obviously bad-faith pleadings, that total consideration to the Trust was $80,000. (Par. 65 of proposed second amended complaint).

**Hermitage, No. 02-1911, 2008 WL 941642 (W.D. Pa. Apr. 7, 2008)**.
Such a failure is particularly noticeable when the court, in a previous ruling,
has directed plaintiffs to deal specifically with a matter in the next proposed
amendment and they do not.  See, **e.g., Harris v. Bristol-Myers Squibb
Co., No. 11-6004, D.N.J., September 25, 2013.**

As we have observed previously, there are four elements to a cause of
action for legal malpractice:

1) the existence of a duty of care on the part of the attorney, arising
either out of a conventional attorney-client relationship, **Conklin v.
Hannoch Weisman, 145 N.J. 395, 416 (1996),** or out of a court-imposed
duty to a non-client third party, **see, e.g., Banco Popular N.A. v. Gandi,
184 N.J. 161 (2005), (Section V of opinion);**

2) the breach of that duty by the attorney; **Conklin, supra;**

3) proximate cause; **Ibid.**

4) damages.  **Grunewald v. Bronkesh, 131 N.J. 483 (1993).**

Each of these elements presents problems for the plaintiffs.  The lack
of an attorney-client relationship in the Goodmill case between either of the
plaintiffs and Yacovelle has been extensively briefed and disputed and
those positions will be incorporated herein in lieu of repetition.

Next, there has been no noticeable effort by the plaintiffs to bring
themselves into the class of non-client third parties under the **Banco
Popular** line of cases.

It is submitted, therefore, that they have not successfully alleged the
existence of a duty of care.

As for the breach of such duty as may be assumed, **arguendo,** to
exist, this requires another review of the proposed amended complaint.  It
turns out that paragraphs 59, 64, 65, 68, 71, 73, 115, 129, 131, 132, 133,

9

136, and 137 all allege various failures by Yacovelle in his practice of law; the problem here, however, is that all of them involve his alleged advice and handling/mishandling of the Goodmill settlement.  Since it has been held that the fairness of the settlement cannot be challenged, the alleged advice and handling of the case cannot be actionable.  In other words, plaintiffs have failed to allege a breach of the duty of care.

Finally, and closely related, is the element of damages.  First it is necessary to address the allegation of paragraph 105 of the amended complaint, which claims that "As a proximate cause (sic) of Yacovelle's malpractice, the Trust has been divested of over Three Million Dollars of Trust assets."  This allegation is perplexing.  It is found in a section of the proposed Amended Complaint headed "**Count II-Legal Malpractice Against Defendants Kelley Galica-Peck, Halloran & Sage, LLP, and Robinson & Cole, LLP**", and all allegations of the paragraphs numbered 91 to 104 address the alleged misdeeds of those defendants, with no mention of Yacovelle.  It may be logically concluded, therefore, that paragraph 105 contains a typographical error in naming Yacovelle.  But the same paragraph is found in the previous proposed amended complaint exactly as it is in the present one.  Thus, it is not easy to conclude that it is a typo unless, of course, we assume that it was seen by no one other than the copy machine loader.  In any event, it does not appear to make any substantive change, because the "Three Million Dollars" arises out of the Goodmill case and its settlement.

The damages claimed to have been caused by Yacovelle's "malpractice' against these plaintiffs are the same that are alleged in the claims of breach of duty. Paragraphs 59, 64, 65, 68, 71, 73, 115, 129, 131, 132, 133, 136, and 137 of both the previous and the current proposed

10

amended complaint all contain allegations of damages that relate directly to the alleged mishandling of the Goodmill case.  These plaintiffs apparently are unwilling to acknowledge that they intervened in that case, claimed all the things about the settlement that they claim now, lost, and have now had partial summary judgment entered against them in this court on the ground of collateral estoppel.  Though given, we hope, a last chance by this Court to dig themselves out of the hole that they created, they have failed to do so.

