**MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
Liberty View, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 488-7700
Attorneys for Defendant Robinson & Cole LLP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| **REUBEN DURST, TRUSTEE, STEVEN DURST, INDIVIDUALLY AND AS TRUSTEE,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **CIVIL ACTION** |
| | : | **NO.:  1:12-cv-05255-JBS-AMD** |
| **MATTHEW DURST, INDIVIDUALLY AND AS TRUSTEE, HALLORAN & SAGE, LLP, ROBINSON & COLE LLP, AND KELLEY GALICA-PECK,** | : | |
| **Defendants.** | : | **MOTION DAY:  December 1, 2014** |
| | : | |

## BRIEF OF ROBINSON & COLE LLP IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................... 2

    A.    The Pre-Robinson & Cole Events: The 2007 Conversion Of The
        Jake Ball Trust To An Irrevocable Trust ............................................. 2

    B.    The Robinson & Cole Period Events ..................................................... 6

III.  LEGAL ARGUMENT ........................................................................... 8

    A.    Summary of Argument......................................................................... 9

    B.    Robinson & Cole Cannot As A Matter of Law Be Held Liable
        For The Pre-Robinson & Cole Claims ................................................ 11

    C.    The Plaintiffs Cannot Prove Damages Suffered As A Proximate
        Cause Of The Conduct Alleged in Paragraphs 49-51 Of The
        Amended Complaint ......................................................................... 13

IV.   CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Cleveland v. Policy Mgmt. Sys. Corp.,*
526 U.S. 795 (1999) ........................................................................... 14

*Conklin v. Hannoch Weisman,*
145 N.J. 395, 678 A.2d 1060 (1996) ..................................................... 9

*McGrogan v. Till,*
167 N.J. 414, 771 A.2d 1187 (2001) ............................................... 9, 13

*Morse v. Lower Merion Sch. Dist.,*
132 F.3d 902 (3d Cir. 1997) ............................................................ 11

*Wilkerson v. Hallett,*
2010 WL 3906854 (D.N.J. Sept. 29, 2010) ...................................... 9, 13

## I.    INTRODUCTION

Defendant Robinson & Cole LLP ("R&C") hereby files this Brief in Support of its Motion for Summary Judgment on the Plaintiffs' Amended Complaint sounding in legal malpractice.

At the time Halloran & Sage LLP ("H&S") was first retained by Matthew Durst in 2006, Matthew Durst and his brother Reuben ("Mike") Durst were co-trustees of the Jake Ball Trust (the "Trust"), pursuant to a 2004 trust agreement. Matthew Durst's brother, Steven, was the grantor of the Trust. (*See* Certification of Kelley Galica Peck, Esquire in Support of Robinson & Cole LLP's Motion for Summary Judgment ("Peck Cert.") at ¶ 6). R&C did not have any dealings with the Durst family or the Jake Ball Trust before October 4, 2010. On that date, attorney Kelley Peck left her employment with H&S and became an employee of R&C. (Peck Cert. ¶¶ 3-5, 14). A genuine dispute does not exist as to these facts.

Based on the October 2010 date, the allegations of malpractice alleged in the Amended Complaint can be divided into two groups: (1) those that relate to events occurring before Kelley Peck joined Robinson & Cole (the "Pre-R&C Claims"); and (2) those that relate to events occurring after Peck joined R&C in October 2010 (the "R&C Period Claims"). The Pre-R&C Claims are alleged in paragraphs 39-48 of the Amended Complaint. The R&C Period Claims are alleged in paragraphs 49-51 of the Amended Complaint. Because R&C's involvement did not begin until

October 2010, it cannot as a matter of law be held liable for the Pre-R&C Claims.

The second group of allegations, set forth in paragraphs 49 to 51 of the Amended

Complaint, do in fact relate to events that occurred during R&C's representation.

