IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JAKE BALL TRUST, et al.,

              Plaintiffs,

     v.

MATTHEW DURST, et al.,

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 12-5255 (JBS/AMD)

**OPINION**

APPEARANCES:

Vincent D'Elia, Esq.
THE D'ELIA LAW FIRM, LLC
13000 Lincoln Drive West
Suite 300
Marlton, NJ 08053
    Attorney for Plaintiffs Steven Durst and Reuben Durst

Kristen E. Polovoy, Esq.
Paul H. Zoubek, Esq.
Louis R. Moffa, Jr., Esq.
MONTGOMERY, MCCRACKEN, WALKER & RHOADS LLP
457 Haddonfield Road
Cherry Hill, NJ 08002
    Attorneys for Defendant Robinson & Cole, LLP

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    This matter comes before the Court on a motion for summary judgment by Defendant Robinson & Cole, LLP ("R & C"). [Docket Item 88.] Plaintiffs in this action, Steven and Reuben Durst, allege legal malpractice against R & C stemming from representation of Matthew Durst and Reuben Durst as co-trustees of the Jake Ball Trust. Plaintiffs contend that R & C is liable

for legal malpractice based on the alleged misconduct of Kelley Galica-Peck during periods both before and after she was employed by R & C.

For the reasons discussed below, the Court will grant R & C's motion for summary judgment.

## II.  BACKGROUND

### A. Facts

The Court accepts as true for purposes of the instant motion the following facts from R & C's statement of undisputed material facts.[1] On November 29, 2004, Steven Durst established the Jake Ball Trust, a revocable trust ("the Trust"), and Matthew and Reuben H. Durst were named co-trustees. (Def. SMF [Docket Item 88-1] ¶ 1.) Among other assets, Steven Durst transferred to the Trust a ten percent ownership interest in

---

[1] Plaintiffs have failed to comply with L. Civ. R. 56.1. They have submitted neither "a responsive statement of material facts, addressing each paragraph of the movant's statement," nor "a supplemental statement of disputed material facts." L. Civ. R. 56.1. Moreover, Plaintiffs have not provided any statement of facts with citations to affidavits or other evidence in the record. Plaintiffs include in their papers a "Certification of Steven Durst in Opposition to Defendant, Robinson & Cole LLP's Motion for Summary Judgment," which consists mostly of unsupported legal argument with a few stray citations to the attached exhibits. [Docket Item 92-1.] This document is not responsive to R & C's 56.1 statement. Accordingly, the Court deems the facts as set forth in R & C's 56.1 statement undisputed for purposes of the instant summary judgment motion. L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

Goodmill LLC ("Goodmill"), an entity formed in 2005 to construct, lease, and operate a shopping center in Millville, New Jersey. (Id. ¶ 2.) The Operating Agreement for Goodmill dated November 15, 2005 states that the Trust owns a ten percent membership interest in Goodmill. (Id. ¶ 3.) In December, 2007, by written agreement with Matthew Durst and Reuben Durst as trustees, Steven Durst agreed to convert the Trust from a revocable trust to an irrevocable trust. (Id. ¶ 4.) When making the Trust irrevocable, the Trust gave Steven Durst a promissory note in the amount of $500,000, secured by a collateral assignment of the Trust's membership interest in Goodmill. (Id. ¶ 6.) From late 2006 until October, 2010, Halloran and Sage LLP ("H & S") represented Matthew Durst, as trustee of the Trust. (Id. ¶ 8.)

On October 4, 2010, Kelley Peck became employed as an attorney at R & C. (Id. ¶ 9.) Before hiring Peck, R & C had no dealings with the Trust, Steven Durst, Matthew Durst, or any Durst family member. (Id. ¶ 10.) On or about October 13, 2010, Matthew Durst retained R & C to represent him in his capacity as trustee of the Trust. (Id. at ¶ 11.) In October, 2011, a dispute arose between Matthew Durst and Steven Durst regarding the settlement of litigation in New Jersey state court. (Id. ¶ 12.) As a result, Matthew Durst resigned as trustee of the Trust. (Id. ¶ 13.)

