```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY


                          - - -

STEVEN DURST, et al.,        :  CIVIL ACTION NO. 12-05255
              Plaintiffs     :
                             :
          v.                 :  Camden, New Jersey
                             :  April 9, 2015
MATTHEW DURST, et al.,       :  2:05 o'clock p.m.
              Defendants     :
. . . . . . . . . . . . . . . . .

          TELEPHONE STATUS CONFERENCE/MOTION HEARING
            BEFORE THE HONORABLE ANN MARIE DONIO
               UNITED STATES MAGISTRATE JUDGE

                          - - -


APPEARANCES:

For the Plaintiffs:      VINCENT D'ELIA, ESQUIRE
                         The D'Elia Law Firm, LLC
                         13000 Lincoln Drive West
                         Suite 300
                         Marlton, NJ    08053

For the Defendant        JOHN ANTHONY YACOVELLE, ESQUIRE
Matthew Durst:           8438 Mackall Road
                         St. Leonard, MD    20685

For the Defendant        WILLIAM F. O'CONNOR, JR., ESQUIRE
Halloran & Sage, LLP:    McElroy Deutsch
                         Mulvaney & Carpenter, LLP
                         1300 Mount Kemble Avenue
                         P.O. Box 2075
                         Morristown, NJ    07962-2075


For the Defendant        CHRISTOPHER PHILIP LEISE, ESQUIRE
Kelley Galica-Peck:      White & Williams, LLP
                         Liberty View
                         457 Haddonfield Road
                         Suite 400
                         Cherry Hill, NJ    08002-2220


                 Laws Transcription Service
                   48 W. LaCrosse Avenue
                    Lansdowne, PA 19050
                      (610)623-4178
```

Deputy Clerk/ESR:        Susan Bush

Transcribed by:          Tracey J. Williams, CET

(Proceedings recorded by Liberty Court Player digital sound
recording; transcript produced by AAERT-certified
transcriber.)

- - -

1            (The following telephone conference occurred at 2:05

2       o'clock p.m.:)

3            MR. D'ELIA:  Good afternoon, your Honor, this is

4       Vincent D'Elia and I represent the plaintiff -- plaintiffs.

5            MR. YACOVELLE:  Good afternoon, Judge, John

6       Yacovelle for the defendant Matt Durst.

7            MR. LEISE:  Your Honor, Christopher Leise for Kelley

8       Peck.

9            MR. O'CONNOR:  Hello, your Honor, Bill O'Connor,

10      McElroy Deutsch Mulvaney & Carpenter, for Halloran & Sage.

11           THE COURT:  All right.  Thank you, Counsel.  Is that

12      everyone?

13           MR. O'CONNOR:  Yes, I believe so.

14           THE COURT:  All right.  This is in the matter of

15      Durst v. Durst, Case Number 12-5255.  This is a conference

16      call being electronically recorded, the attorneys are

17      appearing by telephone.  And this conference has been set up

18      pursuant to a prior Court order of January 29th -- entered

19      January 29th, requiring there be any scheduling order today

20      -- conference under the scheduling order setting the

21      telephone conference for today.

22           Since that order was entered, two motions have been

23      filed and now I understand are fully briefed, first a motion

24      by plaintiff filed on February 20th to file a second amended

25      complaint.  That motion is opposed by a number of parties.

1    Mr. O'Connor has filed opposition.  Robinson & Cole, which is

2    not even in the case anymore, has filed that; is that

3    correct?

4            COUNSEL:  Correct.

5            COUNSEL:  That's correct.

6            THE COURT:  So they're not on the phone today, are

7    they?

8            COUNSEL:  No, Judge.

9            THE COURT:  All right.  And of course this --

10   counsel for Ms. Peck has filed opposition.

11           And subsequent to the motion, there's another motion

12   filed on -- just a week and a half ago on March 27th to

13   extend the time to complete discovery.  That motion is

14   Document Number 111.  It's opposed by, again, Mr. O'Connor

15   and Mr. Peck (sic).  I don't think I have any position papers

16   in either respect from Mr. Yacovelle; is that correct?

17           MR. YACOVELLE:  No position on either one, Judge.

18           THE COURT:  All right.  Are the parties ready to

19   argue their positions?

