IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAKE BALL TRUST, et al., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW DURST, et al., <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 12-5255 (JBS/AMD) <br><br> **OPINION** |

APPEARANCES:

Vincent D'Elia, Esq.
THE D'ELIA LAW FIRM, LLC
13000 Lincoln Drive West
Suite 300
Marlton, NJ 08053
        Attorney for Plaintiffs Steven Durst and Reuben Durst

John A. Yacovelle, Esq.
8438 Mackall Rd.
St. Leonard, MD 20685
        Attorney for Defendant Matthew Durst

Louis A. Modugno, Esq.
William F. O'Connor, Jr., Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mt. Kemble Ave.
P.O. Box 2075
Morristown, NJ 07962
        Attorneys for Defendant Halloran & Sage, LLP

Christopher Philip Leise, Esq.
Jason Aaron Landro, Esq.
Nancy L. Siegel, Esq.
WHITE & WILLIAMS LLP
457 Haddonfield Rd.
Cherry Hill, NJ 08002
        Attorneys for Defendant Kelley Galica-Peck

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This matter comes before the Court on motions for summary judgment by Defendants Matthew Durst, Halloran & Sage, LLP ("H & S"), and Kelley Galica-Peck [Docket Items 123, 124, and 125], and by H & S's motion to strike Plaintiffs' Late Amendment to Discovery Responses. [Docket Item 135.] The instant matter arises out of Matthew Durst's action as Trustee on behalf of the Jake Ball Trust. Plaintiffs in this action, Steven and Reuben Durst, bring claims of breach of fiduciary duty against Matthew Durst and allege legal malpractice on the part of H & S and Peck, stemming from Peck's representation of Matthew Durst and Reuben Durst as co-trustees of the Jake Ball Trust.

For the reasons discussed below, the Court will grant H & S's motion to strike Plaintiffs' late discovery responses and grant Matthew Durst, H & S, and Kelley Galica-Peck's respective motions for summary judgment in their entirety.

## II.   BACKGROUND[1]

### A. Facts

---

[1] Plaintiffs have failed to meaningfully comply with L. Civ. R. 56.1. Plaintiffs' responsive 56.1 statements address each paragraph of the movants' statements, as required by the Rule, but do not include citations to affidavits or other evidence in the record. Instead, Plaintiffs include in their papers a "Certification of Steven Durst in Opposition to Motion for Summary Judgment Filed on Behalf of Matthew Durst" and "Certification of Steven Durst in Opposition to: 1. Motion for

On November 29, 2004, Steven Durst, a sophisticated real estate developer, established the Jake Ball Trust, a revocable inter vivos trust ("the Trust") for his benefit and the benefit of his children, nieces, and nephews, and named his brothers Matthew and Reuben Durst as co-trustees.[2] (H & S SMF [Docket Item 123-1] ¶¶ 1-2, 16, Ex. A, Ex. E.) Steven, as grantor, retained the ability to direct investments and distributions from the Trust. (Id. ¶ 3, Ex. B at Art. III.) The brothers agreed among themselves that Matthew alone would "run the operations" associated with maintenance of the Trust. (Id. Ex. J at 45-46; M. Durst SMF [Docket Item 125-1] ¶¶ 2-3, Ex. 2.) Reuben took on no trust responsibilities. (M. Durst SMF ¶ 2, Ex. 2.) Reuben

---

Summary Judgment Filed on Behalf of Defendant, Kelley Peck; and 2. Motion for Summary Judgment Filed on Behalf of Defendant, Halloran & Sage, LLP," which consist mostly of unsupported legal argument with a few citations to attached exhibits. [Docket Items 142-2 and 142-18.] These certifications run afoul of L. Civ. R. 7.2, which restricts such submissions to "statements of fact within the personal knowledge of the signatory" and permits the Court to disregard arguments of fact and law. Accordingly, the Court deems the facts as set forth in Matthew Durst [Docket Item 125-1], H & S [Docket Item 123-1], and Kelley Galica-Peck's [Docket Item 124-2] 56.1 statements undisputed for purposes of the instant summary judgment motions. L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

[2] The Amended Complaint refers to Steven Durst as the "Grantor and Trustee" of the Jake Ball Trust. (O'Connor Cert. Ex. A, ¶ 1.) However, the record is clear that Steven Durst is only the grantor of the Trust, not a trustee. (Ex. A, Jake Ball Trust Agreement; Ex. I, Second Amendment and Restatement; Ex. J, Reuben Durst Deposition; Ex. K, December 2007 Agreement.) The Court finds that Steven is not a co-trustee of the Trust with brothers Matthew and Reuben.

formally delegated his authority as co-trustee to Matthew Durst
"to perform all ministerial tasks associated with the investment
and management of the Jake Ball Trust, as well as all
distribution decisions, that are within my power to delegate."
(H & S SMF ¶ 19, Ex. G.) These day-to-day tasks included, inter
alia, handling the Trust checkbook, paying Trust bills, signing
for million dollar loans on behalf of the Trust, and later
filing the state court litigation.(Id. Ex. D, 112:18-113:10; M.
Durst SMF Ex. 2.)

Among other assets, Steven Durst transferred to the Trust a
10% ownership interest in Goodmill LLC ("Goodmill"), an entity
formed with his employer Bruce Goodman in 2005 to construct,
lease, and operate a shopping center in Millville, New Jersey
("the Millville Asset"). (Id. ¶¶ 4-17.) Steven Durst signed the
Goodmill, LLC Operating Agreement on or about November 15, 2005
with his brother Matthew's name as "Trustee under the Jake Ball
Trust Agreement." (Id. at ¶¶ 4-9.) Relevant to this litigation
is a single provision of the Operating Agreement: Section 7.04,
which provided Bruce Goodman the opportunity to buy out the
Trust's ten percent interest if Steven Durst ever ceased to be
employed by him. (Id. ¶ 13, Ex. R at 18.) The effect of Section
7.04 could totally wipe out the value of the Trust's interest in
the Millville Asset. (Id. ¶ 14, Ex. A.) Steven Durst testified
that he signed the Operating Agreement without reading it first,

4

and that he was "stuck" with Section 7.04 once it was signed. (Id. ¶¶ 10, 15, Ex. C, Ex. D.) Neither H & S, R & C, nor Kelley-Galica Peck were involved with the Trust at the time Steven Durst signed the Operating Agreement. (Id. ¶¶ 18, 40, Ex. F.) Matthew Durst was not aware of the Operating Agreement or its specific provisions when Steven Durst signed his name to the document. (Plaintiffs' Ex. L at 83:11-84:6.)