## CONCLUSION

Plaintiffs have failed to plead at least one, and really several, of the elements of a legal malpractice claim against Yacovelle and there is no reason to believe that they could cure their failure with more chances. These efforts have been going on for 15 months and we, along with the other parties to this case have had to stand by, refrain from discovery, run the risk of loss of witnesses,  which adds up to serious delay and prejudice, all while living under the shadow of pending litigation while the plaintiffs bungle on. This time, we urge not only that the plaintiffs' motion be dismissed, but that the dismissal of plaintiffs' motion should be **with prejudice.**

Dated: February  17,  2014

Respectfully submitted,

John A. Yacovelle,
Attorney for Defendant
Matthew Durst

11

# EXHIBIT 1

SUPERIOR COURT OF N.J.
CUMBERLAND COUNTY
LAW DIVISION

MAY 11 2012

REC'D & FILED
CIVIL CASE
MANAGEMENT OFFICE

**KERNS, PEARLSTINE, ONORATO & HLADIK, LLP**
By: Stephen M. Hladik, Esquire
298 Wissahickon Avenue
North Wales, PA 19454
(T) 215-855-9521; (F) 215-855-9121
*Attorney for Defendants: Goodmill, LLC and Bruce A. Goodman*

| | | |
|---|---|---|
| MATTHEW DURST, Trustee of the | : | Superior Court of New Jersey |
| JAKE BALL TRUST, | : | Chancery Division, General Equity |
| *Plaintiff,* | : | Cumberland County |
| | : | |
| vs. | : | Civil Action |
| | : | |
| GOODMILL, LLC and BRUCE A. | : | Docket No.: C27-10 |
| GOODMAN, | : | |
| *Defendants.* | : | **CERTIFICATION OF CHRISTOPHER PENNINGTON** |

I, Christopher Pennington, being duly sworn, do hereby certify as follows:

1. I am an adult individual and have personal knowledge of the facts set forth in this Certification. I am a licensed Pennsylvania Commercial Realtor, based in Philadelphia, Pennsylvania. I have been a licensed realtor since 2004.

2. My specialty is in commercial real estate, and I have been involved with and done deals with commercial buildings in the vicinity of Hunting Park, Philadelphia, Pennsylvania.

3. In approximately 2008, I approached Steven Durst to list for sale a property located at 1600 West Hunting Park Avenue, Philadelphia, Pennsylvania.

4. Upon undertaking the assignment, our realty firm's sign was affixed to the building, and has remained so affixed and visible to the public for the course of the last four (4) years.

5. In the last three and a half years, there has been limited interest in the property. I have continued to field calls, market the property and attempt to show it to as many people as possible. However, nothing has come to fruition on this building.

6. To the best of my knowledge, there were only two (2) prior interested parties that presented proposals to purchase the building, one from Steve Sherman and one from the NCCF.

7. In each of those instances, it was Steve Durst that dealt with those potential prospects.

8. I have visited the property numerous times and viewed its current condition.

9. In my opinion, there are issues with the building relating to the roof, sprinklers, and other deferred maintenance.

10. In my opinion, due to the condition of the property, I do not believe that the property is worth any more than $500,000.00 to $600,000.00.

11. I have voiced this opinion of what I believe to be a realistic sale price to both Bruce Goodman and Chris Andersen of Goodman Properties.

12. In late-December 2011, I was approached by a realty firm out of King of Prussia, Pennsylvania known as NAI Geis.

13. That entity represented a company known as KIPP Charter School who is involved in the charter school business.

14. On December 27, 2011, I showed the property to NAI Geis and Iron Stone Development, a developer who would purchase the property for KIPP and develop it for their use.

15. After that, an offer came into my office on January 4, 2012.

16. Up through December, 2011, I was communicating directly with Steve Durst concerning this interested party.

17. However, in late-December, I learned that I should be dealing with Bruce Goodman with regard to the property.

18. I transmitted the January offer to Bruce Goodman.

19. That offer was in the amount of $1.1 million and advised Mr. Goodman that he ought to sign the deal immediately.

20. I had concerns about the legitimacy of that sale price, because a thorough inspection of the property would show the amount of work needed to use the building as a school.