However, even if R&C's representation violated duties to the Plaintiffs (which is not

properly alleged and which is denied), R&C is nevertheless entitled to judgment as a

matter of law on the R&C Period claims.   As discussed more fully below, the

Plaintiffs cannot prove one or more essential elements of their claims, namely

causation or damages.   Accordingly, R&C respectfully submits that summary

judgment should be entered in its favor on the Amended Complaint.

## II.   STATEMENT OF FACTS

### A.   The Pre-Robinson & Cole Events: The 2007 Conversion Of The Jake Ball Trust To An Irrevocable Trust.

On November 29, 2004, Steven Durst as grantor created the Jake Ball Trust

(the "Trust"), a revocable trust. (Peck Cert., Ex. 2 at 1).  Matthew Durst and Reuben

Durst were named as co-trustees.   The Trust was thereafter amended.   The final

amendment occurred on December 24, 2007.  On December 24, 2007, Steven Durst

as grantor amended and restated the Trust in its entirety and made it irrevocable.

(Peck Cert. ¶¶ 9, 13).  This was done through a written agreement entitled "Jake Ball

Trust Agreement, By and Between Steven Durst as Grantor, and Matthew Durst and

Reuben H. Durst as Trustees, dated November 29, 2004, as Amended and Restated

on December 24, 2007."   (Peck Cert. ¶10 and Ex. 2 at 1).   Among the assets contributed to the Jake Ball Trust by Steven Durst was a 10 percent membership interest in Goodmill LLC ("Goodmill").  (Peck Cert. ¶ 12 and Ex. 2 at 1).  Goodmill is a limited liability company that was established to develop and operate a shopping center in Millville, New Jersey.  (Am. Comp. at ¶ 22(a); Peck Cert. ¶ 7).  The Plaintiffs refer to this as the "Millville Asset."  (Am. Comp. at ¶ 24).  The exact date that Steven Durst transferred his 10 percent interest to the Jake Ball Trust is unclear. However, the Operating Agreement of Goodmill LLC, dated November 15, 2005 (Peck Cert. Ex. 1) identifies the Jake Ball Trust as the owner of the 10 percent interest as of November 15, 2005.  (Peck Cert. Ex. 2 at 24).  On December 24, 2007, the Jake Ball Trust became irrevocable.  (Peck Cert. ¶¶ 9 and 13; Peck Cert. Ex. 2). In the Amended Complaint, the Plaintiffs maintain that before the Trust became irrevocable, representations were made upon which Steven Durst relied.  (Am. Comp., ¶¶ 42-46).   Specifically, Plaintiffs assert that Steven Durst relied by transferring his 10 percent interest in Goodmill to the Trust or by agreeing to make the trust irrevocable, and by taking a $500,000 promissory note from the Trust.  (*Id.* at ¶ 46).  The note was secured by a collateral assignment of the Trust's membership interest in Goodmill.  (Peck Cert. ¶¶ 12-13).   Plaintiffs refer to the collateral assignment as a security agreement.  (*Id.* at ¶ 46).

In their Amended Complaint, the Plaintiffs allege "the Malpractice Defendants" committed legal malpractice in the course of representing the Trust. The specific allegations of malpractice alleged are as follows:

42. In the course of representing the Trust, the Malpractice Defendants represented, among other things, that:

(a) At the inception of the Trust, Steve Durst would have the ability to change trustees and name successor trustees. The Trust documents not only failed to establish this but, in fact, impeded same.

(b) Prior to the inception of the Trust, the Malpractice Defendants represented to Grantor, Steve Durst, that the Trustee would be required to provide annual accountings. The Trust documents, however, failed to provide for annual accountings.

(c) The Millville Asset was worth approximately $900,000.00. Paragraph 7.04 of the Operating Agreement for the Millville Asset contained a provision (Paragraph 7.04) that could effectively destroy the value of the Millville Asset. This despite the fact that Malpractice Defendants acknowledged reading said Operating Agreement.