On November 28, 2011, in preparation for his resignation, Matthew Durst petitioned the Connecticut Probate Court for approval of his final accounting. (Id. ¶ 14.) In December, 2011, Matthew Durst transferred $35,000 from the Trust to an escrow account at R & C to preserve Trust assets and to cover future legal fees and expenses associated with the accounting. (Id. ¶ 15.) At the initial hearing on the accounting before the Connecticut Probate Court on January 23, 2012, Steven Durst objected to the escrow and the Probate Court directed that the escrow account be frozen pending further order of the court. (Id. ¶ 16.) On October 29, 2013, the Probate Court ordered that the escrow account be turned over to the Trust, less certain expenses approved by the Probate Court. (Id. ¶ 17.) Consistent with the Probate Court's order, the escrow was closed and R & C issued a check to the Trust in the amount of $33,605. (Id. ¶ 18.)

Soon after the petition for final accounting was filed in the Probate Court, Kelley Peck learned that Steven Durst's children believed there were irregularities in the accounting. (Id. ¶ 19.) On December 12, 2011, Peck wrote an email to Attorney Vincent D'Elia advising him of same. (Id. ¶ 20.)

**B. Procedural background**

Steven and Reuben Durst and the Jake Ball Trust filed the instant action against Matthew Durst in Cumberland County

4

Superior Court on May 17, 2012. [Docket Item 1-2.] Plaintiffs
Steven and Reuben Durst sought injunctive relief and damages
against Defendant Matthew Durst for misappropriation of assets,
self-dealing, failure to provide annual accountings, and
misrepresentation regarding delivery of trust assets. The
complaint sought removal of Matthew Durst as Trustee, an order
restraining Matthew Durst from access to any and all Trust
assets, immediate return of misappropriated funds, compensatory
damages, punitive damages and attorney's fees and costs.
Defendant Matthew Durst filed a motion to dismiss in state
court. The state court granted the motion to dismiss with regard
to the Jake Ball Trust and denied the remainder of the motion.
With the Jake Ball Trust eliminated as a party, diversity
jurisdiction existed, and Defendant Matthew Durst removed the
instant action to the District of New Jersey. [Docket Item 1.]

Plaintiffs filed an Amended Complaint on February 15, 2013
adding claims for legal malpractice against Halloran & Sage,
LLP, Robinson & Cole, LLP and Kelley Galica-Peck. [Docket Item
24.] On August 5, 2013, the Court granted Defendant Matthew
Durst's motion for partial summary judgment concluding that
Plaintiffs are "collaterally estopped from arguing that the
settlement entered into by Matthew Durst in Durst v. Goodmill,
LLC, et al., No. C27-10, Superior Court of New Jersey Cumberland
County Chancery Division, was unfair or inequitable" and that

"$600,000 was an unfair valuation of the property at 1600 West
Hunting Park." [Docket Item 65.]

On July 25, 2014, Magistrate Judge Ann Marie Donio denied
Plaintiffs' motion for leave to file a second amended complaint,
by which Plaintiffs sought for a second time to assert a legal
malpractice claim against John A. Yacovelle and the Law Office
of John A. Yacovelle arising out of Yacovelle's involvement in
the settlement of Durst v. Goodmill, LLC, et al., No. C27-10,
Superior Court of New Jersey, Cumberland County, Chancery
Division, state court litigation concerning assets of the Jake
Ball Trust.[2] [Docket Item 82.] Judge Donio reasoned that, in
light of this Court's decision on Defendant Matthew Durst's
motion for partial summary judgment holding that Plaintiffs were
collaterally estopped arguing that the settlement of the New
Jersey state court litigation was unfair, Plaintiffs "cannot
allege cognizable, proximately caused damages resulting from
Yacovelle's alleged malpractice." [Docket Item 82 at 11-12.]
There was no appeal from Judge Donio's order.

Defendant R & C then filed the instant motion for summary
judgment. [Docket Item 88.] Plaintiffs filed opposition [Docket
Item 92] and R & C filed a reply [Docket Item 95].

---

[2] The Court dismissed without prejudice Plaintiffs' first motion
to amend on June 18, 2013.

Pursuant to a Scheduling Order entered September 5, 2014, the deadline for seeking amendments to pleadings has expired, absent leave of the court, and the deadline for all pretrial factual discovery is January 30, 2015. [Docket Item 85.] All expert discovery, including depositions, is to conclude by April 15, 2015.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### IV. DISCUSSION

In its motion for summary judgment, R & C divides Plaintiffs' allegations of legal malpractice against R & C into two time periods: the first relating to the period before Kelley

7

Galica-Peck joined R & C and the second relating to the period after Peck joined R & C in October, 2010. R & C asserts that it cannot be liable for Peck's alleged misconduct prior to her employment with R & C. As to Plaintiffs' allegations addressed to the period after October, 2010, even assuming a breach of a duty, R & C contends that Plaintiffs' legal malpractice claim must fail for lack of causation and damages.