20           MR. D'ELIA:  I am, your Honor.  It's Vince D'Elia.

21           MR. O'CONNOR:  Yes, Judge.  Bill O'Connor for

22   Halloran & Sage.

23           MR. LEISE:  Yes, your Honor.

24           THE COURT:  All right, let me start with the motion

25   to extend discovery.  The motion was filed seeking to extend

1    discovery in connection with a number of depositions that

2    were cancelled.  The depositions were scheduled prior to the

3    expiration of the discovery end date and it appears that

4    there was agreement by counsel for the cancellation.  And I

5    just want to see if I can make sure I have the parties'

6    positions specifically and let's begin with plaintiffs'

7    Counsel.

8         How much time are you putting aside the motion to

9    amend, how much time are you looking for by way of extension

10   in your motion?

11        MR. D'ELIA:  Judge, if I could be heard.  I had

12   looked through everything before I got on the call and I was

13   looking -- alls I need to do in terms of discovery at this

14   point is the defendant Matthew Durst and the defendant Kelley

15   Peck.  If I could do that in the next ten days or two weeks,

16   I'm fine.

17        I was going to respectfully request that I be given

18   the opportunity to take those two depositions on or before

19   May 11th, which is 30 days from now.  And I have no problem

20   and I almost prefer a -- kind of a May 11th do-or-die kind of

21   order, if it would please the Court.

22        The -- I'm going to -- in expanding my answer,

23   Judge, and I appreciate the opportunity to discuss it, I have

24   -- if I can get those two depositions in, I have a potential

25   motion which I believe is going to either 99-percent resolve

1    the case and will resolve it much earlier than any of us

2    anticipated, or it's going to -- if nothing else, it's going

3    to narrow the issues.  And my motion, without disclosing too

4    much strategy, has to do -- that I'm proposing has to do with

5    defining the parameters under which the settlement which was

6    entered into in the state court action is subject to any

7    attack at all.

8            There was a decision by Judge Simandle that said

9    that the settlement was res judicata or collateral -- subject

10   to collateral estoppel, but in that same order he said this

11   does not preclude the plaintiffs from pursuing certain claims

12   with regard to the defendants regarding exceeding authority

13   and some other theories.  The question becomes, does that

14   leave the settlement open to discussion or is oral discussion

15   with regard to the settlement closed.

16           If I can get those two depositions in and I can make

17   this motion, I suspect we're going to have -- we're going to

18   be well on our way to resolution of the case well in advance

19   of what would be required.  So to cut my long-winded response

20   to a minimum, I would ask that I have a depositions must be

21   completed by May 11th do-or-die and the burden should be on

22   me.

23           I do point out that the day before the scheduled

24   depositions we had about eight inches of snow in our area and

25   it ran havoc with everybody.  And that precluded my client

1  Steven Durst from being here, because he was away on business

2  in Florida and was precluded from getting back.  I understand

3  the criticism that I could have gone ahead with the

4  deposition anyway.  If this was a rear-end collision case, I

5  probably would have, but given his intimate knowledge of the

6  case and given his understanding, if there was any kind of --

7  anything in the deposition that was a little off of what I

8  thought, I just needed him there.  I did not think that that

9  was unreasonable, however the other attorneys have criticized

10  me for it and I understand.

11       I would also point out that Mr. Durst, Steven Durst,

12  the person who was delayed because of the snowstorm, has been

13  at every motion, he's been at every hearing, he's been at

14  every deposition.  And I know in the past when I had asked

15  for some time with regard to responding to motions -- or

16  appearing at motions or a return date for argument on the

17  motion, one of the questions the Court asked us -- and I said

18  it was because I needed Mr. Durst there, the Court had asked,

19  had he been at everything else, and the answer is yes, he's

20  been at everything.  I needed him there for those

21  depositions, it would have been a waste of all of our times

22  for me to not have him there.