In late 2006, Matthew Durst retained Kelley Galica-Peck, an attorney at H & S, to represent him in Trust matters as a trustee of the Trust. (H & S SMF ¶ 18, Ex. F.) Reuben Durst never relied on advice given to Matthew Durst or the Trust. (Id. ¶ 53, Ex. L.)

Between May and December of 2007, Steven Durst decided to convert the Jake Ball Trust to an irrevocable trust. (Id. ¶ 21, Ex. C.) As part of the plan to make the trust irrevocable, the Trust retained Paul Ruby, an appraiser of the firm Parker Benjamin, to value the Trust's 10% interest in the Millville Asset. (Id. ¶ 22, Ex. H.) The appraiser ultimately valued the asset at $841,000, but did not explicitly account for the potential impact of Section 7.04 of the Operating Agreement. (Id. Ex. N.) There is a dispute over when Ruby's valuation was finalized and communicated to Peck, H & S, the Trustees, and Steven Durst. (Compare Pl. SMF Ex. C with Ex. J.) Steven Durst himself valued the Millville Asset at $600,000 as of December

5

21, 2007 in an agreement signed with Matthew and Reuben Durst setting the terms of the Trust's conversion from revocable to irrevocable. (H & S SMF ¶ 32, Ex. K.)

In consideration for converting the Trust, the Trust gave Steven Durst a promissory note in the amount of $500,000, secured by a collateral assignment of the Trust's membership interest in the Millville Asset. (Id. ¶¶ 34-35, Ex. K at 1.2-1.3.) The Trust was converted to an irrevocable Trust by execution on December 24, 2007, of the Second Amendment and Restatement of Jake Ball Trust Agreement. (Id. ¶ 25, Ex. I.) Again, the Second Amendment and Restatement names Steven Durst the "Grantor" and Reuben and Matthew Durst as the Trustees. (Id.) As with the Goodmill Operating Agreement, Steven Durst testified that he signed the conversion agreement without reading it first. (Id. ¶ 33, Ex. D.) Peck and H & S never filed a UCC-1 Statement to perfect Steven Durst's security interest in the Millville Asset. (Id. ¶ 49, Ex. A.)

In May 2010, Steven Durst was terminated by Bruce Goodman, and Goodman advised that he was exercising the buy-out option of the Trust's interest in the Millville Asset reserved in the Operating Agreement. (Id. ¶¶ 36-37, Ex. L.) To protect the Trust's asset, Matthew Durst, as trustee for the Trust, filed a lawsuit against Goodmill, LLC and Bruce Goodman in the Superior Court of New Jersey in August 2010 to litigate the validity of

6

Section 7.04 of the Operating Agreement. (Id. ¶ 38, Ex. L.) If the provision was valid and enforceable, the Trust would lose its 10% interest in the Millville Asset. (Id.)

In October 2010, Peck left H & S and joined the R & C law firm as counsel. (Id. ¶ 39, Ex. F.) Shortly thereafter, Matthew Durst retained R & C to represent him in Trust matters as a trustee of the Trust. (Id. ¶ 41, Ex. F.)

Matthew Durst settled the state court litigation on October 13, 2011 on behalf of the Trust. (Id. ¶ 42.) Both Matthew Durst and Bruce Goodman testified on the record in the state court litigation that Matthew had the authority to enter in the agreement. (Id. Ex M. at 10:15-22.) The Second Amendment and Restatement of the Trust empowers Trustees "to compromise and settle claims." (Id. Ex. I.) As part of the settlement, the Trust conveyed its 10% interest in the Millville Asset to Goodman. (Id. ¶ 43, Ex. A.) Goodman was aware of the collateral assignment in favor of Steven Durst when he took the Trust's 10% interest, and that Steven Durst would have the right to try and take it back. (Id. ¶ 44, Ex. M.) Steven Durst has made no claim against his security interest. (Id. ¶ 45, Ex. C.)

Steven Durst and Reuben Durst objected to the terms of the state court litigation settlement and moved to intervene and set aside the settlement. (Op. Partial Summary Judgment [Docket Item 64] at 4.) The state court permitted Steven and Reuben Durst to

conduct limited discovery before ultimately deciding to enforce the settlement on April 26, 2012. (H & S SMF Ex. M.)

Disagreement over the state court settlement led to a "falling out" between Steven Durst and Matthew Durst and a decision by Matthew to resign as co-Trustee. (Id. Ex. A ¶ 30.) On November 28, 2011, Peck filed a petition to the Connecticut Probate Court on behalf of Matthew Durst seeking approval of his final accounting so Matthew could resign. (M. Durst SMF Ex. 14.) Steven Durst objected to the accounting. (Id.) In December 2011, Matthew Durst transferred $35,000 from the Trust to an escrow account at R & C to preserve Trust assets and to cover future legal fees and expenses associated with the accounting. (Op. R & C Summary Judgment [Docket Item 98] at 4.) Upon order from the Probate Court, the escrow was later closed and R & C issued a check to the Trust. (Id.) The Probate Court ultimately approved most of Matthew Durst's accounting on May 24, 2013, choosing not to rule on "some portions of the account [that] could result in res judicata or collateral estoppel regarding tangential issues" in the instant New Jersey case. (M. Durst SMF Ex. 14.)