21. It was apparent that the developer, Iron Stone Development was purchasing the building for use by this particular tenant (KIPP).

22. As per my conversation with the buyer's agent, the deal died, partly due to the condition of the building, and partly because KIPP had other options.

23. There is deferred maintenance that must be considered by any prospective buyer, which in my opinion affects the sale price.

24. I have voiced in the past to Steve Durst that the price needed to be lowered to accommodate the amount of deferred maintenance that was required.

25. Mr. Durst indicated to me on several occasions that he needed $1.2 million on the building to cover the Note to Bruce Goodman.


**I hereby certify that the foregoing is true. I understand that if any of my statements herein are willfully false I am subject to punishment.**


Christopher Pennington

# EXHIBIT 2

<u>Prepared by and Return to:</u>

Keystone Agency, Inc.
1525 Locust Street
Suite 301
Philadelphia, PA 19102
215-732-3764

File No. 10-13313-P
BRT # 88-4-0423-95



52736492
Page: 1 of 5
01/02/2014 02:41PM

This Document Recorded
01/02/2014    State RTT: 3,500.00
02:41PM       Local RTT: 10,500.00
Doc Code: D       Commissioner of Records, City of Philadelphia

Doc Id: 52736492
Receipt #: 1324778
Rec Fee: 230.00

# 𝕿𝖍𝖎𝖘 𝕴𝖓𝖉𝖊𝖓𝖙𝖚𝖗𝖊, made the 31ˢᵗ day of December, 2013,

## 𝕭𝖊𝖙𝖜𝖊𝖊𝖓

**NBL MORTGAGE, LLC, a Pennsylvania limited liability company**

(hereinafter called the Grantor), of the one part, and

**HUNTING PARK INVESTMENT, LLC, a Pennsylvania limited liability company**

(hereinafter called the Grantee), of the other part,

𝖂𝖎𝖙𝖓𝖊𝖘𝖘𝖊𝖙𝖍, that the said Grantor for and in consideration of the sum of **Three Hundred Fifty Thousand Dollars 00/100 ($350,000.00)** lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, its successors and assigns, in fee,

Street Address: 1600-1618 W. Hunting Park Ave.,Philadelphia, PA 19140

See Attached Exhibit A

𝕿𝖔𝖌𝖊𝖙𝖍𝖊𝖗 𝖜𝖎𝖙𝖍 all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

𝕿𝖔 𝖍𝖆𝖛𝖊 𝖆𝖓𝖉 𝖙𝖔 𝖍𝖔𝖑𝖉 the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

## 𝖀𝖓𝖉𝖊𝖗 𝖆𝖓𝖉 𝕾𝖚𝖇𝖏𝖊𝖈𝖙 𝖆𝖘 𝖆𝖋𝖔𝖗𝖊𝖘𝖆𝖎𝖉.

𝕬𝖓𝖉 the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that it, the said Grantor, and its successors

and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against it, the said Grantor, and its successors and assigns, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

**In Witness Whereof,** the party of the first part has caused its common seal to be affixed to these presents. Dated the day and year first above written.

Witness:

NBL MORTGAGE LLC

By: _____

Bruce A. Goodman, Sole Member

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF MONTGOMERY                    } ss

AND NOW, this 31st day of December, 2013, before me, the undersigned Notary Public, appeared **Bruce A. Goodman,** who acknowledged himself to be the **Sole Member** of **NBL Mortgage LLC,** a Pennsylvania limited liability company, and he, as such **Sole Member** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the a Pennsylvania limited liability company by himself as **Sole Member.**

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

Notary Public
My commission expires _____

The precise residence and the complete post office address of the above-named Grantee is:

**1100 Vine Street
Unit 619
Philadelphia, PA  19107**

On behalf of the Grantee

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael S. Baurer, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Jan. 16, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Exhibit A

Legal Description

ALL THAT CERTAIN lot or piece of land, with the buildings and improvements thereon erected situate, lying and being in the City of Philadelphia, State of Pennsylvania:

SITUATE in the 13th (formerly part of the 43rd) ward of the City of Philadelphia. Described in accordance with a survey and plan thereof made by Joseph F. Delany, Esq., Surveyor and Regulator of the 5th district on the 28th day of November A.D. 1934 as follows to wit:

BEGINNING at a point at the intersection of the Southeast side of Hunting Park Avenue (100 feet wide) and the Southwest side of North 16th Street (50 feet wide) thence

1. Extending along the said North 16th Street South 27 degrees 01 minute East 435.4 feet to appoint; thence

2. Extending along a line at right angles with the said North 16th Street South 62 degrees 59 minutes West 123.11 feet to a point; thence

3. Extending along a line parallel with the said North 16th Street 27 degrees 1 minute West 430.8 feet to the Southeasterly side of Hunting Park Avenue; thence

4. Extending along the said side of Hunting Park Avenue North 60 degrees 49 minutes 33 seconds East 124 feet to the first mentioned point and place of BEGINNING.

Being known as No. 1600-1618 West Hunting Park Avenue.

Being the same premises which US Safeguard Corp., a Pennsylvania Corporation by Deed dated 6/29/2007 and recorded 7/2/2007 in Philadelphia County as Document No. 51724621 conveyed unto Zack & Jack Realty Associates, LP, in fee.

# Deed

BRT # 88-4-0423-95

NBL Mortgage LLC,
A Pennsylvania Limited Liability Company

TO

Hunting Park Investment, LLC,
A Pennsylvania Limited Liability Company

Premises: 1600-1618 W. Hunting Park
Ave., Philadelphia, PA  19140

Keystone Agency, Inc.
1525 Locust Street
Suite 301
Philadelphia, PA 19102
Telephone: 215-732-3764 Fax: 215-545-5329

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

| | |
|---|---|
| | DATE RECORDED |
| | CITY TAX PAID |

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A.   CORRESPONDENT — All inquiries may be directed to the following person:**

| NAME | TELEPHONE NUMBER: |
|---|---|
| Hunting Park Investment, LLC | AREA CODE (    ) |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1100 Vine Street, Unit 619 | Philadelphia | PA | 19107 |

**B.   TRANSFER DATA** — DATE OF ACCEPTANCE OF DOCUMENT: **December 31, 2013**

| GRANTOR(S)/LESSOR(S) | GRANTEE(S)/LESSEE(S) |
|---|---|
| NBL Mortgage LLC | Hunting Park Investment, LLC |

| STREET ADDRESS | STREET ADDRESS |
|---|---|
| 636 Old York Road, 2nd Floor | 1100 Vine Street, Unit 619 |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Jenkintown | PA | 19046 | Philadelphia | PA | 19107 |

**C.   PROPERTY LOCATION**

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH |
|---|---|
| 1600-1618 W. Hunting Park Ave. | Philadelphia City |

| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
|---|---|---|
| Philadelphia | Philadelphia | 88-4-0423-95 |

**D.   VALUATION DATA**

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| 350,000.00 | +    - 0 - | = 350,000.00 |

| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
|---|---|---|
| 129,600.00 | x 3.27 | = 423,792.00 |

**E.   EXEMPTION DATA**

| 1A. AMOUNT OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED | |
|---|---|---|
| 0 | 100% | |

**2.   Check Appropriate Box Below for Exemption Claimed**

☐ Will or intestate succession _____ .
　　　　　　　　　　　　　　　　　*(NAME OF DECEDENT)*　　　　　　　　*(ESTATE FILE NUMBER)*

☐ Transfer to Industrial Development Agency.

☐　Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ _____ .

☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____ , Page Number _____ . Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☐ Other (Please explain exemption claimed, if other than listed above.) _____
_____
_____

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
|---|---|
| Hunting Park Investment, LLC | December 31, 2013 |

82-127 (Rev. 8/93)　　　　　　　　　　　(SEE REVERSE)

Previous editions are obsolete

form HUD-1 (3/86) ref Handbook 4305.1

**Keystone Agency, Inc.**
**1525 Locust Street, Suite 301**
Philadelphia, PA 19102
Phone# (215) 732-3764
Fax# (215) 545-5329

| A. | Settlement Statement |
| --- | --- |
| | U.S. Department of Housing and Urban Development |
| | OMB No. 2502-0265 |

| B. TYPE OF LOAN | | | | |
| --- | --- | --- | --- | --- |
| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins | | |
| 4. ☐VA | 5. ☐Conv. Ins | | | |
| 6. FILE NUMBER | | | 7. LOAN NUMBER | |
| 10-1033-P | | | | |
| 8. MORTGAGE INSURANCE CASE NUMBER | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 12/31/2013 at 11:34 MB

| D. NAME OF BORROWER: | Hunting Park Investment, LLC |
| --- | --- |
| ADDRESS: | 1100 Vine Street, Unit 619, Philadelphia, PA 19107 |
| E. NAME OF SELLER: | NBL Mortgage LLC |
| ADDRESS: | 636 Old York Road, 2nd Floor, Jenkintown, PA 19046 |
| F. NAME OF LENDER: | Bala Real Estate LLC |
| ADDRESS: | 205 N 11th Street, 2F, Philadelphia, PA 19107 |
| G. PROPERTY ADDRESS: | 1600-1618 W. Hunting Park Ave., Philadelphia, PA 19140 |
| | Philadelphia City |
| H. SETTLEMENT AGENT: | Keystone Agency, Inc., Telephone: 215-732-3764 Fax: 215-545-5329 |
| PLACE OF SETTLEMENT: | 1525 Locust Street, Suite 301, Philadelphia, PA 19102 |
| I. SETTLEMENT DATE: | 12/31/2013 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
| --- | --- | --- | --- |
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 350,000.00 | 401. Contract sales price | 350,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 9,780.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes    12/31/13 to 12/31/13 | 34.34 | 406. City/town taxes    12/31/13 to 12/31/13 | 34.34 |
| 107. County taxes | | 407. County taxes | |
| 108. School taxes | | 408. School taxes | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. All Adjustments As Agreed | | 412. All Adjustments As Agreed | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 359,814.34 | 420. GROSS AMOUNT DUE TO SELLER | 350,034.34 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | 25,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 300,000.00 | 502. Settlement charges to seller (line 1400) | 79,166.99 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage Loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. School taxes | | 512. School taxes | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 325,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 79,166.99 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 359,814.34 | 601. Gross amount due to seller (line 420) | 350,034.34 |
| 302. Less amounts paid by/for borrower (line 220) | 325,000.00 | 602. Less reduction amount due seller (line 520) | 79,166.99 |
| 303. CASH FROM BORROWER | 34,814.34 | 603. CASH TO SELLER | 270,867.35 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in this important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide us a statement (Fed. Tax ID No: _____) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

| TIN: | ___/___/___/___ | SELLER(S) SIGNATURE(S): | _____ |
| --- | --- | --- | --- |
| SELLER(S) NEW MAILING ADDRESS: | | | |
| SELLER(S) PHONE NUMBERS: | | (H) _____ | (W) _____ |

Previous editions are obsolete

form HUD-1 (3/86) ref Handbook 4305.1

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**SETTLEMENT STATEMENT**

File Number: 10-13313-P
TitleExpress Settlement System  Printed 12/31/2013 at 11:34 MB
PAGE 2