43. In the course of representing the Trust, the Malpractice Defendants represented that the value of the Millville Asset in the Trust was approximately $900,000.00.

44. Peck represented the Trust Assets were worth approximately $900,000.00.

45. In reliance upon the opinion of the Malpractice Defendants, Steve Durst conveyed the Millville Asset to the Trust.

46. In reliance upon the valuation advice given by the Malpractice Defendants, the Trust executed a Note and Security Agreement

in favor of Steve Durst in the amount of $500,000.00 plus interest at 4.79%.

(Am. Comp., ¶¶ 42-46).

The reliance alleged, and the representations relied on, occurred on or before the Trust became irrevocable on December 24, 2007. The terms of the conversion of the Trust to an irrevocable trust were set forth in a written Agreement dated December 21, 2007 among Steven Durst and his brothers, Reuben Durst and Matthew Durst (the "Trust Conversion Agreement"). (Peck Cert., Ex. 2). Under the Trust Conversion Agreement, the Trust agreed to give Steven Durst a note, secured by a collateral assignment of the Trust's interest in Goodmill, in exchange for Steven's agreement to make the Trust irrevocable. (*Id.* at 1-2).

During the period from late 2006 until the time the Trust became irrevocable on December 24, 2007, Matthew Durst as trustee of the Trust was represented by H&S. (Peck Cert. ¶¶ 4-6, 13). H&S is a Connecticut limited liability partnership. (Peck Cert. ¶ 4). The attorney at H&S principally responsible for the Trust's work was Kelley Peck. (Peck Cert. ¶ 5, 10, 13). Peck is an attorney licensed to practice in the State of Connecticut. (Peck Cert. ¶ 1). During her time at H&S, Peck worked out of H&S's office in Hartford, Connecticut, and focused her work on trust and estate planning and administration. (Peck Cert. ¶ 4).

Almost 3 years after the Trust became irrevocable, Kelley Peck left her employment at H&S and became employed as an attorney at R&C.  (Peck Cert. ¶¶ 3-4).  Prior to Peck's joining R&C on October 4, 2010, R&C had never performed any legal work for the Trust or for Steven Durst or his brothers.  (Peck Cert. ¶¶ 14, 16).  In particular, R&C did not have any role in connection with the transfer of the Millville Asset to the Trust, Steven Durst's decision to make the Trust irrevocable, the conversion of Trust, the making of the promissory note, or the securitization of the note.  (Peck Cert. at ¶ 10, 13, 14, 16).

**B.     The Robinson & Cole Period Events.**

Shortly after Peck joined R&C in October 2010, Matthew Durst retained R&C to represent him as trustee of the Trust.  (Peck Cert. ¶ 14).  At the time, the Trust was already involved in litigation pending in New Jersey and Pennsylvania.  (Peck Cert. ¶ 17).  The New Jersey litigation was settled in 2011.  The New Jersey Superior Court found that the settlement was fair and reasonable to the Trust, and ordered that the Trust's interest in Goodmill LLC be transferred as part of the settlement. (Zoubek Cert., Ex. 3).

As a result of a dispute with Steven Durst concerning the settlement, Matthew Durst decided in the fall of 2011 that he would resign as trustee upon approval of a final accounting by the Connecticut Probate Court.  He asked Kelley Peck of R&C to represent him in the accounting.  (Peck Cert. ¶¶ 18-19).

-6-

In preparation for his resignation, a petition for final accounting with supporting documents was submitted to the Connecticut Probate Court. (Peck Cert. ¶ 19). Steven Durst and Reuben Durst were represented by Attorney Vincent D'Elia in connection with that accounting. (Peck Cert. ¶ 20). Steven Durst and Reuben Durst were also represented by Attorney Louis Piscatelli, a Connecticut attorney with the Withers Bergman firm. (*Id.*). In December 2011, Peck learned that Steven Durst's children were asserting that there were irregularities in the accounting. In an email to Attorney D'Elia dated December 12, 2011, Peck advised D'Elia of this development. She sent a follow-up email the next day to Attorney D'Elia. (Peck Cert. ¶ 21 and Ex. 4).