The Court rejects Plaintiffs' principal response that R & C's motion is premature because the deadline for factual discovery will not expire until January, 2015. The Court declines to defer decision on R & C's motion pending further discovery because Plaintiffs have failed to comply with Rule 56(d), Fed. R. Civ. P. Rule 56(d) provides that a court may defer considering or deny a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons." In the declaration, a party must specify: (1) what particular information is sought; (2) how, if uncovered, it would preclude summary judgment; and (3) why it has not previously been obtained. Pa., Dept. of Pub. Welfare v. Sebelius, 674 F.3d 139, 157 (3d Cir. 2012) (citing Dowling v. City of Phila., 855 F.2d 136, 139–40 (3d Cir. 1988)). If a party opposing summary judgment files an affidavit under Rule 56(d) that specifically addresses these requirements, "a continuance of a motion for summary judgment for purposes of discovery

should be granted almost as a matter of course," especially when particular information is in the sole possession of the moving party. <u>Malouf v. Turner</u>, 814 F. Supp. 2d 454, 459-60 (D.N.J. 2011) (quoting <u>Sames v. Gable</u>, 732 F.2d 49, 51 (3d Cir. 1984)).

Plaintiffs have not provided such a declaration and have thus failed to comply with Rule 56(d). Even if the Court construed the certification of Steven Durst as a Rule 56(d) declaration, it fails to meet the requirements identified by the Third Circuit. Durst's certification states, "I note that R & C made this motion despite the fact that we are in the early stages of discovery and have not yet taken depositions of anyone including critical Defendants, Kelley Galica Peck, Esquire [sic] . . . and Matthew Durst, Trustee . . . . Completion of this discovery is vital to determine not only the details of the claims and defenses but also to provide clarify [sic] on the nature of the damages." (Steven Durst Cert. [Docket Item 92-1] ¶ 1.) The remainder of the certification fails to indicate what particular information Plaintiffs seek, how this information would preclude summary judgment, and why it has not been obtained. Instead, Durst's certification reads as a supplement to the arguments raised in Plaintiffs' opposition brief, recounting additional allegations of alleged misconduct not included in the Amended Complaint.

Plaintiffs' opposition brief is equally devoid of specificity regarding what further discovery Plaintiffs seek and why it has not been obtained. Plaintiffs' opposition consists only of the blanket assertion that R & C's motion is premature because Plaintiffs have not had an opportunity to conclude factual discovery and "[s]aid discovery is necessary to determine the extent of Peck's conduct and to properly evaluate the damage claim." (Pl. Opp. [Docket Item 92] at 1.) Plaintiffs vaguely refer to pursuing discovery regarding "Peck's conflict of interest between her client Matthew Durst on the one hand and Mike and Steven Durst on the other." (Id. at 3.) Yet, Plaintiffs provide no details or argument beyond this statement, which is insufficient under Rule 56(d). See Hancock Indus. v. Schaeffer, 811 F.2d 225, 230 (3d Cir. 1987) (concluding that vague and general statement that motion should be denied because discovery is not complete is insufficient to satisfy Rule 56(d)). From what can be gleaned from Plaintiffs' submissions, it appears that much of the purportedly outstanding discovery, particularly pertaining to damages, is in Plaintiffs' own knowledge and control, not in the possession of the defendants. Accordingly, Plaintiffs have failed to submit a declaration in accordance with Rule 56(d) and the Court finds no basis to deny R & C's motion as premature.

Turning to the merits of R & C's motion for summary judgment, the Court first addresses Plaintiffs' allegations of legal malpractice against R & C prior to Kelley Galica-Peck joining the firm and concludes that R & C cannot be liable for Peck's conduct during this period. Paragraphs 39-48 of the Amended Complaint relate to activities pre-dating Peck's employment with R & C. Specifically, Plaintiffs allege that Kelley Galica-Peck, H & S, and R & C committed malpractice "[a]t the inception of the trust" in representing to Steven Durst that he would have the ability to change trustees. (Am. Compl. ¶ 42(a).) Plaintiffs also allege that, in reliance on the representation that the "Millville Asset" was worth approximately $900,000, "the Trust executed a Note and Security Agreement in favor of Steven Durst in the amount of $500,000.00 plus interest at 4.79%." (Id. ¶ 46.) Defendants then failed to file UCC-1 forms to perfect the security interest. (Id. ¶ 47.) The evidence in the record confirms that all of these alleged acts occurred before or during December, 2007, when the Trust was made irrevocable. There is no genuine dispute that this alleged misconduct took place nearly three years prior to Peck's employment with R & C.[3] Plaintiffs have provided no factual or