23       And for those reasons, Judge, I would just ask you

24  to give me a little bit of time to do those two depositions

25  and so we can move forward in a more expeditious manner.  And

1    I'll submit on that, Judge.

2            THE COURT:  All right, thank you.  Now, let me just

3    make sure I have the understanding that these two

4    depositions, one was scheduled for February 24th --

5            COUNSEL:  Judge, I can't hear you, I'm sorry.

6            COUNSEL:  I'm having trouble hearing you too, Judge.

7    I'm sorry.

8            THE COURT:  Is that better?

9            COUNSEL:  Oh, much better.

10           COUNSEL:  Yes.

11           THE COURT:  All right, let me make sure I understand

12   the position.  One of the depositions were scheduled for

13   February the 24th; is that correct?

14           MR. D'ELIA:  Well, depositions were scheduled for

15   the 23rd, 24th and 25th.

16           THE COURT:  And none went forward, right?

17           MR. D'ELIA:  None went forward for a bunch of

18   different reasons that are explained in the pleadings.

19           THE COURT:  All right, but you've only mentioned two

20   depositions you wish to take, there's no other --

21           MR. D'ELIA:  The other one was Mr. Yacovelle's

22   deposition of my client Matthew (sic) Durst and --

23           MR. YACOVELLE:  You mean Mike?

24           MR. D'ELIA:  Yeah.

25           MR. YACOVELLE:  Okay.

9

1          MR. D'ELIA:  Did I say Matthew?  I'm sorry.

2          THE COURT:  All right.

3          MR. D'ELIA:  Yeah, the other one was --

4          THE COURT:  All right, that was scheduled of one of

5     the plaintiffs and you don't have a position on whether that

6     needs to be done.  You're not looking to take your own

7     client's deposition; is that right?

8          MR. D'ELIA:  Who is that question directed to?

9          THE COURT:  Mr. D'Elia.  You want to take --

10          MR. D'ELIA:  My client's -- my client Steven Durst's

11     deposition was taken earlier in the month and my client

12     Reuben Durst's deposition was one of the ones that was

13     cancelled, that was a deposition being taken by Mr.

14     Yacovelle.  And I would be glad to cooperate with Mr.

15     Yacovelle in producing Reuben.

16          THE COURT:  Okay.  Mr. Yacovelle has no position on

17     the motion; is that correct?

18          MR. YACOVELLE:  No, I don't have a position on it,

19     Judge, except it came up under unusual circumstances and it

20     was described as something that counsel agreed on and I'm not

21     sure that's exactly correct.  What actually happened was that

22     Mr. D'Elia attempted to reach me during the night and

23     unsuccessfully, but we did talk at 5:00 a.m. and he told me

24     he could not proceed in the absence of Steven Durst.  And so

25     there really wasn't anything to talk about, he was not

1    proceeding.  I had to call my client, who was on the road

2    from Connecticut in snow, and turn him around and send him

3    back.  So that's actually what happened.

4            THE COURT:  All right.  But --

5            MR. YACOVELLE:  It wasn't --

6            THE COURT:  -- you don't dispute that the

7    depositions were duly scheduled, they were scheduled prior to

8    the expiration of the deadline, that there was snow on the

9    day of one of the depositions, and that the plaintiff Mr.

10   Steven Durst had wanted to attend -- and in fact I think the

11   submissions include a copy of the air flight ticket -- and

12   the flight had been cancelled.  You don't dispute any of

13   that, do you?  You don't have a position on the motion, is

14   what you said?

15           MR. YACOVELLE:  Right.

16           THE COURT:  Okay.  Mr. O'Connor?

17           MR. O'CONNOR:  Yes, your Honor.

18           THE COURT:  All right, I'm having a hard time

19   understanding the opposition on the motion to extend time for

20   the limited purpose of taking depositions that were scheduled

21   prior to the expiration of the deadline.

22           MR. O'CONNOR:  Judge, our criticism is not lodged at

23   Mr. D'Elia, our criticism is lodged at his client.  All the

24   other parties and all the other lawyers were either en route

25   or ready to go to the deposition, there was nothing

11

1    precluding anybody else from being there.  It was raining in

2    New Jersey where I live and I was ready to get in my car to

3    go to the deposition.  And then we receive word that because

4    his client insists on attending we can't -- it cannot go

5    forward, you know.