**B. Procedural History**

Steven and Reuben Durst and the Jake Ball Trust filed the instant action against Matthew Durst in Cumberland County Superior Court on May 17, 2012. [Docket Item 1-2.] Plaintiffs Steven and Reuben Durst sought injunctive relief and damages

8

against Defendant Matthew Durst for misappropriation of assets, self-dealing, failure to provide annual accountings, and misrepresentation regarding delivery of trust assets. Defendant Matthew Durst filed a motion to dismiss in state court. The state court granted the motion to dismiss with regard to the Jake Ball Trust and denied the remainder of the motion. With the Jake Ball Trust eliminated as a party, diversity jurisdiction existed, and Matthew Durst removed the instant action to the District of New Jersey. [Docket Item 1.] Plaintiffs filed an Amended Complaint on February 15, 2013 adding claims for legal malpractice against Halloran & Sage, LLP, Robinson & Cole, LLP, and Kelley Galica-Peck. [Docket Item 24.]

On August 5, 2013, the Court granted Defendant Matthew Durst's motion for partial summary judgment, concluding that Plaintiffs are "collaterally estopped from arguing that the settlement entered into by Matthew Durst in Durst v. Goodmill, LLC, et al., No. C27-10, Superior Court of New Jersey Cumberland County Chancery Division, was unfair or inequitable" and that "$600,000 was an unfair valuation of the property at 1600 West Hunting Park." [Docket Item 65.]

On July 25, 2014, Magistrate Judge Ann Marie Donio denied Plaintiffs' motion for leave to file a second amended complaint, by which Plaintiffs sought to assert a legal malpractice claim against John A. Yacovelle and the Law Office of John A.

Yacovelle arising out of Yacovelle's involvement in the
settlement of the state court litigation. [Docket Item 82.]
Judge Donio reasoned that, in light of this Court's decision on
Defendant Matthew Durst's motion for partial summary judgment
holding that Plaintiffs were collaterally estopped arguing that
the settlement of the New Jersey state court litigation was
unfair, Plaintiffs "cannot allege cognizable, proximately caused
damages resulting from Yacovelle's alleged malpractice." [Docket
Item 82 at 11-12.] There was no appeal from Judge Donio's order.

     On January 13, 2015, the Court granted Defendant Robinson &
Cole, LLP's motion for summary judgment, concluding that R & C
could not be liable for Peck's conduct before she joined the
firm, and that R & C was not liable for any alleged malpractice
during her employment because Plaintiffs had not proffered
evidence of causation or damages. [Docket Item 99.] The Court
further found that Plaintiffs could not prove damages for Peck
or R & C's conduct related to the conveyance of the Millville
Asset or the state court settlement agreement because this
Court's decision on Defendant Matthew Durst's motion for partial
summary judgment held that they were collaterally estopped
arguing that the settlement was unfair.

     On April 10, 2015, Judge Donio denied Plaintiff's third
motion for leave to file a second amended complaint, by which
Plaintiffs sought to add the Parker Benjamin appraisers as

10

additional defendants. [Docket Item 115.] There was no appeal from Judge Donio's order.

Plaintiffs then sought reconsideration of the four preceding motions on August 10, 2015. [Docket Item 122.] The Court declined to revisit the disposition of the earlier motions for summary judgment and motions to amend the complaint because Plaintiffs' request was untimely and lacked merit. [Docket Item 147.]

Pursuant to Judge Donio's Scheduling Order, all discovery is now closed. [Docket Item 116.] Fact discovery closed on May 11, 2015, and expert discovery ended on July 31, 2015. [Id.] On that same date, the parties were to exchange written statements identifying opinion testimony to be presented at trial. [Id.] Defendants all filed their instant dispositive motions on August 14, 2015, as directed. [Docket Items 123, 124, and 125.] On August 17, 2015, Plaintiffs served a Certification from Steven Durst dated July 18 purporting to be an amendment to their December 23, 2014 written discovery responses regarding the amount of Plaintiffs' damages ("the August 17 Certification"). [Docket Item 133-7.] Defendant H & S moved to strike the late discovery amendment on August 28, 2015 [Docket Item 133] and Plaintiffs opposed. [Docket Item 140.] The Court now considers H & S's motion to strike Plaintiffs' late discovery amendments and

motions for summary judgment by Defendants Matthew Durst, H & S, and Kelley Galica-Peck.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or

12

conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

## IV.  DISCUSSION

### A. Disregarding Plaintiffs' New Allegations

At the outset, the Court will not address the allegations first raised in Plaintiffs' briefing, in the certifications of Steven Durst in opposition to Defendants' summary judgment motions, and in the August 17 Certification raising claims that were not plead in the Amended Complaint. Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (citation and internal quotation omitted). Plaintiffs' belated attempts to drum up issues of material fact by raising new claims regarding John Yacovelle's conduct in the state court litigation, the amount due on Steven Durst's $500,000 Note from the Trust, and a potential lawsuit against the Parker Benjamin appraisers cannot withstand summary judgment. Specifically, the following aspects of Plaintiffs' opposition to summary judgment will be disregarded because they are not material to the claims and defenses that are actually in dispute under the pleadings: Steven Durst's estimations of the current value of the Millville

13

Asset (Pl. Opp. at 3; August 17 Cert. [Docket Item 133-7]); the terms of any potential and rejected settlement offers in the state court litigation (Id. at 4); any potential misconduct on the part of John Yacovelle during the state court litigations (Id.); the amount due on the promissory note issued to Steven Durst (Id.); the amount of any legal fees due to Fred Santarelli stemming from Steven Durst's employment suit against Bruce Goodman (Durst Cert. in Opp. to Matthew Durst MSJ ¶¶ 27-28, 32, 56-58); and any potential negligence on the part of the Parker Benjamin appraisers (Durst Cert. in Opp. to H & S and Peck MSJ ¶¶ 12-19, 32-34, 41-42). These new allegations do not generate a dispute material to the existing claims in this case. Moreover, these new allegations will not be deemed to form the basis for some sort of unarticulated motion to amend the pleadings; no such motion has been made, and the time for amending pleadings and completing discovery expired months ago in this 2 ½-year-old case.