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $350,000.00 = 21,000.00 | | |
| Division of commission (line 700) as follows: | | |
| 701. $       21,000.00   to  Binswanger of Pennsylvania, Inc. | | |
| 702. $                            to | | |
| 703. Commission paid at Settlement | | 21,000.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee        % | | |
| 802. Loan Discount        % | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. | | |
| 806. | | |
| 807. | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From        to        @$        /day | | |
| 902. Mortgage Insurance Premium for        to | | |
| 903. Hazard Insurance Premium for        to | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | |
| 1001. Hazard Insurance        mo. @ $        /mo | | |
| 1002. Mortgage Insurance        mo. @ $        /mo | | |
| 1003. City Property Tax        mo. @ $        /mo | | |
| 1004. County Property Tax        mo. @ $        /mo | | |
| 1005. School taxes        mo. @ $        /mo | | |
| 1009. Aggregate Analysis Adjustment | 0.00 | 0.00 |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or Closing Fee | | |
| 1102. Abstract or Title Search | | |
| 1103. Title Examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Preparation | | |
| 1106. Notary Fees        to  M.S. Baurer | 100.00 | 100.00 |
| 1107. Attorney's fees | | |
| (includes above items No. | ) | |
| 1108. Title Insurance        to  Keystone Agency, Inc. | 2,150.00 | |
| (includes above items No. | ) | |
| 1109. Lender's Policy        300,000.00  - 1,900.00 | | |
| 1110. Owner's Policy        350,000.00  - 250.00 | | |
| 1111. 100 No Viol, 300 Survey        to  Keystone Agency, Inc. | 100.00 | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees Deed $ 230.00   ; Mortgage $ 200.00   ; Release $  200.00 | 430.00 | 200.00 |
| 1202. City/County tax/stamps        Deed $10,500.00   ; Mortgage $ | 5,250.00 | 5,250.00 |
| 1203. State Tax/stamps        Deed $3,500.00   ; Mortgage $ | 1,750.00 | 1,750.00 |
| 1204.        Deed $   ; Mortgage $ | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Escrow for Outstanding Liens   to  Keystone Agency, Inc.- Escrow Account: | | 6,159.33 |
| 1302. W/S est. to 12/31/13        to  City of Phila. #057-44040-01606-001 | | 694.95 |
| 1303. Fire Svc. est. to 12/31/13        to  City of Phila. #420-44040-01606-002 | | 43.11 |
| 1304. Fire Svc. est. to 12/31/13        to  City of Phila. #420-44040-01606-003 | | 63.93 |
| 1305. Payoff PGW        to  PGW | | 43,840.67 |
| 1306. Good Standing Cert.        to  M. Burr Keim Company | | 65.00 |
| **1400. TOTAL SETTLEMENT CHARGES**   (enter on lines 103, Section J and 502, Section K) | 9,780.00 | 79,166.99 |

**HUD CERTIFICATION OF BUYER AND SELLER**

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.
Pinting Park Investment, LLC

by: Xiangang Wu, sole member

NSL Mortgage LLC

by: Bruce A. Goodman, SBL member

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

SETTLEMENT AGENT:                              DATE  12/31/13

**Law Office**
**JOHN A. YACOVELLE**
**8438 Mackall Rd.**
**St. Leonard, MD 20685**
**410-586-3344**
**Attorney for Defendant**
**Matthew Durst**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAKE BALL TRUST, STEVEN DURST,** **and REUBEN DURST** **Plaintiffs** | |
| **v.** | **CIVIL ACTION** **Case 1:12-cv-05255-JBS-AMD** |
| **MATTHEW DURST, et.als** **Defendants** | **ORDER** |

This matter having opened to the Court by Plaintiffs and the Court having considered the moving papers and the papers filed in opposition thereto, and for good cause shown;

**IT IS**, on this _____day of _____, 2014, **ORDERED** that Plaintiffs Second Motion for Leave to File a Seconded Amended Complaint adding John Yacovelle and Law Office of John A. Yacovelle as Defendants **BE** and is **HEREBY, DENIED, with prejudice.**

_____
ANN MARIE DONIO, U.S.M.J.