In December 2011, Matthew Durst transferred $35,000 to an escrow account at R&C. Steven Durst's attorney objected to the escrow. (Peck Cert. ¶ 23, 24). After a hearing before the Probate Court on January 23, 2012, the Probate Court orally directed that the escrow be frozen pending further order of the court. (Peck Cert. ¶ 24 and Ex. 5).

On May 24, 2013, the Probate Court issued its decision on the accounting. (Peck Cert. ¶ 26 and Ex. 6). The court held that it had jurisdiction, approved the statements of account with certain adjustments, but declined to rule on whether certain distributions were proper in deference to the proceedings in this Court. The

Probate Court as part of its ruling held that the accounting should be adjusted to reflect the escrow account as an asset of the Trust. (*Id.*).

Matthew Durst appealed the Probate Court's ruling to the extent that the Probate Court, after finding jurisdiction, declined to exercise its jurisdiction over the remaining issues out of deference to a later filed action in this Court. (Peck Cert. ¶ 30 and Ex. 8). Matthew Durst also moved to stay the court's ruling on release of the escrow pending appeal. (Peck Cert. ¶ 30). On October 29, 2013, the Probate Court denied the stay and ordered that the escrow funds, less certain allowed expenses, be turned over to the Trust within 14 days. (Peck Cert. ¶ 32 and Ex. 9). That was done, and on November 5, 2013, notice of compliance with the Probate Court's order was filed with the court. (Peck Cert. Ex. 10).

## III.   LEGAL ARGUMENT

In their Amended Complaint, the Plaintiffs allege that Matthew Durst breached fiduciary duties. (Am. Comp. ¶¶ 14, 25, 37, 38). The Plaintiffs have also asserted claims for legal malpractice as to defendants, Kelley Peck, H&S and R&C. (Am. Comp. ¶¶ 39-51). This motion for summary judgment is directed solely at the Plaintiffs' claims against R&C.

## A.     Summary of Argument.

"At the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance." *McGrogan v. Till*, 167 N.J. 414, 425, 771 A.2d 1187, 1193 (2001). It is the injurious conduct that engenders the cause of action. *Id.* Under New Jersey law, a plaintiff making a claim for legal malpractice must plead and prove (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. *McGrogan*, 167 N.J. at 425; *Conklin v. Hannoch Weisman,* 145 N.J. 395, 416, 678 A.2d 1060 (1996). Based on the undisputed facts, the Plaintiffs cannot prove any of these elements with respect to the Pre-R&C Claims.

This leaves only the three allegations set forth in paragraphs 49-51 of the Amended Complaint (the R&C Period Claims). These allegations do not establish a duty by R&C. But even if Plaintiffs could establish a duty of care and a breach of that duty (which are vigorously denied), the Plaintiffs still cannot prove that they suffered damages as a proximate result of R&C's conduct.[1]

---

[1] Proximate causation of damages is an essential element of Plaintiffs' proof whether the claims sound in breach of fiduciary duty or legal malpractice. *Wilkerson v. Hallett*, 2010 WL 3906854, at *11 (D.N.J. Sept. 29, 2010) (Simandle, J) (Zoubek Cert., Ex. 1).

Specifically, the Plaintiffs cannot prove causation or damages as to paragraph 49 which relates to the 2011 conveyance of the Millville Asset. As the record reflects, and as the Court is well aware, this conveyance occurred as part of a court-ordered settlement. (Zoubek Cert., Ex. 3). This Court has already held that the Plaintiffs are collaterally estopped from claiming damages as a result of any legal malpractice in connection with the 2011 settlement resulting in the transfer of the Millville interest. *See Durst v. Durst*, No. 12-5255 (JBS/AMD), Order, Doc. 82, July 25, 2014, at 11-12). Any claim under paragraph 49 of the Amended Complaint fails as a matter of law.