---

[3] Plaintiffs in their opposition brief identify several acts of alleged malpractice by Peck when she was responsible for estate planning for Steven Durst, including "[f]ailing to recognize a provision in an [sic] LLC Operating Agreement that may have

11

legal basis to hold R & C liable for alleged misconduct with which they had no knowledge or control.[4] Nor is there any basis to find R & C vicariously liable for Peck's alleged misconduct prior to joining the firm. See Falzarano v. Leo, 269 N.J. Super. 315, 320 (App. Div. 1993) (citing Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 227 (1958)) ("It is fundamental that every member of a partnership is jointly and severally liable for torts committed by other members of the partnership acting within the scope of the firm business, even though they do not participate in, or ratify, or have knowledge of such negligence or legal malpractice."); Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., No. A-6595-06T2, 2009 WL 2045259, at *8 (N.J. Super. Ct. App. Div. July 16,

---

rendered [the Millville Asset] virtually worthless;" valuing the Millville Asset at over $800,000.00 "despite the fact that she knew or should have known that the LLC provisions aforesaid may have rendered the Millville Asset virtually worthless;" inducing "the Trust to accept what they thought was an asset valued at approximately $900,000.00 and issue a Note and Security Agreement to Steven Durst for $500,000.00 plus interest;" and failing "to have the security interest recorded thereby failing to protect her client, Steven Durst." (Pl. Opp. [Docket Item 92] at 2.) Plaintiffs then concede that "Peck's actions aforesaid occurred prior to employment with R & C." (Id.)

[4] Plaintiffs, without any citation to legal authority, vaguely refer to "the ongoing and continuing obligation that an attorney has to its client." (Pl. Opp. at 1.) Plaintiffs also argue that Peck became aware of her acts of malpractice after she joined R & C and "[r]ather than recognize her improprieties, she engaged in a chorus [sic] of conduct that can best be described as 'covering her tracks.'" (Id. at 2.) These bare allegations in Plaintiffs' opposition papers lack any evidentiary support in the record.

2009) (concluding that firm was not vicariously liable for attorney's acts as a consultant for plaintiff despite being employed by the firm because attorney was not acting within the scope of his employment with the firm).

Plaintiffs' allegations directed to the period after Peck joined R & C also fail because Plaintiffs have proffered no evidence of causation or damages. To recover for legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. Jerista v. Murray, 185 N.J. 175, 191 (2005) (citing McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001)). Plaintiffs, in their opposition brief, refer only to one instance of alleged malpractice by R & C after Peck joined the firm, which the Court now addresses.

Plaintiffs contend that Peck, while employed by R & C, wrongfully directed $35,000 from the Trust to her own account preventing the Trust from meeting its obligations and objectives. Specifically, Plaintiffs argue that "[w]hen a dispute arose between Matthew Durst on the one hand and Steven and Mike on the other hand, she immediately misdirected $35,000.00 from the Trust funds to her own trust account" despite the lack of justification for such a diversion. (Pl.

13

Opp. at 2-3; Am. Compl. ¶ 51.) Defendants assert that "the escrowed funds, less expenses approved by the Probate Court" were returned to the Trust and Plaintiffs are collaterally estopped from arguing that the escrowed funds were wrongfully withheld. There is no dispute that the Connecticut Probate Court initially ordered that this money be held and later ordered that it be paid to the Trust, less certain approved expenses, and such payment was made.

Plaintiffs have failed to provide any evidence of damages proximately caused by Peck's alleged misconduct in transferring $35,000 to an escrow account held by R & C. As noted above, Plaintiffs admit that consistent with the Probate Court's order, the escrow was closed and R & C issued a check to the Trust in the amount of $33,605. The $1,395 not withheld was expressly approved by the Probate Court. Plaintiffs cannot now argue that they were damaged by this amount. Furthermore, Plaintiffs offer no support for their contention that the Trust was unable to meet its obligations while the funds were escrowed. Therefore, the Court will grant R & C's motion for summary judgment as to Plaintiffs' legal malpractice claim based on the allegedly improper transfer and escrow of $35,000.00 in Trust funds, which were returned in accordance with the Probate Court order, less certain approved expenses.