6         And now we are -- we are now three years into the

7    case and we will now have to prepare again for depositions

8    that should have been done already.  I know for a fact that

9    Ms. Peck will have to be prepped again for her deposition.

10   She's in Connecticut, that will be costly.  I'll have to get

11   ready again for Matt Durst's deposition again.  This is --

12   it's expensive now.  And the only reason we're going through

13   this exercise is because somebody wasn't paying attention and

14   got caught, you know, with a flight that got cancelled.  And,

15   Judge, for what it's worth, I don't know that the papers

16   actually show that that flight was cancelled, I think it's

17   more like a press release about how there were thousands of

18   cancellations, you know, at airports around the country.

19        So my position was simply that, you know, in the

20   absence of an order, we can't take any more fact discovery at

21   this point in time and, further, the only reason it hasn't

22   been done is because of the plaintiff.

23        THE COURT:  All right, but you don't disagree that

24   Mr. Durst, Mr. Steven Durst, has a right to appear at

25   depositions, do you?

12

1           MR. O'CONNOR:  No.  As I said in my papers, Judge,

2    he certainly has a right, but I don't know that he has a

3    right to insist that the schedule be disrupted to such a

4    degree that it's been because he, you know, took a gamble and

5    he lost on his flight that was supposed to get in at 12:30 in

6    the morning, a few hours before the deposition was cancelled.

7    That was my point in that regard, Judge.

8           THE COURT:  All right.  Anything from Mr. Leise?

9    Did I say that right?  Mr. Leise?

10           MR. LEISE:  Mr. Leise, yes, that's better.  No, your

11    Honor, I would simply reiterate what Mr. O'Connor just said,

12    that's all.

13           THE COURT:  All right.  Anything further from either

14    counsel, any other counsel?

15           MR. D'ELIA:  Judge, I have nothing further.  Again,

16    I would respectfully request a -- and I have no problem with

17    a do-or-die date, but I just need these depositions in order

18    to be fully prepared.  I do think Mr. Durst had the right to

19    be there and I think it was unfortunate that we got an

20    unexpected six or eight inches of snow, I submit, Judge.

21           THE COURT:  All right, thank you.

22           Presently before the Court is an application to

23    extend the time to complete factual discovery.  Currently,

24    the current schedule required factual discovery to be

25    concluded by March 2nd, 2015.  The application is limited in

1    its request, it's a request to take two depositions that were

2    previously scheduled within the time period, that is the

3    deposition of Kelley Peck, a named defendant, and the

4    deposition of Matthew Durst, a named defendant.

5          Plaintiff raises the application and asserts there

6    is good cause for the extension, because the deposition was

7    cancelled when as an officer of the Court plaintiff

8    represents -- plaintiffs' counsel represents, the plaintiff's

9    plane flight to New Jersey -- or Philadelphia was cancelled

10   as a result of a snowstorm, and the plaintiff was therefore

11   unable to attend the depositions that were duly noticed and

12   scheduled before the expiration of the discovery end date.

13         Mr. Yacovelle also had a deposition noticed and

14   scheduled.  He makes no application in connection with this

15   motion and takes no position.

16         Mr. O'Connor and Mr. Leise on behalf of their

17   clients oppose the motion, claiming that there's no good

18   cause and that plaintiff -- plaintiff could have gone forward

19   with his counsel without plaintiff, and that plaintiff should

20   have made better arrangements to make sure that there was

21   ample time to arrive in New Jersey in order to take the

22   deposition.

23         A scheduling order may be modified for good cause

24   under Federal Rule of Civil Procedure 16(4), and clearly the

25   United States Magistrate Judge in administering and resolving

14

1    scheduling issues may in the exercise of discretion upon the

2    finding of good cause extend the discovery deadline.

3            In this case, in light of the proffer by the

4    plaintiff, in light of the limited nature of the request, in

5    light of the fact that the depositions that are being sought

6    were properly scheduled before the expiration of the

7    deadline, in light of the fact that the plaintiff has the

8    right to attend depositions, had every intent to attend the

9    depositions and that there was snow that interfered with

10   that, I find good cause to provide a limited extension of the

11   factual discovery.