### B. H & S's Motion to Strike Plaintiffs' Late Discovery Amendment

As a preliminary matter, H & S moves to strike Plaintiffs' August 17 Certification. After Defendants submitted their motions for summary judgment, Plaintiffs served a certification from Steven Durst purporting to amend Plaintiffs' responses to interrogatories and requests for document production. In the

certification, Steven Durst provided a new calculation of damages allegedly suffered by the Trust because of the acts of Peck, H & S, and R & C. The certification was signed July 18, 2015, and not served on Defendants until August 17, 2015.

Defendants argue that this amendment to Steven Durst's prior interrogatory answers is an improper attempt to extend the discovery deadlines set by Judge Donio's April 10, 2015 Scheduling Order, which closed fact discovery on May 11 and expert discovery on July 31, required the parties to submit their proposed opinion testimony for trial on July 31, and made dispositive motions due August 14. Pursuant to Fed. R. Civ. P. 6(b), any request to extend a Court-ordered deadline after it has passed must be made on motion and demonstrate that the party acted because of excusable neglect. Specifically, parties seeking to modify a scheduling order must show good cause. Fed. R. Civ. P. 16(b)(4). Defendants argue that Plaintiffs have not, and cannot, show either excusable neglect or good cause for their delay because the amended damages calculations pertain only to items of which Plaintiffs were already aware when Defendants served their initial and second requests for information in the winter of 2014 – 2015 and deposed Steven Durst on February 3, 2015. What makes Plaintiffs' submission even more egregious, according to Defendants, is that the August 17 Certification was signed before the deadline for dispositive

15

motions but not served until after Plaintiffs had already received Matthew Durst, H & S, and Peck's motions for summary judgment.

In response, Plaintiffs argue that this amendment to Steven Durst's answers to interrogatories is merely an attempt to comply with Fed. R. Civ. P. 26(e), which imposes on litigants a duty to supplement and correct disclosures and discovery responses as new material comes to light. According to Plaintiffs, Steven Durst was unaware of the "ongoing nature of his rising damage claim" until he reviewed the expert report of Frederic Jacob, Esq., served on June 25, 2013. (H & S SMF Ex. N.) His August 17 Certification, served within 8 weeks of the expert report, was thus a timely supplemental disclosure accounting for new information that was not otherwise known to the party, pursuant to Fed. R. Civ. P. 26(e)(A).

Plaintiffs' assertion that he was unaware of the nature of his damages is wholly inconsistent with the thrust of his Certification – that he is "familiar with the valuation of real estate" (August 17 Cert. ¶ 1) and that his "experience and training has given [him] insight into the value and cost of real estate and real estate investments." (Id. ¶ 5.) Plaintiffs further argue that Defendants cannot be prejudiced by their amended responses because "[t]hey clearly know of Defendant's extensive experience in the real estate industry." (Pl. Opp.

Mtn. to Strike at 5.) But Plaintiffs cannot have it both ways
with their amended discovery responses; they cannot both claim
that the ongoing nature of the Trust's damages was unknown to
Steven Durst at the time that he submitted his initial discovery
responses and testified under oath at his deposition, and that
his expertise leads to a reliable calculation of damages. If, as
seems likely, Plaintiffs knew their discovery needed to be
amended shortly after they were made, Plaintiffs were obligated
to supplement their responses far sooner when they did. Worse
for Plaintiffs' case is the fact that H & S's requests for
production of documents related to damage claims during fact
discovery went unanswered. (H & S SMF ¶¶ 10-12.) The Rules do
not anticipate that a party can neglect to produce responsive
documents during discovery and then "supplement" the non-
response during post-discovery summary judgment motion practice.
That would be as unfair as it is inefficient. Courts in this
District have routinely stricken amendments after the close of
discovery when the purportedly new information was responsive to
earlier discovery requests and within the proponent's control.
See Wilczynski v. Redling, No. 12-4335, 2014 WL 5361916 at *6
(D.N.J. Oct. 21, 2014); Carita v. Mon Cheri Bridals, LLC, No.
10-2517, 2012 WL 2401985, at *5 n. 4 (June 25, 2012).

Even if this information were truly unknown until Steven
Durst received Jacob's expert report at the end of June,

17

Plaintiffs' two-month delay cannot be timely enough to satisfy Rule 26. Parties generally have a 30-day window to respond to discovery requests. See Fed. R. Civ. P. 33(b)(2) (interrogatories); Fed. R. Civ. P. 34(b)(2) (production of documents); Fed. R. Civ. P. 36(a)(3) (requests for admission). The Rules cannot contemplate a window to supplement longer than the initial window to respond. While Fed. R. Civ. P. 26(e) does not outright define what is "timely" for the purposes of the Rule, courts acknowledge that supplementation to correct a "true error" is distinct from supplementation as gamesmanship, especially when supplementation is in opposition to a summary judgment motion. See 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2049.1 (3d ed.). "Counsel's duty under Fed. R. Civ. P. 26(e)(2) to correct materially incomplete or erroneous information should not be misused to circumvent deadlines." Hioutakos v. SimplexGrinnell LP, No. 10-cv-4505, 2014 WL 1255197 at *3 (D.N.J. March 26, 2014). Delaying service of this supplement until after summary judgment motions were submitted, especially noting that a month lapsed between when Steven Durst executed the certification and when it was sent to Defendants, further confirms that this is not seasonable supplementation of discovery under Rule 26(e)(2)..