In paragraph 50, Plaintiffs complain about a single email by Kelley Peck. The email was written to Steven Durst's attorney, Vincent D'Elia. (Peck Cert. Ex. 4). As discussed below, the sending of an email by one attorney to another cannot seriously be said to have caused loss or damage to the Plaintiffs. R&C is therefore entitled to judgment as a matter of law on any claim based on paragraph 50 of the Amended Complaint.

Finally, in paragraph 51 (the final paragraph of the complaint) the Plaintiffs complain that Matthew Durst transferred trust funds into an escrow account held by R&C. Again, Plaintiffs cannot prove damages resulting from any conduct by R&C. Based on the record on this motion, it cannot genuinely be disputed that: The escrowed funds were held pursuant to an order of the Connecticut Probate Court

-10-

(Peck Cert. ¶ 24 and Ex. 5); the Probate Court, after the accounting was completed, ordered that the escrow funds be paid over to the Trust net of certain expenses (Peck Cert. Ex. 9); and the funds net of expenses were then paid over to Reuben Durst as trustee, all in accordance with the Probate Court's order. (Peck Cert. Ex. 10). Since the funds were held pursuant to court order and have now been released to the Trust, the Plaintiffs cannot prove an essential element of their claim, *i.e.* that they suffered damages as a result of any conduct by R&C.

In sum, R&C is entitled to summary judgment on the Plaintiffs' claims against it. The Pre-R&C claims cannot be sustained as to R&C. As to the remaining three allegations, the Plaintiffs cannot prove causation or damage, both of which are essential elements of their burden.

### B.   Robinson & Cole Cannot As A Matter of Law Be Held Liable For The Pre-Robinson & Cole Claims.

The allegations in paragraphs 39-48[2] of the Amended Complaint all concern events that led up to Steven Durst's conveyance of the "Millville Asset" to the Trust. The Millville Asset is the 10 percent membership interest in Goodmill LLC. (Peck Cert. ¶ 12 and Ex. 2 at 1).

---

[2] In paragraph 48, the Plaintiffs allege that "the malpractice defendants breached their fiduciary obligations to the *Grantor*" (emphasis added). There is no allegation that R&C represented Steven Durst individually as grantor. Moreover, the only injuries alleged as to Steven Durst personally relate to the conversion of the Jake Ball Trust to an irrevocable trust in 2007. This is a Pre-R&C claim. Even if the Plaintiffs argue to the contrary, the Court need not accept sweeping "'legal conclusions'" cast in form of "'bald assertions[,]'" unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Essentially, the claim is that Steven Durst would not have agreed to make the Trust irrevocable but for representations made at the time. None of this has anything to do with R&C. The alleged events all took place in or before December 2007, when the Trust was made irrevocable. (Peck Cert. ¶¶ 9, 12 and 13). R&C had no involvement at that time. (Peck Cert. at ¶¶ 4-6, 16). Its representation began nearly three years later in October 2010, when Kelley Peck left H&S to become an employee of R&C. (Peck Cert. ¶¶ 3, 4 and 14). There is no genuine dispute.

Similarly R&C cannot be held liable for the alleged failure to securitize the promissory note given as part of the conversion. The note and collateral assignment were made in 2007 (*see* Am. Comp., ¶¶ 42-46), again nearly three years before R&C's representation began. (Peck Cert. ¶¶ 4-6, 16). Moreover, any financing statement would have been for the benefit of the *lender* (Steven Durst), and it would have been the obligation of Steven Durst's counsel at that time to file any such statement. None of this has anything to do with Matthew Durst or R&C.