Although not discussed in Plaintiffs' opposition, the Court further finds that Plaintiffs cannot prove damages for Peck or R & C's conduct related to the conveyance of the Millville Asset or the subsequent settlement agreement. Previously in this litigation, Magistrate Judge Donio, in considering the viability of a legal malpractice claim against John Yacovelle for his representation of Matthew Durst and the Jake Ball Trust in the settlement agreement, concluded that Plaintiffs could not prove that they were damaged in connection with the settlement because "[t]he District Court's August 5, 2013 Order bars relitigation into the 'fairness' of the state court settlement." [Docket Item 82 at 15.] Accordingly, Judge Donio found that Plaintiffs were precluded from alleging that "Yacovelle's purported acts of malpractice with respect to the settlement deprived Plaintiffs of some financial benefit." [Id.] In a legal malpractice case, "the measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004) (quoting Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987)). Indeed, this Court previously held that "collateral estoppel applies to bar relitigation of the fairness of the settlement" in the state court litigation. [Docket Item 64 at 19.] Because Plaintiffs are precluded from challenging the fairness of the state court settlement, Plaintiffs cannot prove

15

in their legal malpractice claim against R & C that they were
damaged by R & C's representation during the conveyance of the
Millville Asset or the settlement more broadly. Collateral
estoppel in this instance prevents the Court from considering
Plaintiffs' position but for R & C's alleged negligence. Even if
Plaintiffs could establish the breach of a duty owed by R & C in
the context of the state court settlement and the disposition of
the Millville Asset, Plaintiffs cannot show that they were
damaged because the Court must assume that the settlement was
fair and equitable.[5]

     The Court will not address in any detail the allegations
raised for the first time in Durst's certification. Plaintiffs
are not permitted to plead new allegations in opposition to a
defendant's motion for summary judgment. Bell v. City of
Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff
may not amend his complaint through arguments in his brief in
opposition to a motion for summary judgment.") (citation and
internal quotation omitted). Not only are Plaintiffs'
allegations new, but in at least one instance, they are directly
contradicted by allegations in the Amended Complaint.
Specifically, Durst now asserts that "Peck had the

---

[5] Plaintiffs do not address R & C's argument on this issue in
either their opposition brief or Steven Durst's certification.
The presumption of fairness of the settlement is thus unrebutted
by evidence proffered by Plaintiffs.

responsibility to see to it that an annual accounting would be prepared and provided to me . . . . This was never done by Defendant Peck at either law firm." (Durst Cert. ¶ 4(a).) In contrast, the Amended Complaint alleges, "Prior to the inception of the Trust, the Malpractice Defendants represented to Grantor, Steve Durst, that the Trustee would be required to provide annual accountings. The Trust documents, however, failed to provide for annual accountings." (Am. Compl. ¶ 42(b).)

Plaintiffs have sought with varying success to amend the pleadings on three occasions.[6] The Court will not now permit Plaintiffs to amend their complaint by implication. Plaintiffs have had over two years to pursue their claims and develop the factual record. They have failed to do so as against R & C. The Court is unpersuaded by their ad hoc attempt to assert a new set of claims. Moreover, even if the Court were to consider Plaintiffs' belated allegation that Peck failed to make annual accountings, a responsibility that appears to have no support in

---

[6] Plaintiffs filed their first motion to amend on November 8, 2012, which the Court granted in part and reserved decision in part on February 7, 2013. [Docket Item 19.] The Court then dismissed without prejudice the remaining aspects of Plaintiffs' first motion to amend on June 20, 2013. [Docket Item 58.] Plaintiffs filed their second motion for leave to file a second amended complaint on July 19, 2013, which the Court dismissed without prejudice, inviting Plaintiffs to file a renewed motion addressing the viability of any proposed amended complaint in light of the Court's August 5, 2013 Order. [Docket Item 71.] The Court then denied Plaintiffs' renewed motion to file a second amended complaint on July 25, 2014. [Docket Item 82.]

17

the Trust documents or the Amended Complaint, Plaintiffs have failed to proffer any evidence of causation or damages. Although Durst appends a series of checks to support his contention that Matthew Durst wrongfully paid himself $22,000 in Trust funds, the mere existence of the checks does not show that the payments were improper, nor does it support an inference of $22,000 in damages caused by R & C's legal malpractice absent additional evidence. Therefore, the Court rejects Plaintiffs' belated argument to the extent that it relies on allegations outside of the pleadings without any evidentiary support.

## V.   CONCLUSION

In light of the foregoing, the Court will grant Defendant R & C's motion for summary judgment and enter judgment in favor of R & C on all of Plaintiffs' claims. An accompanying Order will be entered.


**January 13, 2015**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge

18