12           I note that good cause requires a showing that the

13   delay stemmed from mistake, excusable neglect or other factor

14   which might understandably account for the failure of counsel

15   to undertake to comply with the scheduling order, that's

16   citing Caper, C-a-p-e-r, v. Federal Express Ground Package

17   Systems, 2012 Westlaw 5818137 at 2, District of New Jersey,

18   November 15th, 2012.

19           The good cause standard generally relies upon the

20   diligence of the moving party.  I see no basis to preclude

21   depositions of witnesses that were parties that were

22   scheduled prior to the expiration of this scheduling deadline

23   that were delayed or cancelled because of a party's inability

24   to make it into New Jersey because of snow.

25           I will note that this extension is limited to

1    depositions of Kelley Peck and Matthew Durst, and that the

2    depositions must be completed no later than May 11th, 2015,

3    on dates and times convenient to all counsel.  And if you're

4    unable to reach agreement on the dates and times, you should

5    advise the Court no later than a week from today, in which

6    time I'll pick the dates and times.

7         Now, I'll note that there was another deposition

8    that was noticed, but there's been no application with

9    respect to that deposition.  Is there any application at this

10   time?

11        MR. YACOVELLE:  Well, yes, your Honor, there's an

12   application with respect to that deposition.  And frankly, I

13   never thought that there was an application going to be

14   necessary, because Mr. D'Elia, as he said a few minutes ago,

15   was perfectly willing to produce his client.  So I assume

16   he's still willing to --

17        THE COURT:  All right.

18        MR. YACOVELLE:  -- and if that's so --

19        THE COURT:  Okay.  Mr. O'Connor and Mr. Leise, do

20   you object in light of the Court's ruling to the extension of

21   time, including the deposition of Mr. Reuben Durst?

22        MR. O'CONNOR:  No, your Honor.

23        MR. LEISE:  No, your Honor.

24        THE COURT:  And Mr. D'Elia has already agreed to

25   that.  So my order --

1          MR. D'ELIA:  We agree.

2          THE COURT:  -- will be as follows.  The discovery

3   end date is hereby extended for the limited purpose of

4   deposing these three parties who were previously noticed on

5   dates and times convenient to all counsel, and all three

6   depositions must be completed by May 11th, 2015.

7          Anything further with respect to this motion?

8          MR. D'ELIA:  Judge, in --

9          MR. YACOVELLE:  Uh --

10         MR. D'ELIA:  Okay, John, go ahead.

11         MR. YACOVELLE:  Yeah, the only thing I was going to

12   say is I'm looking at the order, the previous order, and I

13   see dates in here April 1st, May 1st, June 13th.  I'm

14   wondering if they're all going to get extended or what's

15   going to happen with them.

16         MR. D'ELIA:  That's exactly where I was going.  Your

17   Honor, in my motion I had asked for amendment of the

18   scheduling order to provide additional time for -- I needed

19   these depositions in order to complete my work on getting an

20   expert, that you did have a dispositive motion date of May

21   29, which if I can get depositions done and get my

22   transcripts quick enough, that May 29 date may still be good.

23   And I think, based on the dispositive motion I described

24   earlier, needing or not needing experts may become academic

25   after that point.

1          I don't know what to suggest.  I was pretty

2     definitive about what I suggested in terms of deposition

3     deadlines and what have you, but I didn't know if you wanted

4     to -- and I'm submitting to the Court, just making

5     suggestions, with regard to experts' reports and disclosures

6     if we could, A, hold that until a conference shortly after

7     May 11, as early as May 12, as far as I'm concerned, or if

8     your Honor wanted to assign the dates to it now.  I just need

9     to get the depositions done in order to complete that work.

10         THE COURT:  All right.  Anything from Mr. Leise or

11    Mr. O'Connor on that issue?

12         MR. LEISE:  No, Judge.

13         THE COURT:  All right, let me do this.  I generally,

14    when I extend fact discovery, I extend expert discovery.  All

15    expert reports on behalf of the plaintiff shall be served no

16    later than June 11th.  Any rebuttal reports shall be served

17    no later than July 10th.  Expert depositions shall be

18    completed no later than July 30th.  And dispositive motions,

19    they may be filed sooner, but no later than August the 14th.