    Further, even if this were a proper amendment, Plaintiffs have offered an insufficient explanation for the discrepancy

between the $4,493,500 figure cited in the August 17
Certification and the earlier $2,450,000 amount sworn to during
Steven Durst's deposition. (Compare H & S SMF Ex. E with H & S
SMF ¶ 8.) The Third Circuit permits trial judges to disregard an
affidavit that contradicts earlier sworn testimony. Jiminez v.
All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir.
2007). Such a "sham affidavit" cannot raise a genuine issue of
material fact to defeat summary judgment. Id. Just as Plaintiffs
cannot raise new claims for relief in their opposition to
summary judgment, so too are they precluded from asserting new
sources of damages that were previously known to the affiant.

Defendant's motion to strike Plaintiffs' late amendment to
discovery responses is granted.

### C. Matthew Durst's Motion for Summary Judgment

At this stage in the litigation, the following breach of
fiduciary duty claims from the Amended Complaint remain against
Defendant Matthew Durst, arising from his actions as a co-
Trustee of the Trust: self-dealing and misappropriation of Trust
assets; mismanagement of the State Court Litigation; failure to
provide annual accountings; and wrongful diversion of funds into
Peck's escrow account. Because Plaintiffs have failed to show
that a genuine dispute of fact exists as to each of these
claims, the Court will grant Matthew Durst's motion for summary
judgment in its entirety.

As a co-Trustee of the Jake Ball Trust, Matthew Durst acted as a fiduciary and owed the Trust a duty of loyalty and a duty to exercise reasonable skill and care. F.G. v. MacDonell, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Trusts §§ 170, 174). "A breach of trust occurs if the trustee, intentionally or negligently, fails to do what the fiduciary duties of the particular trusteeship require or does what those duties forbid." Restatement (Third) of Trusts § 93 (2012). A fiduciary is liable for harm resulting from a breach of his or her duties. MacDonell, 696 A.2d at 704. Thus, in order to show that Matthew Durst breached his duties owed to the Trust, Plaintiffs must show both that Matthew acted in his own self-interest or failed to exercise reasonable skill in the administration of his Trust activities and that the Trust was harmed by his failures.

### a. Self-dealing and misappropriation of Trust assets

Plaintiffs allege in the Amended Complaint that Matthew Durst engaged in self-dealing and misappropriation of Trust assets when, as Trustee, he issued checks for non-Trust related purposes and set aside a disproportionate amount of Trust money for his son, Matthew Jr., to the detriment of the other beneficiaries. (H & S SMF Ex. A, ¶ 21.) Plaintiffs focus in particular in their opposition to summary judgment on a dispute over $22,000 worth of checks written by Matthew Durst, which

20

they contend were not truly for Trust purposes because proper documentation has not yet been produced. Matthew Durst argues that summary judgment is appropriate because each of the challenged payments were for Trust purposes, and that the factual issues Plaintiffs raise are speculative and insufficient to raise a genuine dispute.

Plaintiffs first allege that Matthew Durst engaged in self-dealing and misappropriation of Trust funds by making unauthorized distributions on behalf of his son, Matthew Jr. Specifically, Plaintiffs argue that $79,553.22 in Trust funds spent according to the Accounting submitted by Matthew Durst in the Connecticut Probate Court for Matthew Jr.'s running camps, running shoes, Dell laptop, and expenses while enrolled at the University of Delaware exceed the terms of the Trust. (See Connecticut Probate Court Accounting [Docket Items 144-1, 144-2, and 144-3].)

The Second Amendment and Restatement of the Trust empowers the Trustees to make distributions to the beneficiaries to provide for their "education, maintenance in health and reasonable comfort, or support in the accustomed manner of living." (H & S SMF Ex. I at 2.) Additionally, Steven Durst and Matthew Durst agreed that Steven was "fine with" the Trust covering $30,000 a year for Matthew Jr.'s education. (M. Durst SMF Ex. 6, 110:24-111:5.) The Accounting submitted to the

21

Connecticut Probate Court shows that the Trust distributed
$79,553.22 on Matthew Jr.'s behalf between October 2006 and
September 2011, with the first payments for University of
Delaware expenses coming in 2009 at the start of Matthew Jr.'s
freshman year and ending partway through his third year in the
fall of 2011. (Accounting at 25-26.) Therefore, these challenged
payments were both within the express terms of the Trust – for a
beneficiary's education and lifestyle – and the bounds of
$30,000 per academic year (or $90,000 for three full academic
years) contemplated by Steven and Matthew Durst. Plaintiffs
cannot show that Matthew Durst misappropriated Trust funds by
making these distributions. Accordingly, the Court grants
summary judgment to Matthew Durst on claims regarding
distributions made on behalf of Matthew Jr.

Next, Plaintiffs allege that Matthew Durst violated the
terms of the Trust when he distributed a disproportionate amount
of Trust money to his son, Matthew Jr., to the detriment of the
other beneficiaries. The Second Amendment and Restatement of the
Jake Ball Trust makes clear that the first priority
beneficiaries of the Jake Ball Trust are the children of Steven
Durst. (H & S SMF Ex. I at 3.) Nonetheless, Plaintiffs cannot
dispute that the terms of the Trust provide that distributions
be made also to "the descendants of [Steven Durst's] siblings"
and that shares may be distributed "without requirement of

22

equality . . . ." (Id. at 2.) Plaintiffs have provided no evidence that the $79,553 spent on Matthew Jr. in any way prejudiced the priority beneficiaries identified in Paragraph 19 of the Amended Complaint. (Id. Ex. A.) Accordingly, the Court grants summary judgment to Matthew Durst on claims regarding disproportionate Trust payments made for Matthew Jr.