The alleged failure to securitize the note also fails for another reason. The Plaintiffs cannot prove harm proximately caused by the alleged failure to record a UCC-1. Indeed, Attorney D'Elia (counsel for Plaintiffs in this case) argued to the New Jersey state court that the settlement could not be enforced because Bruce Goodman had actual knowledge of the collateral assignment. (*See* Zoubek Cert., Ex. 4 (Transcript of Hearing on Motion to Enforce Settlement) at 15-17), reproduced

and filed in this action as Document 12-6)).[3] Mr. Goodman's counsel agreed that if the collateral assignment was "a legitimate security interest held by Stephen [sic], Mr. Goodman takes subject to that interest. And, Stephen Durst would have all the state and court rights to try and enforce and take it back." *Id.* Steven Durst cannot prove proximate cause. He is free to assert as to Goodman that the 10 percent interest Goodman acquired as a result of the settlement remains encumbered by Durst's security interest. And, if the note is not paid, Steven Durst is free to foreclose on his security interest.

We respectfully submit that the Pre-R&C claims alleged in paragraphs 39-48 of the Amended Complaint are frivolous as to R&C.

C.   **The Plaintiffs Cannot Prove Damages Suffered As A Proximate Cause Of The Conduct Alleged in Paragraphs 49-51 Of The Amended Complaint.**

When the Pre-R&C Claims are stripped away, all that remains are the final three paragraphs of the Amended Complaint. The Plaintiffs have the burden of proving that they suffered damages as a proximate cause of the conduct alleged. *McGrogan*, 167 *N.J.* at 425 (2001); *Wilkerson v. Hallett*, 2010 WL 3906854 at *11 (D.N.J. Sept. 29, 2010). If Plaintiffs are unable to establish these essential elements

---

[3] The Court may take judicial notice of the transcript of the hearing before the New Jersey Superior Court. The Transcript was previously filed in this Court as Document 12-6, to which reference may be made.

-13-

of their proof, summary judgment should be entered against them.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999).

With respect to paragraphs 49-51, the Plaintiffs cannot meet their burden of proving that they suffered damages as a proximate cause of anything that R&C did or failed to do.  We address each of the allegations in turn.

First, in paragraph 49 of their Amended Complaint, the Plaintiffs allege:

> 49.   In late 2011, Matthew Durst agreed (on behalf of the Trust) to convey the Millville Asset secured by the loan from Steve Durst and contrary to the terms of the Loan Agreements.

This Court has already held that the Plaintiffs cannot prove that they were damaged by any malpractice of John Yacovelle in connection with the settlement.  *See Durst v. Durst*, No. 12-5255 (JBS/AMD), Order, Doc. 82, July 25, 2014, at 11-12) (Zoubek Cert., Ex. 2).  The Plaintiffs have never claimed that R&C also committed malpractice with respect to that settlement.  But even if we read paragraph 49 to state such a claim, it fails for the identical reasons set forth in this Court's prior ruling.  The Plaintiffs cannot prove an essential element of their claim, namely that they were damaged by the settlement.

The Plaintiffs likewise cannot prove that they were damaged as a proximate cause of the conduct alleged in paragraph 50 of the Amended Complaint.  That paragraph provides:

      50.    By email dated December 12, 2011, Peck threatened a "revised strategy" if Co-Trustee Reuben Durst and the Beneficiaries did not approve of Matthew Durst's final accounting irregularities and acts of impropriety by both Matthew Durst and Peck.

The December 12, 2011 email is in the record and speaks for itself.  (Peck Cert. Ex. 4).  The email was sent to Vincent D'Elia, the attorney representing Steven Durst and Reuben Durst as trustees in connection with the accounting proceedings.  In that email to D'Elia, Ms. Peck simply forwards a December 9, 2011 email she received from a daughter of Steven Durst, Erica, who is a beneficiary of the Trust.  In her e-mail Erica Durst expresses concern regarding "serious irregularities and issues in the accounting" and asks that Peck advise the Probate Court that "we do not wish a hearing in the time frame you suggested and that we will shortly advise the Court when we are prepared to attend such a hearing."  On December 12, Peck forwarded Erica Durst's email to D'Elia, as counsel for Erica's father Steven, and advised D'Elia that "the court has already declined my request for a 2 week hearing.  The court will use its own timeframe."  Peck then goes on to point out that at the time she received Erica Durst's email, Peck believed that Steven Durst and Reuben Durst were anxious to have the accounting of Matthew Durst completed quickly so that Matthew could resign before the hearing on the motion to enforce the settlement in the New Jersey litigation.  Peck, therefore, viewed Erica's email as a "mixed message" about the timing issue since Erica indicated that she and her siblings, who