20         All right, is there anything further with respect to

21    the schedule?

22         MR. LEISE:  Your Honor, this is Christopher Leise.

23    We do have that motion to amend --

24         THE COURT:  I'm going to address that next.

25         MR. LEISE:  -- I don't know if your Honor --

1          THE COURT:  Are you ready to argue that motion at
2    this time?
3          MR. LEISE:  No, my point is that it has been opposed
4    and it would obviously impact the schedule, that's what --
5          THE COURT:  I'm going to resolve that motion right
6    now.  Are you ready to make that argument?
7          MR. LEISE:  Okay.
8          THE COURT:  Are we ready to hear argument?  That's
9    my question.  Are the parties ready to address the motion to
10   amend?
11         MR. LEISE:  Yes, Judge.
12         MR. D'ELIA:  Yes, your Honor.
13         THE COURT:  Okay.  Now, let me just start to make
14   sure we don't need another part here.  I had an opposition
15   filed by a non-party, a party that was previously in the case
16   and has since been dismissed out of the case, and the concern
17   by that party was that the motion should have been -- those
18   amended pleadings should not have included pleadings against
19   that party.
20         Mr. D'Elia, what's your position on that?
21         MR. D'ELIA:  We agreed with that and I believe my
22   associate had signed a consent order to that regard.
23         THE COURT:  All right.  So you don't intend --
24         MR. D'ELIA:  But we agreed with that, that was over
25   -- that was purely my fault, I mean, that was oversight on my

19

1    part.  I should have been more careful in drafting it and I

2    wasn't and it's my fault.  If there's a sanction, make it on

3    me.  But, no, we agreed with them.

4            THE COURT:  All right.  So you don't -- have you

5    advised --  and let's see, there was a consent order

6    submitted by that firm and you indicated that you sign that

7    consent order?

8            MR. D'ELIA:  I believe my associate did.  If -- I

9    believe it was signed and I'm saying, if it isn't signed,

10   I'll sign it.

11           THE COURT:  No, I think it's attached as an e-filed

12   signature.  So that takes care of that portion.

13           Now you're seeking to amend the complaint to add an

14   additional party and to expand upon your claims against Ms.

15   Peck; is that correct?

16           MR. D'ELIA:  Yes, your Honor, that's correct.

17           THE COURT:  All right.  Now, when was the deadline

18   for you to file an amended complaint?

19           MR. D'ELIA:  Uh --

20           (Pause.)

21           MR. D'ELIA:  I am trying to find the prior

22   scheduling order, Judge.  I apologize for not having that.

23           THE COURT:  I'll just note for the record that in

24   the September 5th, 2014 scheduling order, the order indicated

25   that there would be no further motions to amend the pleadings

20

1    without leave of Court and that the time period had been

2    previously set forth in a prior order of the Court.

3           So back in -- after a series of amendments, back in

4    September the Court indicated no other motions to amend

5    without leave -- or to join new parties without leave of

6    Court, that's back in September.  Now, what happened since

7    September to today?  What new information came to light that

8    would support your application that you did not know or under

9    the exercise of reasonable diligence could not have known?

10          MR. D'ELIA:  Judge, I cannot tell you that some new

11   information came upon me, I cannot tell you that additional

12   information became available, it was information that was

13   available.  And as a result of reviewing the file and

14   discussing it with the client, they had asked that we proceed

15   with this application.

16          I understand the concerns about the time.  The claim

17   is consistent with the claim against Ms. Peck in terms of

18   missing Section 704 and the damages that flow from that.  I

19   understand the Court's concern, I understand the defendants'

20   concern, but I think it's appropriate to make sure we have

21   all the parties before the Court.