Finally, Plaintiffs contend that $20,000 worth of checks issued by Matthew Durst to himself as reimbursements constitute a misappropriation of Trust funds because he has not provided adequate documentation to prove that they were legitimate Trust expenses. In their opposition to summary judgment, Plaintiffs argue that Matthew Durst "has never shown that he actually paid any of the bills that he reimbursed himself $22,000." (Pl. Opp. at 7.) But the record now before the Court does not support Plaintiffs' contention. Matthew Durst produced cancelled Jake Ball Trust checks in response to Plaintiffs' discovery requests and provided further backup checks, bills, and invoices after questions about certain payments arose at his deposition. (M. Durst SMF Ex. 8, 9, 10, 11.) These explanations confirm that the challenged payments reimbursed legitimate Trust-related expenses. Plaintiffs' hypothesis that Matthew Durst might "have gone to neighbors and asked for invoices and then wrote a check to himself for the amount of the invoice" (Pl. Opp. at 7) rather than pay them himself cannot contradict the evidence on the

23

record. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to withstand summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). Accordingly, Matthew Durst is entitled to summary judgment on claims regarding the $22,000 checks.

### b. Mismanagement of the state court litigation

Next, Plaintiffs argue that Matthew Durst breached his fiduciary duty owed to the Trust and exceeded his authority as a co-Trustee when he allegedly rejected Bruce Goodman's initial offer to settle the state court litigation, unilaterally settled the case for $80,000, and conveyed the Millville Asset to Goodman as part of the settlement. (H & S SMF Ex. A, ¶ 22.) The parties do not dispute that Matthew Durst never consulted with his co-Trustee Reuben Durst about the state court litigation, but do disagree over whether he was required to do so. The parties disagree about the extent to which Reuben Durst's December 29, 2007 letter (H & S SMF Ex. G) to Matthew Durst delegating authority over all "ministerial" Trust matters continued to control after the Trust became irrevocable, and if so, whether it would cover the conduct of the state court litigation.

However, regardless of whether Matthew Durst exceeded his authority by settling the state court litigation, Plaintiffs' claim fails as a matter of law because Plaintiffs are precluded

from proving damages in connection with the settlement. This Court has already held that the state court litigation settlement was fair and equitable. [Docket Item 64 at 19.] Even if Matthew Durst could not unilaterally bind the Trust to the settlement, the Trust suffered no harm as a matter of law from entering a deal adjudged fair by the New Jersey state Chancery Court. Accordingly, Matthew Durst is entitled to summary judgment on claims that he mismanaged the state court litigation exceeded his authority to settle the matter.

### c. Failure to provide annual accountings

Plaintiffs also allege in the Amended Complaint that Matthew Durst breached his fiduciary duty as Trustee by failing to provide Steven Durst with annual accountings. (H & S SMF Ex. A, ¶ 26.) However, Plaintiffs have since acknowledged that the terms of the Trust never required annual accountings. (M. Durst SMF Ex. 12 at 214:7-12.) Moreover, Steven Durst has conceded that he never requested an accounting of the Trustees between 2004, when the Trust was formed, and 2010. (H & S SMF, Ex. D at 113:21-114:21; M. Durst SMF Ex. 13 at 132:16-23.) Nor can Steven Durst claim to have suffered damages because of a lack of information regarding Trust activities. Steven and Matthew Durst had such regular contact during that time period that formal accountings were unnecessary. (M. Durst SMF Ex. 12 at 215:4-10; Ex. 13 at 132:16-23.) Accordingly, the Court grants Matthew

Durst's motion for summary judgment as to Plaintiffs' claims regarding annual accountings.

### d. Wrongful diversion of funds to R & C escrow account

Finally, Plaintiffs contend that Matthew Durst harmed the Trust when he "wrongfully diverted" $35,000 from the Trust account and deposited it in an escrow account with Kelley Galica-Peck and R & C. (H & S SMF Ex. A, ¶ 35.) The Court has already determined that Plaintiffs are unable to prove damages proximately caused by this transfer. [Docket Item 99.] Consistent with an order from the Connecticut Probate Court, the escrow was closed and R & C issued a check to the Trust in the amount of $33,605, withholding only funds expressly approved by the Probate Court. Plaintiffs have not shown that the Trust was unable to meet any of its obligations while the funds were escrowed. Therefore, the Court will grant Matthew Durst's motion for summary judgment as to Plaintiffs' claim based on the allegedly improper transfer and escrow of $35,000 in Trust funds.

### D. H & S's Motion for Summary Judgment

Plaintiffs also allege legal malpractice committed by H & S stemming from the law firm's representation of Matthew Durst as a co-Trustee of the Trust beginning in late 2006, when Matthew Durst retained Kelley Galica-Peck, until October 2010, when she left H & S to join R & C. Plaintiffs contend in the Amended

Complaint that the following actions taken by Peck, while employed by H & S, constitute actionable malpractice: misrepresentation of the value of the Millville Asset; neglecting to make Steven Durst aware of the potential impact of Section 7.04 of the Operating Agreement; failing to include in the Second Amendment and Restatement of the Trust a requirement for annual accountings and a provision that Steven Durst retain the power to name and change Trustees; transferring the Millville Asset from Steven Durst to the Trust in exchange for the $500,000 Note; and failing to perfect Steven Durst's collateral interest in the Millville Asset. As noted above, the Court will not address additional instances of malpractice charged in the expert report of Frederick Jacob that were not plead in the Amended Complaint.

To recover for legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. Jerista v. Murray, 883 A.2d 350, 359 (N.J. 2005) (citing McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001)). An attorney's negligent conduct is a proximate cause if it is a substantial contributing factor in causing the loss. Froom v. Perel, 872 A.2d 1067, 1076 (N.J. App. Div.), certif. denied, 883 A.2d 106 (N.J. 2005) (internal

27

citations omitted). In a legal malpractice case, "the measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence." Garcia v. Kozlowv, Seaton, Romanini & Brooks, P.C., 845 A.2d 602, 611 (N.J. 2004). A plaintiff's malpractice claim "must be sustained by a preponderance of the competent, credible evidence and is not satisfied by mere conjecture, surmise or suspicion." 2175 Lemoine Ave. Corp. v. Finco, Inc., 640 A.2d 346, 352 (N.J. App. Div. 1994).