-15-

were all beneficiaries, wanted an indefinite postponement, and that she and her siblings would let the Probate Court know when they were ready for a hearing on the accounting.

Given the "mixed" messages Peck was receiving, Peck was simply contacting D'Elia to get a better understanding of Steven's and the beneficiaries' positions. The email cannot be reasonably read as threatening a "revised strategy" as asserted in paragraph 50 of the Amended Complaint. Peck does not state that Erica and her siblings cannot object to the accounting. She simply states that if the beneficiaries intend to object to Matthew's accounting, she needs to know the objections; she needs to let the Probate Court know that the matter is contested; and she needs to "revisit" with Matthew his strategy as to whether he will resign. Ms. Peck does not threaten anything. The so-called "revised strategy" is a distortion of the actual language of the email in which Peck advises Attorney D'Elia that if Steven Durst's children intend to object and postpone the proceedings, she needs to talk to Matthew about these developments and determine (*i.e.*, "revisit") how he wishes to proceed.

No damage from Ms. Peck's December 12, 2011 email is alleged in the Amended Complaint and none can be found. Paragraph 50 is a rhetorical allegation intended only to paint Kelley Peck in a false light. Her email to Attorney D'Elia did not cause damage to the Plaintiffs. Indeed, the recipient of the email was the person retained to protect against damage to the Plaintiffs. There is no allegation that harm

-16-

occurred as a result of D'Elia's receipt of the email. Since damage is an essential element of the Plaintiffs' proof and Plaintiff's cannot prove any damage caused by the December 12, 2011 email, summary judgment should be entered in favor of R&C on paragraph 50.

The final allegation in the Amended Complaint is contained in paragraph 51, which states:

> 51.   On or about December 2011, Matthew Durst illicitly removed $35,000.00 of Trust Funds from the Trust checking account and transferred them to the account of Peck and Robinson in violation of the Trust Agreement and his fiduciary duties as a Trustee.

This allegation does not state a claim against R&C. But even if read as such, the Plaintiffs cannot claim damage as a result of any action by R&C. Over the objection of Plaintiffs' counsel, the escrow was held pursuant to an order of the Connecticut Probate Court until the Probate Court later ordered its release. The escrowed funds, less expenses approved by the Probate Court, were then turned over to the Trust. (Peck Cert. Exs. 5-10). The Plaintiffs never appealed from the Probate Court's orders concerning the escrow. (Peck Cert. Exs. 7 and 9). The Trust now has the funds, and it is collaterally estopped from arguing that the escrowed funds were wrongfully withheld.

In sum, the three paragraphs of the Plaintiffs' Amended Complaint that concern events occurring during R&C's representation do not warrant a trial. The

Plaintiffs cannot prove one or more essential elements of their claims.  Therefore, R&C is entitled to summary judgment in its favor.

## IV.   CONCLUSION

Therefore, in light of the foregoing, the defendant Robinson & Cole LLP requests that the Complaint be dismissed, with prejudice, and that judgment be entered in favor of defendant Robinson & Cole, LLP and against Reuben Durst, Trustee, and against Steven Durst individually and as Trustee.

Dated:  November 3, 2014                    Respectfully submitted,

/s/Paul H. Zoubek
Paul H. Zoubek, Esq.
Montgomery, McCracken, Walker & Rhoads
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
(856) 488-7731 (tel.)
(856) 488-7720 (fax)
*Attorneys for Defendant Robinson & Cole LLP*