22          THE COURT:  All right.  Who opposes the motion?

23          MR. O'CONNOR:  Judge, Bill O'Connor for Halloran &

24   Sage.

25          THE COURT:  Yes.  Your position, please.

1        MR. O'CONNOR:  Judge, it's threefold.  First, the

2    motion is untimely for the reasons in our papers, to wit the

3    several orders that have been entered previously regarding

4    the deadlines for amendments.  Two, it's prejudicial to my

5    client because of the additional resources that are going to

6    have to be expended in dealing with the modified claim

7    against Ms. Peck, as well as this new claim.  And, three, the

8    claim is futile for the reasons in our papers, which are that

9    the claim fails on its face because of proximate cause

10   reasons, Judge.  Mr. Durst testified himself at his

11   deposition that it would be, quote, "pure speculation" to try

12   to imagine what would have happened had he gone back to his

13   co-member in the LLC and asked to modify the operating

14   agreement.  And for that reason he can't sustain a claim

15   against Parker Benjamin or a claim on that basis against Ms.

16   Peck, or her former firm for that matter.

17        THE COURT:  All right.  Anybody else?

18        MR. LEISE:  Yes, your Honor, this is Mr. Leise.  I

19   agree with everything in the brief that was filed by Halloran

20   & Sage, but I do want to emphasize that there is evidence I

21   think before you on this motion that this claim against the

22   appraising firm was under active consideration by the moving

23   party quite some time ago.  So not only has nothing changed,

24   but it was under consideration months, if not years ago.

25        And the last obvious point is that to grant this

22

1   motion would throw the entire schedule in this case into

2   chaos for obvious reasons with the addition of a new party at

3   this time.

4           THE COURT:  All right.  Anything in response?

5           MR. D'ELIA:  Yes, your Honor.  In terms of the

6   speculation, I understand the cite that came out of the

7   transcript of Mr. Durst's deposition.  It is taken out of

8   context.  We have -- the questions weren't asked.  There was

9   a previous occasion where he went back to his employer about

10  this paragraph in another contract and it was changed.  So it

11  wouldn't be -- I think the question, if you look at the

12  question and the answer, I don't think it's direct on the

13  issue of what do we think the Goodman firm would have done in

14  response to this.  I think we are going to be able to present

15  evidence to show that it would have been changed, it would

16  have changed the outcome but for the fact that both Ms. Peck

17  and the appraiser both missed it.

18          As an aside, it seemed confusing to me that anyone

19  was going to oppose this because, if the claim is valid,

20  there's going to be two defendants answering instead of one.

21  I don't know why Ms. Peck would want them out of the case.

22  I'm trying to just complete the loop.  Subject to criticism

23  for not doing it sooner, I knew that was coming.  But to

24  round out the case and complete the case, discovery is going

25  to be the same as far as I'm concerned.

1           And with that, Judge, I'll submit.

2           THE COURT:  All right.

3           MR. O'CONNOR:  Judge, can I say one thing for the

4    record?  I'm sorry --

5           THE COURT:  Just state --

6           MR. O'CONNOR:  -- Bill O'Connor.  I --

7           THE COURT:  Just state your name, please.

8           MR. O'CONNOR:  It's Bill O'Connor, Judge.  I just

9    have to correct something for the record.  What Mr. D'Elia

10   said about the record in the case is wrong.  There was

11   another limited liability company involving these parties and

12   at one point in time Mr. Durst renegotiated his interest in

13   that company with Mr. Goodman.  It's a different company,

14   it's a different issue, it's a different provision of a

15   different agreement.

16           This -- Mr. Durst never renegotiated this provision

17   with Mr. Goodman on another deal, because as Mr. Durst

18   testified in his deposition he had never had this in any

19   agreement with Mr. Goodman ever before.  Mr. Durst's position

20   is that he was hoodwinked by Mr. Goodman, because Mr. Goodman

21   had gotten sick of him and was just waiting for the day when

22   he could get rid of him, and that is what happened here.

23           So to say that this deal here was similar to another

24   deal which Mr. Durst successfully modified is completely

25   incorrect, Judge.  That's all I wanted to point out.

24

1          MR. D'ELIA:  Real quick, Judge.  We have a factual

2     dispute there and I could spend the next 20 minutes

3     discussing the history of -- and so could Mr. Yacovelle about

4     the history of those contracts, but I don't think it's for

5     today's discussion.  I'll submit and wait for your Honor's

6     decision.