### 1. Valuation of the Millville Asset, the impact of Section 7.04, and the $500,000 Note

Plaintiffs contend that Peck and H & S committed legal malpractice by misrepresenting the value of the Trust's 10% interest in the Millville Asset when they ignored Section 7.04 of the Operating Agreement and neglected to warn Steven Durst of its potential impact. (H & S SMF Ex. A, ¶ 42(c).) Plaintiffs argue that the Trust relied on Peck's omission and her incorrect valuation of the Millville Asset when Steven Durst decided to convert the Trust to an irrevocable one. Specifically, Plaintiffs argue that if Peck had notified Steven Durst of the potential for Section 7.04 to wipe out the value of the Millville Asset, the Trust would not have issued him the $500,000 Note and security agreement and he would have been able to negotiate with Goodman to amend the Operating Agreement. In

response, Defendants argue that Steven Durst did not, and could not have, relied on Peck and H & S's advice regarding the Operating Agreement. Moreover, they argue that Plaintiffs' point about renegotiating the Operating Agreement is mere conjecture insufficient to show proximate cause as a matter of law. Finally, Defendants argue that Steven Durst cannot contend that the Trust would not have incurred liability on the $500,000 but for Peck's advice failing to take into account Section 7.04.

Plaintiffs' malpractice allegations regarding Peck's failure to warn Steven Durst about Section 7.04 of the Operating Agreement and any effect it might have on the valuation of the Millville Asset fail for lack of proximate causation. Plaintiffs cannot claim that they relied on Peck and H & S's advice (or lack thereof) when issuing the $500,000 Note and converting the Trust for three reasons. First, it is undisputed that both co-Trustees admitted that the Trust never actually relied on the valuation advice at the time the conversion agreement was executed. Co-Trustee Reuben Durst has never personally relied on advice from Peck in the administration of any Trust matters. (H & S SMF Ex. J at 65:12-16) Co-Trustee Matthew Durst believed the Millville Asset to be valued at $600,000 at the time of the conversion agreement, not the $841,000 figure provided by Peck's appraiser. (Id. Ex. T at 61:20-62:1.) The Trust cannot have

suffered damages because of Peck and H & S's advice if its Trustees took no action in reliance on the advice.

Second, Steven Durst cannot have reasonably relied on Peck's valuation advice to his detriment when he decided to convert the Trust to an irrevocable one because he is charged with knowledge of Section 7.04 himself. Steven Durst describes himself as a knowledgeable and sophisticated real estate businessman. (Id. Ex. E at 94:25-96:1.) It is undisputed that Steven Durst signed the Operating Agreement in 2005, long before Peck and H & S were involved with the Trust. (Id. Ex. F.) "A party who enters into a contract in writing . . . is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 685 (N.J. 1992). Steven Durst cannot complain that years later, Peck did not inform him about a contract he himself signed, because knowledge of the provision and its potential impact on the value of the Millville Asset is presumed, even if he chose not read the contract before signing. Riverside Chiropractic Group v. Mercury Ins. Co., 961 A.2d 21, 27 (N.J. App. Div. 2008). As a real estate professional with extensive experience in the real estate industry, it would not have been reasonable for him to rely on valuation that he should have known did not account for the potential impact of Section 7.04.

Third, Plaintiffs cannot claim to have relied on Peck and H
& S's valuation advice in "conveying" the Millville Asset to the
Trust as part of the December 2007 conversion agreement because
the Trust already owned the asset. Plaintiffs' assertion that
the Trust issued the $500,000 Note in exchange for the Millville
Asset is not supported by any facts in the record. Steven Durst
executed the Operating Agreement in 2005 using Matthew Durst's
name as a Trustee of the Jake Ball Trust, thereby transferring
the Millville Asset to the Trust and binding the Trust to the
terms of the agreement years before it executed the Note.

Nor can Plaintiffs successfully argue that Peck is
responsible for any purported damages to the Trust because if
Peck had warned Steven Durst about the potential impact of
Section 7.04 of the Operating Agreement, he could have
renegotiated the agreement's terms with Bruce Goodman before the
Trust issued Steven the $500,000 Note. In a transactional legal
malpractice claim, a plaintiff must show that an attorney's
malpractice was a substantial factor in the loss of a benefit
from a transaction. <u>Froom</u>, 872 A.2d at 1077. In other words, the
plaintiff must show that, even in the absence of attorney
negligence, the other parties to the transaction would have
agreed to a deal advantageous to the plaintiff. <u>Id.</u> Here, the
record does not support Plaintiffs' claim that Steven Durst
could have convinced Goodman to change the terms of the

31

Operating Agreement two years after the fact. Steven Durst never drafted an alternative version of Section 7.04, let alone presented one to Goodman for him to accept or reject. (H & S SMF Ex. D.) Steven Durst himself acknowledged in sworn testimony that it would be "pure conjecture" to predict how Goodman would have reacted to a request to change the provision. (Id.) "Mere conjecture" is not sufficient to defeat summary judgment. 2175 Lemoine Ave. Corp., 640 A.2d at 352.

Furthermore, fatal to Plaintiffs' claims regarding the allegedly erroneous valuation of the Millville Asset is the fact that Plaintiffs cannot prove damages. As Plaintiffs have repeatedly declined to engage their own valuation expert, Plaintiffs have provided no evidence that Peck's valuation was actually incorrect. Moreover, as this Court previously held in granting Matthew Durst's partial summary judgment motion [Docket Item 65], Plaintiffs are precluded from arguing that the state court litigation settlement was unfair. Even if Plaintiffs could establish the breach of a duty owed by Peck and H & S in the context of the valuation of the Millville Asset, Plaintiffs cannot show that they were damaged when the asset was later transferred to Goodman for $80,000 in the state court settlement because the Court must assume that the settlement was fair and equitable.

Because Plaintiffs can prove neither causation nor damages with respect to their claims that Peck and H & S committed malpractice by providing an erroneous valuation of the Millville Asset and failing to warn Steven Durst about the potential impact of Section 7.04 of the Operating Agreement, the Court grants H & S's motion for summary judgment as to this claim.