7          THE COURT:  All right.  Well, I'm going to rule from

8     the bench right now and I reserve the right to edit the

9     transcript consistent with the local rules with respect to

10    issuing an oral opinion.  But for the reasons that follow,

11    I'm going to deny the motion to amend as untimely.

12         Let me note first of all that the motion to amend

13    seeks to assert additional claims against one of the current

14    parties and to assert claims against a new party.  This is a

15    2012 case, it's been going through a number of pleadings and

16    a number of motions.

17         In my order dated September 5th, 2014, the Court

18    indicated that no further motions to amend pleadings or join

19    new parties could be made without leave of Court, and this

20    followed a number of efforts by the plaintiff to file amended

21    complaints.  Specifically, in an order that's Document Number

22    73 on the docket, the Court denied a previous motion for

23    leave to file a second amended complaint back in July of 2014

24    and for the reasons set forth in that lengthy order.

25         The case law dealing with amendments to the

1    complaint are set forth in that order, Document Number 73,

2    and will be set forth right now briefly.

3          Under Federal Rule of Civil Procedure 15(a), "Leave

4    to amend shall be freely given when justice so requires.  The

5    court may deny a motion to amend on the grounds that the

6    amendment would cause undue delay or prejudice, or the

7    amendment would be futile.  While leave to amend generally is

8    granted freely in accordance with those motions that are made

9    outside of scheduling orders, the parties must also resort to

10   Rule 16 to see if there is good cause for extending the time

11   for filing motions to amend."

12         Now, here I'll also note that the parties opposed

13   the bringing in of a third party who's not here.  And

14   generally case law would support the finding that parties not

15   impacted by the amendment, that is the amendment doesn't seek

16   to name claims against them, have no standing to oppose a

17   motion to amend on futility grounds.  They do, however, have

18   standing to oppose the motion on undue delay or prejudice

19   grounds.  And therefore I am not addressing the futility

20   argument raised by the defendants with respect to the

21   proposed third-party claim against the appraiser.  Rather, I

22   am addressing solely the issue of undue delay.

23         Now, plaintiff has been very candid.  There is no

24   new facts that have arisen that give rise to bringing in this

25   claim this late in the game.  But for the snowstorm, factual

1   discovery would be completed.  And we just heard argument

2   just a few minutes ago on whether I should permit additional

3   discovery to conclude the case in light of the snow that led

4   to the cancellation of the plaintiff's flight, which

5   precluded plaintiff from attending the last three depositions

6   scheduled in this case at the end of February.

7           While I found good cause to extend the discovery

8   deadline for those depositions, if I were to grant this

9   motion I would be reopening the entire case.  Clearly, a new

10  party would have to be served, that party would have to

11  answer, discovery would have to be revisited, and

12  depositions, which the plaintiffs' counsel has just agreed

13  should be concluded no later than May 11th, would have to be

14  postponed or retaken.

15          In light of the fact that that delay causes

16  prejudice to the parties and that there is no justification

17  for the delay, and that is there's been no showing whatsoever

18  that the claims that are being sought now could not have been

19  brought earlier or that in some cases delay may be warranted

20  when there's been new evidence.  But as I indicated,

21  plaintiff has demonstrated I think with candor to the Court

22  that there's really no reason that the claim is being brought

23  now as opposed to earlier.

24          In light of that, the Court notes that under Rule

25  15(a) and as an alternative argument to the extent Rule 16

27

1    applies because of the Court's order, prior orders, the

2    motion should be denied on undue delay and prejudice grounds.

3    Accordingly, the motion to amend is denied.

4              The motion to extend discovery is granted, as set

5    forth in the record, and a new scheduling order will be

6    entered.

7              Is there anything further for today?

8              MR. D'ELIA:  Nothing further from myself, Vince

9    D'Elia.  Judge, thank you for your consideration.

10             MR. YACOVELLE:  Thank you, your Honor.

11             MR. O'CONNOR:  Thank you very much, your Honor.

12             MR. LEISE:  Thank you very much, Judge.

13             THE COURT:  All right, Counsel.  You all have a good

14   day.  We are adjourned.  Thank you.

15             MR. D'ELIA:  Have a great day, everybody.

16             (Proceedings adjourned at 2:43 o'clock p.m.)

17                              *  *  *

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


s:/Geraldine C. Laws, CET          Date 7/30/15
Laws Transcription Service