### 2. Accountings and ability to change trustees

Next, Plaintiffs contend that Peck and H & S committed malpractice when they represented to Plaintiffs that the Trustees would be required to provide the Grantor, Steven Durst, with annual accountings and that Steven Durst would retain the right to name and remove Trustees of the Jake Ball Trust, but failed to include provisions to that effect in the Second Amendment and Restatement of the Jake Ball Trust Agreement. (H & S SMF Ex. A, ¶¶ 42(a) and (b).)

As with their other claims, the record includes no proof of damages. Even assuming _arguendo_ that Plaintiffs were not precluded from arguing that the Trust was damaged by an unfair state court settlement, Plaintiffs have not shown how the absence of annual accountings or Steve's ability to name new Trustees harmed the Trust. Without damages, Plaintiffs' claim fails as a matter of law and H & S is entitled to summary judgment.

33

### 3. **Failing to perfect collateral security interest in Millville Asset**

Plaintiffs allege that Plaintiffs were further harmed when Peck and H & S failed to perfect Steven Durst's security interest in the Millville Asset by recording a UCC-1 statement. (H & S SMF Ex. A, ¶ 47.) According to Plaintiffs' expert Frederick Jacob, if Peck and H & S had recorded the security interest, it would have prevented Matthew Durst from conveying the Millville Asset as part of the state court settlement, and the Trust would not have been damaged by a settlement exchanging the Millville Asset for less than its alleged worth. (H & S SMF Ex. N at 6.)

This argument fails as a matter of law. Plaintiffs cannot claim damages for two reasons. First, Peck and H & S's failure to record a UCC-1 statement did not wipe out Steven Durst's collateral interest in the Millville Asset; it merely changed the order of priority of the rights of purchasers and creditors of the property. See Shaw Mudge & Co. v. Sher-Mart Mfg. Co., Inc., 334 A.2d 357, 322 (N.J. App. Div. 1975) ("Thus, while a debtor's rights in collateral may be voluntarily or involuntarily transferred . . . such transfer would still be subject to a security interest."). All parties involved in the state court litigation recognized that Goodman would take the Millville Asset subject to Steven Durst's collateral assignment

34

and the possibility that he might sue to enforce it. (O'Connor Cert. Ex. M, 16:24-17:6, 26:23-27:4.) Just because Steven Durst has taken no action to collect on his security interest does not mean that he cannot. (H & S SMF Ex. D at 210:16-24.) Plaintiffs have suffered no harm because Steven Durst can still enforce his rights as to the $500,000 Note, albeit as against a different party.

Second, even if this failure to record constituted a breach of duty, Plaintiffs again cannot prove damages. Steven Durst has admitted that he has suffered no individual damages in this case. (Id. Ex. D at 210:25-211:16; T214:25-215:3.) Nor can Plaintiffs argue that the Trust suffered damages from the alleged failure to perfect Steven Durst's security interest because they are precluded from arguing that the state court settlement was unfair. Whether or not Peck and H & S recorded Steven Durst's security interest is immaterial because the Trust was not harmed when Matthew Durst conveyed the Millville Asset to Bruce Goodman as part of the state court settlement. Accordingly, the Court grants H & S's motion for summary judgment in its entirety.

### E. Kelley Galica-Peck's Motion for Summary Judgment

Kelley Galica-Peck also moves for summary judgment on all malpractice claims against her on the grounds that if neither of her employers can be found liable for legal malpractice, neither

can she. Peck argues that she is entitled to summary judgment
for the same reasons as R & C in this Court's opinion granting
summary judgment [Docket Items 98, 99] and H & S, described in
Part C above, because at all times she was acting within the
scope of her employment. Plaintiffs fail to respond to this
argument.

An employer will be vicariously liable for the wrongful
acts of his or her employees if at the time, the employee was
acting within the scope of his or her employment. Carter v.
Reynolds, 815 A.2d 460, 463 (N.J. 2003). In order for an act to
be found within the scope of the actor's employment, it must be
of the kind that the agent or servant is employed to perform,
occurring within the authorized time and space limits of the
employee's duties, and it must be motivated, at least in part,
by a purpose to serve the employer. Id. at 464 (citing
Restatement (Second) of Agency § 220). In particular, a law firm
will be liable for the wrongful acts of an employee of the firm
who was acting in the ordinary course of the firm's business.
Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin,
Tischman, Epstein & Gross, P.A., No. A-6595-06T2, 2009 WL
2045259, at *8 (N.J. App. Div. July 16, 2009) (citing
Restatement (Third) of the Law Governing Lawyers § 58 (2000)).
An employee will be individually liable for his or her conduct
if he or she was not acting within the scope of employment. Id.

36

Peck argues that she was acting within the scope of her employment with H & S and R & C at all times that she was representing Matthew Durst as a co-Trustee of the Jake Ball Trust. The undisputed record reflects that all of Peck's allegedly wrongful conduct was in furtherance of her representation of Matthew Durst, occurred during her employment with the Defendant law firms, and was performed at least in part to bring business to her employers. Plaintiffs point to nothing in the record showing that proximate causation or damages can be traced to Peck's conduct where this Court found that they could not for R & C, her employer. Similarly, Plaintiffs have done nothing to distinguish Peck's conduct from H & S's with regards to the valuation of the Millville Asset, the absence of an accountings provision in the Trust, or the failure to perfect the collateral security interest in the Millville Asset, making summary judgment appropriate for one party but not the other. Accordingly, the Court will grant Peck's motion for summary judgment in its entirety.

**V.    CONCLUSION**

In light of the foregoing, the Court will grant Defendants Matthew Durst, H & S, and Kelley Galica-Peck's motions for summary judgment and enter judgment in favor of Defendants on all of Plaintiffs' claims. An accompanying Order will be entered.


**November 30, 2015**                          **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge